UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MARYLAND
(NORTHERN DIVISION)

---

------------------------------------------------------------------- x
                                       :

DEMETRA STREET,                       :
                                         :

                         Plaintiff,      :    Case No.: RDB–21–cv–1970
                                       :

     -v.-                                  :
                                       :

WYLIE FUNERAL HOME, P.A., *et al.*,    :
                                       :

                         Defendants.    :
                                       :
------------------------------------------------------------------- x

---

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Demetra Street ("Plaintiff"), by and through her attorney Alexander J. Coffin, opposes the Defendants' Motion to Dismiss the Complaint and offers as follows:

## I.    INTRODUCTION

What happened, in this case, is outrageous by any measure. Defendants are a funeral home enterprise comprised of corporate entities and licensed morticians. Following Ivan T. Street's death, his widow, Plaintiff Demetra Street, entered into a written agreement with the Defendants for his cremation and a solemn service in his memory. She got neither.

Instead, the Defendants ignored her wishes. They buried Ivan without her knowledge and then staged a sham memorial service that employed an empty funerary urn in an elaborate ruse, all designed to hide their wrongful conduct from her and others. Plaintiff learned her husband had been buried only in the days following the fake memorial service when she received an email from one of the Defendants telling her that he "look[ed] forward to receiving the resting

location in Mt. Zion Cemetery." (Complaint at ¶ 36). Confused about the email, she telephoned the funeral home and spoke with Mr. Wylie, who told her that the Defendants had secretly buried Ivan against her wishes, adding, "Well, that's what we did," and abruptly hung up the phone. (Complaint at ¶ 37).

Unbelievably, the Defendants see nothing wrong with "what they did"—at least not in a legal sense. In support of their Motion, they argue, among other things, that Plaintiff's 24-page complaint is "threadbare," that no contract existed between the parties, that the Defendants owed no duty to Ivan's widow, that Defendants do not know why Plaintiff is suing them, and that they are medical practitioners.[1] The Defendants' brief actually contends that "Plaintiff's count for intentional infliction of emotional distress fails to state a claim upon which relief can be granted because there are no facts sufficient to prove that Defendants' alleged conduct was intentional or reckless and extreme and outrageous." (Defendants' Memorandum at 17). Defendants have seemingly crafted their Motion by gaslight.[2] "Therefore, the logic is inevitable: black is white, and white is black. . .. But, of course, this is not the way it is; and no sophistry on earth can make it that way."[3] What would they have the Plaintiff allege to qualify as "outrageous?"

With apologies to Charles Dickens, "Ivan T. Street was dead: to begin with. There is no doubt whatever about that."[4] From this indisputable fact, Defendants have fashioned a

---

[1] Mercifully, we can find no instance where any of the Defendants' "patients" have sued them for medical malpractice. We can only hope that they never have occasion to embalm Lazarus.

[2] Plaintiff acknowledges that the Defendants do not claim the Earth is flat.

[3] Kenneth Jernigan, *Blindness: The Circle of Sophistry*, Address, Annual Convention of National Federation of the Blind, https://nfb.org//sites/default/files/images/nfb/publications/convent/banque84.htm (July 6, 1984).

[4] CHARLES DICKENS, A CHRISTMAS CAROL 9 (1843) (original reference is to the death of Ebenezer Scrooge's partner, Jacob Marley).

Memorandum supporting their Motion that defies both logic and the law, causing Plaintiff to shake her head ever more forcefully in disbelief as each page of argument unravels.

## II.    BACKGROUND

Plaintiff's husband, Ivan T. Street,[5] died on January 9, 2021. (Complaint at ¶ 37). Ivan's body was transported to Wylie Funeral Home's Mount Street location[6] to await identification and funeral arrangements. *Id.* Ivan's cousin, Rita Jeffers, was the first of Ivan's family members to speak with funeral home personnel when she met with Defendant Devin Conner to provide Conner with information about the decedent for Ivan's Death Certificate.[7] (Complaint at ¶¶ 19–20).

Jeffers told Conner that Ivan was married to the Plaintiff and provided Plaintiff's telephone number and contact information. (Complaint at ¶ 21). Conner later telephoned Plaintiff to tell her that Ivan had passed away and summoned her to the Mount Street Home to identify the body. *Id.*

---

[5] Plaintiff and Ivan T. Street were married nearly five years earlier, on April 22, 2016 (Complaint at ¶ 17).

[6] The corporate Defendants in this matter are Wylie Funeral Home, P.A. and Wylie Funeral Home, P.A. of Baltimore County (collectively "Funeral Home"). The corporate Defendants operate two funeral homes, including the Mount Street Home, as a single enterprise. Defendants Albert P. Wylie and Brandon M. Wylie are principals, licensed morticians, and employees of the corporate Defendants. Defendants Devin B. Conner and Tuverla Livingston are licensed morticians and employees of the corporate defendants.

[7] Jeffers is listed as "Informant" on Ivan's Death Certificate (Complaint at ¶ 20).

On January 13, 2021, Plaintiff met with Defendants Tuverla Livingston and Conner. (Complaint at ¶ 22). Plaintiff identified Ivan's body and authorized a direct cremation.[8] *Id.* That same day, Plaintiff contracted with the Funeral Home for Ivan's direct cremation and a memorial service for $2,500 (the "Contract"). (Complaint at ¶ 23). Plaintiff provided Defendants with a $650 voucher request to the Maryland Department of Human Resources for burial assistance. *Id.* The Contract committed Plaintiff to pay the Funeral Home the remaining $1,850 for Ivan's funeral goods and services. *Id.* The Contract provided: "I hereby acknowledge that I have the legal right to arrange the funeral services for the deceased and I authorize the funeral establishment to perform services, furnish goods, and incur outside charges specified on this Statement." *Id.*

Shortly after Plaintiff arranged and tendered the voucher for Ivan's cremation and memorial service, a second woman appeared at the Mount Street Home, claiming to be Ivan's spouse. (Complaint at ¶ 24).[9] Defendant Conner telephoned Plaintiff to inform her that another woman claimed to be Ivan's spouse and that this interloper insisted that Ivan be buried. (Complaint at ¶ 25). Plaintiff told Conner to ignore the woman and that she had no authority or right to change Ivan's funeral arrangements. *Id.* Plaintiff reaffirmed for Conner that Plaintiff was Ivan's widow and that Plaintiff's instructions for the cremation were to be followed and adhered to. *Id.*

Between January 14, 2021, and January 21, 2021, Plaintiff telephoned the Funeral Home and attempted to speak with Defendant Conner to discuss the time and date for the memorial

---

[8] Plaintiff also provided Livingston and Conner with her gold-sealed official marriage certificate confirming her marriage to Ivan. (Complaint at ¶ 22).

[9] The second woman, who identified herself as Renee Cook, provided Defendants an unsealed marriage license dated October 24, 1997. (Complaint at ¶ 24–25).

service. (Complaint at ¶ 28). Instead of talking with Conner, the Funeral Home's telephone receptionist re-routed Plaintiff's call to Defendant Albert Wylie or Brandon Wylie, the principal owners of the Funeral Home. *Id.* The person on the telephone, who identified himself to Plaintiff as Mr. Wylie, told Plaintiff that he had decided that the Funeral Home would follow the second woman's instructions and bury Ivan. *Id.* When Plaintiff protested and told him, "No," he sarcastically taunted her by asking: "So, what are you going to do about it?" Then, he abruptly ended the telephone call. *Id.*

On January 22, 2021, Conner telephoned Plaintiff and lied to her, telling her that Defendants had rejected the second woman's instructions. (Complaint at ¶ 29). Conner confirmed that the Defendants would conduct the planned memorial service for Ivan at the Mount Street Home the next day. *Id.* In reality, Ivan had not been cremated, but instead, the Defendants had already secretly buried him at Baltimore's Mt. Zion Cemetery. (Complaint at ¶¶ 29, 36).

Defendants conducted a memorial service for Ivan on January 23, 2021. (Complaint at ¶ 29). The service was replete with all the trappings of a solemn affair—with Defendants streaming audio and video of the service on the Funeral Home's website and them having prepared a written tribute program stating that Ivan "was married later to Ms. Dimetra [sic] Street." (Complaint at ¶ 30–31).

As Ivan's widow, Plaintiff at the memorial service delivered a tribute to her late husband. (Complaint at ¶ 32). The program listed "Remarks—Demetra Street" as the fifth item in the "Order of Service." Plaintiff remarks at the memorial service were offered as a tribute in song. *Id.*

Defendants configured the seating and arrangement of the meeting room for the memorial service. Plaintiff sat in the front row. (Complaint at ¶ 33). The centerpiece of the memorial service was a funerary urn located next to Ivan's framed photograph. *Id.*

Immediately following the memorial service, a Funeral Home employee quickly removed the funerary urn from the meeting room purporting to contain Ivan's cremains and secreted the urn away.[10] (Complaint at ¶ 34). Funeral Home personnel pretended that the urn contained Ivan's remains even though they knew it was empty because the Funeral Home had already secretly interred his body three days earlier, on January 20, 2021. *Id.*

On January 25, 2021, Defendant Conner sent Plaintiff an email that read, "Tomorrow I'll look forward to receiving the resting location at Mt. Zion Cemetery. (Complaint at ¶ 36). Confused and surprised by the email, Plaintiff telephoned Conner seeking an explanation and clarification about its meaning. (Complaint at ¶ 37). Instead of speaking with Conner, the Funeral Home's telephone receptionist again re-routed Plaintiff's call to either Defendant Albert Wylie or Brandon Wylie. *Id.* The person on the telephone, who identified himself to Plaintiff as Mr. Wylie, told Plaintiff that just as he said he would do, the Funeral Home had buried Ivan. *Id.* When Plaintiff told Mr. Wylie what he had done was wrong, and against her wishes, he responded: "Well, that's what we did." Then, he abruptly hung up the phone. *Id.*

In the days and weeks following the memorial service, Plaintiff repeatedly requested a copy of Ivan's Death Certificate from the Funeral Home, but Defendants stonewalled her. (Complaint at ¶ 38). Out of frustration, she contacted the Maryland Department of Health

---

[10] Despite Plaintiff's repeated requests that she receive Ivan's ashes, Defendants refused to allow her or anyone else to obtain the ashes or to see the funerary urn once the memorial service had concluded. (Complaint at ¶ 35).

Division of Vital Statistics to obtain the Death Certificate—and was shocked and emotionally devastated by what she learned upon receiving it. (Complaint at ¶ 39–40).

Defendant Conner had reported false information to the Maryland Department of Health for inclusion in the Death Certificate. Rather than report what the informant, Jeffers, had told him, namely that Plaintiff was Ivan's spouse, Defendant Conner instead falsely and intentionally reported the surviving spouse's name as "Unknown." (Complaint at ¶ 41). The Death Certificate also confirmed for Plaintiff that her husband had been buried at Mount Zion Cemetery, in Baltimore, on January 20, 2021. (Complaint at ¶ 42).

The burial, which took place three days before the memorial service, was conducted by the Defendants without Plaintiff's knowledge, permission, or authorization. (Complaint at ¶ 42). The burial contravened Plaintiff's express authorization, and those actions by Defendants constituted a breach of contract and a wrongful burial under Maryland law. *Id.*

Defendants conspired to bury Ivan without Plaintiff's permission and actively conceal the burial from Plaintiff and other family members. (Complaint at ¶ 43). Because Defendants concealed the burial from Plaintiff, she was excluded from attending Ivan's burial service, paying her last respects, and participating in a graveside service. (Complaint at ¶ 44).

Defendants conducted a sham memorial service through artifice and deception by falsely, fraudulently, and maliciously misleading Plaintiff and others to believe that Ivan had been cremated and that a funerary urn containing his ashes was on display at the memorial service. (Complaint at ¶ 45). All the while, even though Defendants knew that Ivan had never been cremated and that his body had, in fact, already been buried, they instead falsely, fraudulently, and maliciously deceived the Plaintiff and others and led them to believe that Ivan's body had been cremated and that his ashes had been deposited in the funerary urn. *Id.*

Defendants failed to monitor or police their website, allowing and continuing to allow scandalous and hurtful postings to remain on the Funeral Home's remembrance page, including the following posting by the second woman, which embarrassed, humiliated, and emotionally distressed Plaintiff: "To the memory of my beloved husband. You were my best friend. The many loving memories I have of the tie we shared will forever comfort me in your absence. . .. You will be sorely missed my love." Defendants even misspelled Ivan's name on the Funeral Home's website, incorrectly referring to him in bold letters as "Ivan Tryome [sic] Street." (Complaint at ¶ 47).

In the days and months following the burial, despite Plaintiff's repeated inquires, Defendants withheld essential information from Plaintiff, causing her constant worry, anxiety, and emotional distress, including refusing to disclose whether Ivan had been cremated.[11] (Complaint at ¶ 48).

Confronted with these facts, however, Defendants feign a tobacco-executive-like ignorance that what they did amounted to nothing. They claim, after all, that Plaintiff had no contract with them, that what she has alleged is not actionable, that her complaint was devoid of facts, that they are all medical practitioners, and other such nonsense. Yet, Plaintiff suspects, there will be a reckoning. Demetra Street will answer Mr. Wylie's taunt—"So, what are you going to do about it?"—by holding him and the others accountable for their wrongdoing. Writer

---

[11] In America, it is fairly common for cremains to be interred. Plaintiff did not know, therefore, until five months after the memorial service whether or not Ivan had been cremated or his body had buried. Plaintiff independently confirmed on June 24, 2021, that Ivan's body was not cremated, and Defendants eventually acknowledged this on July 6, 2021. (Complaint at 48).

and philosopher Ayn Rand once observed that "[w]e can ignore reality, but we cannot ignore the consequences of ignoring reality."[12]

## III.    ARGUMENT

The thrust of Defendants' Motion is that, somehow, Plaintiff has failed to allege anything that could stick to them. Their scatter-shot approach is to have the Complaint dismissed on several well-worn but misguided theories. We consider and refute the Defendants' arguments in the order they are presented in their Memorandum.

### A.    The Complaint satisfies the pleading standard of Rule 8(a)(2) of the Federal Rules of Civil Procedure.

The Defendants argue, apparently with straight faces, that Plaintiff's Complaint[13] fails to assert claims with the requisite specificity or particularity to survive Defendants' Motion to Dismiss.[14] Defendants somehow overlooked that Plaintiff fully described the factual predicate for her claims and has incorporated all judicially recognized elements for each cause of action for each of the offenses. If the Defendants are confused about why Plaintiff has sued them, they need only read the Complaint. Plaintiff's factual allegations are unmistakable, non-speculative, specific, and lead to plausible claims on their face.

---

[12] Ayn Rand, *Symposium Presentation*, ETHICS IN OUR TIME, Univ. of Wisconsin (Madison, Feb. 9, 1961).

[13] Plaintiff's Complaint runs to 24-pages and is comprised of 105 enumerated paragraphs containing detailed facts. The Complaint is neither deficient in facts nor threadbare. Each and every legal conclusion is supported by concrete and objective factual allegations.

[14] Remarkably, the parties agree on the judicial principles that have been established by the Rules and the courts. The difference lies in the application of those legal standards to the facts and circumstances of this case.

Rule 8 of the Federal Rules of Civil Procedure, with which Plaintiff has fully complied, requires only a "short and plain statement of the claim showing that the pleader is entitled to relief.... detailed factual allegations" are unnecessary. FED. R. CIV. P. 8. The United States Supreme Court enunciated the pleading standard in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), which held that Rule 8 requires only that the Plaintiff demonstrate that the factual allegations of the Complaint, if true, "state a claim to relief that is plausible on its face."[15]

The facts in the Complaint must "raise a right to relief above the speculative level" and into the "realm of plausible liability." *Id.* at 555. The complaint must contain sufficient facts to move past possibility and on to plausibility of "entitlement to relief." *Id.* at 558.

> Determining whether a complaint states a plausible claim for relief [is]…a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief."

*Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)) (internal citation omitted).

In reviewing a Rule 12(b)(6) motion, this Court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. duPont de Nemours & Co. v. Kolon Ind., Inc.*, 637 F.3d 435, 440 (4th Cir.2011); *see Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473 (4th Cir. 2015). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

---

[15] A Rule 12(b)(6) motion in any civil case is analyzed under the standard announced in *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544 (2007). *Iqbal*, 556 U.S. 678–79.

Defendants posit that Plaintiff has accomplished an incredible feat. She has somehow managed to file a 23-page, seven-count Complaint containing 105 paragraphs of detailed allegations spelling out the Defendants' wrongful actions—that is somehow simultaneously "threadbare" and "conclusory." Plaintiff respectfully suggests that it is only Defendants' argument that is implausible.[16]

**B.**    **Plaintiff has asserted valid claims against Defendants for all seven causes of action.**

Whatever alternate reality Defendants have conjured up, the idea that not a single one of the seven the counts asserted by the Plaintiff states a claim is preposterous. Indeed, many of Defendants' arguments in favor of dismissal raise "frivolousness" to new heights. We show why in the pages that follow.

**1.  The Complaint states a cognizable claim for breach of contract.**

Paragraph 23 of the Complaint describes the contract between Plaintiff and the Funeral Home.[17] Specifically:

> On January 13, 2021, Plaintiff contracted with the Funeral Home for Ivan's direct cremation and a memorial service at a price of $2,500 (the "Contract"). Plaintiff provided Defendants with a $650 voucher request to the Maryland Department of Human Resources for burial assistance. The Contract committed Plaintiff and Ivan's family members to pay the Funeral Home the remaining $1,850 for Ivan's funeral goods and services. The Contract provided: "I hereby acknowledge that I have the legal right to arrange the funeral services for the deceased and I authorize

---

[16] Plaintiff addresses the heighted pleading standard required for fraud claims in section B.4 *infra*.

[17] The individual Defendants, Albert Wylie, Brendon Wylie, Conner, and Livingston are correct when they assert that Plaintiff did not contract with them directly. Plaintiff's contract was with the Funeral Home as specified in Paragraph 23 of the Complaint. It is, of course, axiomatic that corporations act by and through their employees. Plaintiff does not seek to impose personal liability on the individual Defendants for breach of the Contract. Rather, the Complaint simply acknowledges that the Funeral Home acts through its employees and agents.

the funeral establishment to perform services, furnish goods, and incur outside charges specified on this Statement."

(Complaint at ¶ 23).

First, Plaintiff's Complaint sets forth the essential elements of a contract, namely the identity of the parties (Plaintiff and Funeral Home); the price or consideration ($2,500); and the duties of each party (Funeral Home to cause direct cremation and provide memorial service; Plaintiff to incur liability for Funeral Home's performance). *Id.* Plaintiff accepted the Funeral Home's written offer by tendering the voucher and assuming liability for the remaining balance. *Id.*

In Maryland and under English common law, the facts set forth above constitute a contract. Typically, all that is needed is an offer, an acceptance, and mutual consideration. *Hewitt v. Dyck-O'Neal, Inc.*, No. DKC 20-1322 (D. Md. Aug. 26, 2021). *See CTI/DC, Inc. v. Selective Ins. Co. of America*, 392 F.3d 114, 123 (4th Cir. 2004). All of those elements are present here, and Plaintiff has alleged each of them. Moreover, the contract was memorialized by a writing signed by both parties.

Defendants are seemingly confused by the difference between contract formation and excuse of performance. Plaintiff has alleged that a contract existed between Plaintiff and Funeral Home, else how could the Funeral Home argue that its performance—under a non-existent agreement—was excused. Without dancing angels on the head of a pin, Plaintiff points out that the issue of fact-based defenses to the contract are not proper questions for a Rule 12(b)(6) motion. Plaintiff did not get the services she bargained for and has so alleged. (Complaint at ¶¶ 42, 46, 48, 57), that is to say, Defendant Funeral Home breached the Contract.

### 2. The Complaint states cognizable claims for negligence and gross negligence.

As confused as the Defendants appear to be about the law of contracts, they seem even more so by Maryland's negligence laws. Plaintiff's counts for negligence and gross negligence are based upon acts and omissions and not on statements and conversations. Indeed, the outcome has an almost *res ipsa loquitur* quality—the thing speaks for itself.

It has been the decided law of Maryland for more than a century that "the surviving husband or wife . . . has a *quasi*-property right in the body of a decedent, not in the general property sense, but for the purpose of determining who shall have the custody of the body in preparing it for burial." *Painter v. U.S.F.G. Co.*, 123 Md. 301, 308 (1914). *Accord Snyder v. Holy Cross Hospital*, 352 A.2d 334 (Md. Ct. Spec. App. 1976). Plaintiff entrusted that duty to the Defendants. They failed her.

Defendants make great hay out of the notion that Plaintiff's Complaint does not detail precisely "who did what" or "who said what to whom." Indeed, she cannot know the inner workings of the Funeral Home. She has no idea who embalmed Ivan, who loaded his body into a casket, who drove the hearse, who selected the cemetery, who dug the grave, who picked out the funerary urn, or even whose idea it was to conduct two funerals.

But what she does know and what she alleged is that she entrusted Ivan's body to Defendants' care. The Defendants owed her a fiduciary duty to carry out a cremation and a solemn memorial service and deal with her fairly and honestly. The Funeral Home did not cremate Ivan as she had directed. She did not have the chance to pay her final respects. The Defendants sullied her memory of the solemn service. The Defendants denied the sacredness of her marriage to Ivan and substituted their will for hers. The thing speaks for itself.

13

Notwithstanding her lack of perfect information, Plaintiff has stated a claim for negligence and gross negligence.

### a. Negligence

Plaintiff has alleged all of the elements of negligence necessary to state a *prima facie* case. As this very Court held in *Villenouze v. Primerica Life Insurance Company*, No. RDB-11-0099 (D. Md. Sept. 26, 2011), "[to] establish negligence under Maryland law, the plaintiff must prove: '(1) a duty or obligation under which the defendant is to protect the plaintiff from injury; (2) breach of that duty; and (3) actual loss or injury to the plaintiff proximately resulting from the breach.'" *Id.* at *8 (citing *Goldhammer v. Hayes*, No. CCB-08-3405, 2009 WL 1609044, at *4 (D. Md. June 8, 2009) (quoting *Bobo v. State*, 346 Md. 706, 709, 697 A.2d 1371 (1997)).

Here, Plaintiff has alleged that the individual Defendants were agents and employees of the Funeral Home.[18] The Complaint alleges that Defendants undertook specifically enumerated duties (Complaint at 66–68)[19] and that the Defendants breached those duties, thereby injuring the Plaintiff as the proximate cause.[20]

---

[18] Plaintiff is unable to address Defendants' argument regarding *respondeat superior* because it is nonsensical. (Defendants' Memorandum at p. 9). Plaintiff has alleged that the Funeral Home's employees and agents, including the individual Defendants, were acting on behalf of their employer within the scope of their employment when they breached their duties to Plaintiff. In Maryland, employers are liable for the negligent acts of their employees during the scope of their employment under the agency theory known as *respondeat superior*. *See Southern Management Corp. v. Taha*, 378 Md. 461, 480 (Md. 2003); *see also Jean Baptiste v. Sap, Nat'l Sec. Servs. Inc.*, No. PWG-17-95 (D. Md. Feb 15, 2017).

[19] The Complaint alleges that Defendants undertook the care and custody of Ivan's body and assumed their duties under the funeral contract. They, and each of them, failed to follow the applicable standard and duty of care owed to Plaintiff in observing her wishes and direction and in caring for the body of her deceased spouse, which proximately resulted in injury to the Plaintiff. The standard and duty of care applicable to Defendants for the treatment of decedent's body and to the authorized next-of-kin and family included the duty (i) to provide and transmit

### b. Gross Negligence

To state a cause of action for gross negligence, Plaintiff must allege all of the elements of negligence[21] . In addition, the Defendants' misconduct must be of such low order as to satisfy the requirements of *Barbre v. Pope*, 402 Md. 157 (2007). In *Barbre*, Maryland's highest court defined gross negligence as "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them." *Id.* at 187.

Plaintiff has alleged conduct by the Defendants so egregious, hurtful, and outrageous—knowingly performed by the Defendants, and mockingly acted out in a grotesque pantomime—that it adds new gloss to the definitions of thoughtlessness and reckless disregard for the consequences.

---

accurate information to the Maryland Department of Health for the Death Certificate; (ii) to follow the authorized next-of-kin's wishes and direction as expressed in the funeral contract; (iii) to act with honesty and integrity when dealing with the public and the authorized next-of-kin; (iv) to make reasonable inquiry from readily available information to ascertain material facts relative to a decedent; (v) to remove scurrilous comments from public postings on the Funeral Home's website; (vi) to abide by the terms of the funeral contract and to charge only for authorized services and goods; (vii) to keep the authorized next-of-kin informed with accurate information; (viii) to treat the remains of the decedent with care and respect; (ix) to not dishonor or denigrate the decedent; and (x) to observe the solemnity and religiosity of the funeral process. The Funeral Home, by and through its various agents and employees breached those duties causing injury to the Plaintiff (Complaint at ¶¶ 66–68).

[20] The Complaint alleges that Plaintiff was not contributorily negligent, nor did Plaintiff assume any risk of injury by Defendants' negligence. (Complaint at ¶¶ 70–71).

[21] *See* section B.2.a *supra* for detailed explanation of the tort of negligence and Plaintiff's allegations in compliance with the pleading requirements.

### 3. The Complaint states cognizable claims for malicious fraud and misrepresentation.

Plaintiff has described how the Defendants, in concert, maliciously misled her, lied to her, and conspired to cause her to believe that Ivan had been cremated and that his ashes were in the funerary urn. In the process, they deprived her of her *quasi*-property right to direct the treatment of Ivan's body. They buried him against her will and destroyed the memory of what should have been a touching and solemn celebration of his life. Their statements and actions taken together constituted a malicious,[22] fraudulent scheme that created a false impression on which Plaintiff relied to her detriment by being unaware that Ivan was being buried and attending a ceremony that was bogus in every respect.

Given the detailed allegations of the Complaint taken in concert with Rule 9(b) of the Federal Rule of Civil Procedure, that "in alleging fraud[,] . . . a party must state with particularity the circumstances constituting fraud . . .. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally[,]" it is difficult for Plaintiff to understand how she has failed to comply with the Rules for pleading or how it is that Defendants cannot figure out who is being sued and for what.

As noted by Judge Grimm in *Johnson v. Capital One*, No.1:18-cv-02102-PWG (D. Md. Apr. 30, 2019):

> The Fourth Circuit has stated that Rule 9(b) requires a plaintiff to, "at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 455-56 (4th Cir. 2013) (quoting *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.* (*KBR*), 525 F.3d 370,

---

[22] Plaintiff has alleged malicious fraud. In Maryland, actual malice is defined as "a misrepresentation [made] with intent to deceive and actual knowledge of the falsity of the representation." *Frazier v. Castle Ford, Ltd.*, 430 Md. 144, 162 (2013).

379 (4th Cir. 2008)); *see Harrison v. Westinghouse Savannah River Co*., 176 F.3d 776, 784 (4th Cir. 1999). "This minimum factual description is 'often referred to as the who, what, when, where, and how of the alleged fraud.'" *Topshelf Mgmt*., *Inc*. *v*. *Campbell-Ewald Co*., 117 F. Supp. 3d 722, 725 (M.D.N.C. 2015) (quoting *KBR*, 525 F.3d at 379).

*Id.* at *5.

Plaintiff has met the Rule 9(b) heightened pleading standard. Taking the individual elements of the Fourth Circuit's pleading requirements in order, Plaintiff has covered every base. The Complaint sets forth the time—meeting dates, phone call dates, and memorial service dates are all specified; place—in telephone communications and at the Mount Street Home; contents of the false representations—communications and conduct are described in detail; the identity of the persons making the representation—the Complaint alleges that Defendants and all of them are part of the enterprise that constitutes the Funeral Home and its agents and employees; and what was obtained by the fraud—theft of the contract fee and the benefit of a cover-up that should have resulted in the loss of the Defendants' licenses to operate a funeral home, to practice mortuary science, and to conduct funerals.[23]

This Court cannot allow the Defendants—who have operated in a malicious, high-handed, and mean-spirited manner—to hide behind a curtain and commit malicious fraud against Demetra Street.

### 4. The Complaint states a cognizable claim for unfair or deceptive trade practices under the Maryland Consumer Protection Act ("MCPA").

The Defendants contend that funeral homes, funeral directors, and morticians cannot be sued under the Maryland Consumer Protection Act ("MCPA"). They also claim that even were they amenable to suit under the MCPA, and Plaintiff has failed adequately to plead her case.

---

[23] Plaintiff makes the identical argument with respect to Count Five (Misrepresentation).

This Court is well familiar with the licensing and regulation of Maryland funeral homes and morticians. *See, e.g., Brown v. Hovatter*, 525 F. Supp.2d 754 (D. Md 2007). Still, it must come as a surprise to the Court that the Defendants have cranked up their gaslight to a blinding intensity by claiming that they are medical practitioners. What is not surprising is that Defendants admit they "could find no precedent on the issue of whether the MCPA applies to morticians and funeral directors." (Defendants' Memorandum at 15). Yet, they boldly pronounce that "the common understanding of the term 'medical practitioner' would include an individual who practices mortuary science." *Id.*

The MCPA does not define the term "medical practitioner." However, the statute governing legal actions against medical practitioners defines the broader term "health care provider."[24] Nowhere in the statutory definition of "health care provider" is there the slightest hint that persons or businesses connected to the funeral industry are included or contemplated.[25]

---

[24] Maryland's highest court appears to treat the terms "medical practitioner" and "health care provider" as virtual synonyms. For example, when deciding whether billing practices of a health care provider constituted professional services, the Court of Appeals noted, "The principal issue we must resolve in applying these statutes is whether billing practices of a health care provider . . . fall within the category of "professional services" of a "medical practitioner" or "health care provider." *Scull v. Groover, Christie & Merritt, P.C.,* 435 Md. 112, 126 (Md. 2013).

[25] The Maryland Code defines "health care provider" as

    (1) (i)    A person who is licensed, certified, or otherwise authorized under the Health Occupations Article or § 13-516 of the Education Article to provide health care in the ordinary course of business or practice of a profession or in an approved education or training program; or

        (ii)    A facility where health care is provided to patients or recipients, including a facility as defined in § 10-101(e) of this article, a hospital as defined in § 19-301(g) of this article, a related institution as defined in § 19-301(o) of this article, a health maintenance organization as defined in § 19-701(g) of this article, an outpatient clinic, and a medical laboratory.

    (2)    "Health care provider" includes the agents, employees, officers, and directors of a facility and the agents and employees of a health care provider.

Furthermore, Plaintiff could find no federal or state case in the history of American jurisprudence that says otherwise.

Thankfully, Morticians, funeral directors, and funeral homes are not on the Old-Line State's statutory list of health care providers. Under the rules of statutory construction, Maryland has long accepted the doctrine of *expressio unius* est *exclusio alterius*, or the expression of one thing is the exclusion of another. *Comptroller v. Blanton*, 390 Md. 528, 538 (Md. 2006) (citing BLACK'S LAW DICTIONARY 1717 (8th ed. 2004). *Baltimore Harbor v. Ayd*, 780 A.2d 303, 314 (2001) (holding that "[w]e have long applied the principle of statutory construction, '*expressio unius* est *exclusio alterius*.'"). *Accord Biggus v. Ford Motor Credit Co.*,613 A.2d 986, 999 (1992) (stating, "[t]his is in keeping with the familiar maxim of statutory construction that '*expressio unius* est *exclusio alterius*' — the expression of one thing is the exclusion of another. Maryland has long recognized this basic rule"). This Court should reject Defendants' assertion.

Concerning violations of Maryland's Consumer Protection Act (the "MPCA"), on the other hand, the Defendants have practically written the Plaintiff's argument for her. As the Defendants noted, the MPCA prohibits the very conduct of which Plaintiff complains, namely "unfair or deceptive trade practices" in the "sale of . . . any . . . consumer services [.]" MD. CODE ANN., COM. LAW § 13-303(1).

The MCPA is "intended to provide minimum standards for the protection of consumers in the State." MD. CODE ANN., COM. LAW § 13-303(a). *See Green-Wright v. JPMorgan Chase Bank*, No. ELH-17-3199, at *13 (D. Md. Aug. 7, 2018); *see also Lloyd v. Gen. Motors*

---

MD. CODE ANN., HEALTH–GEN. § 4-301(g) (West 2019).

*Corp.*, 397 Md. 108, 140, 916 A.2d 257, 276 (2007). It is liberally construed to achieve its consumer protection objectives. *Marchese v. JPMorgan Chase Bank*, *N.A.*, 917 F. Supp. 2d 452, 465 (D. Md. 2013) (citing *State v. Cottman Transmissions Sys.*, *Inc.*, 86 Md. App. 714, 587 A.2d 1190, 1204 (1991)). Defendants are the precise type of funeral Tin Men that the MPCA was designed to protect Maryland consumers against.[26]

The gravamen of Plaintiff's Complaint with respect to violation of the MPCA is that Defendants deceived her by wrongfully (i) making false or misleading oral statements and visual depictions having the capacity, tendency, or effect of deceiving her; (ii) failing to state material facts which failures deceived or were intended to deceive her; and (iii) engaging in deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of material facts with the intent that she would rely on the same in connection with the funeral goods and services offered by the Defendants. *See, e.g., Marshall v. James B. Nutter & Co.,* 816 F. Supp.2d 259, 266 (D. Md. 2011) (explaining that "the MCPA prohibits both the use of false or misleading statements and also the omission of material facts").

The Complaint reveals an elaborate deception and breach of trust. The Defendants represented to Plaintiff that they would cremate Ivan Street and conduct a solemn memorial service. Plaintiff had entrusted the body to the care and control of the Defendants, who proceeded to abuse that trust. When Defendant Conner advised Demetra Street by telephone that a second woman insisted that Defendants bury Ivan, Plaintiff told him directly to ignore her and that she had no authority or right to make any changes to Ivan's funeral arrangements. (Complaint at ¶ 25). What followed in the wake of Defendant Conner's knowingly false assent to

---

[26] Reference is to Barry Levinson's film *Tin Men* set in 1963 Baltimore. The film depicts aluminum-siding salesmen who employ various scams to prey upon unsuspecting consumers.

Plaintiff during that telephone call set off the chain of lies, deceit, and pretense that resulted in a wrongful burial and a cruel and hurtful hoax that the Complaint alleges in detail.

Plaintiff has unquestionably stated a claim under the MPCA.

### 5. The Complaint states a cognizable claim for intentional infliction of emotional distress.

Defendants have set forth the law in their Memorandum regarding the intentional infliction of emotional distress in a clear, concise, logical, and accurate manner. For her part, Plaintiff has pleaded her count accordingly by alleging that the Defendants' conduct was (1) intentional or reckless; (2) extreme and outrageous; (3) causally connected to Plaintiff's emotional distress; and (4) that the resulting distress was severe. *See Figueiredo-Torres v. Nickel*, 584 A.2d 69, 74–75 (1991). This Memorandum in Opposition has set forth Defendants' outrageous conduct, but it is worth noting here the effect those malicious and outrageous acts have wrought:

> Defendants' outrageous conduct caused and continues to cause Plaintiff severe emotional distress. Because of Defendants' intolerable, wrongful, deceitful, and outrageous conduct, Plaintiff has been permanently and severely emotionally and psychologically injured. Plaintiff is under the care of a psychiatrist who has prescribed Zoloft for treatment of depression, panic attacks, post-traumatic stress disorder, and social anxiety disorder. Plaintiff is under the regular care of a licensed therapist. Plaintiff experiences regular, untimely, and uncontrollable episodes of crying, emotional upset, and sadness, panic, and anxiety. Plaintiff now suffers from insomnia, uncontrolled eating, weight gain, headaches, and malaise. When Plaintiff can sleep, she is frequently awakened by upsetting nightmares. Plaintiff is experiencing severe anxiety and has withdrawn from most social interaction.

(Complaint at ¶ 104).

Apparently, the Defendants do not believe what they did to Plaintiff amounts to much at all. They argue that their actions certainly were not "extreme in degree," or "atrocious," or "utterly intolerable in a civilized society." But Plaintiff posits these questions: What if the

decedent were your spouse or child? Is this the kind of "civilized society" in which the Court wishes to reside?

### 6. Plaintiff is entitled to claim punitive damages for malicious fraud and intentional infliction of emotional distress.

In the instant case, Plaintiff alleged malicious fraud and intentional infliction of emotional distress and sought punitive damages for those torts.[27] A court may award punitive damages where a defendant acts with actual malice. *Basba v. Liu Xuejie*, No. 8:19-cv-380-PX, at *14 (D. Md. Jan. 25, 2021). In plenary fashion, Plaintiff's Complaint sets forth the factual allegations that comprise the elements of both torts and has described the legal standard for each in sections B.3 and B.5, *supra*.

Defendants correctly argue a non-issue—punitive damages should not be allowed Plaintiff for breach of contract, negligence, or the MPCA counts. Plaintiff, however, is not seeking exemplary damages for those claims. (Complaint, Prayer for Relief, p. 23).

Plaintiff is entitled, therefore, to claim punitive damages for malicious fraud and intentional infliction of emotional distress based upon the allegations of the Complaint.

---

[27] Plaintiff acknowledges that her punitive damages claim for gross negligence is not permitted under Maryland case law and withdraws that portion of her damages for the tort of gross negligence. *Corwin v. Krebs*, No. JKB-17-3162 (D. Md. Dec 19. 2017); *Beall v. Holloway-Johnson*, 130 A.3d 406 (Md. 2016).

## IV.    CONCLUSION

WHEREFORE, for the preceding reasons, Plaintiff Demetra Street respectfully requests that this Court enter an order denying Defendants' Motion to Dismiss Complaint and granting Plaintiff such other and further relief as it deems just and proper.

Respectfully submitted,


/s/  Alexander J. Coffin
Alexander J. Coffin (Bar No. 21680),
Law Office of Alex Coffin, LLC
114 Spring Place Way
Annapolis, MD 21401

Phone: 410-216-3339
Email: alex.coffinlaw@gmail.com

Attorneys for Plaintiff, Demetra Street

October 6, 2021

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 6th day of October 2021, a copy of the Plaintiff's Opposition to Defendants' Motion to Dismiss and proposed Order was electronically filed (and is deemed served) via CM-ECF upon:

> Christian C. Mann (via CM-ECF)
> Mann & Casey, P.A.
> 409 Washington Avenue, Suite 600
> Towson, MD  21204

> <u>/s/ Alexander J. Coffin_____</u>
> Alexander J. Coffin