UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
(NORTHERN DIVISION)

DEMETRA STREET      *

      Plaintiff,      *

v.      *      Case No.: 1:21-cv-01970-RDB

WYLIE FUNERAL HOME, P.A.,      *
et al.
     *
     Defendants
     *

\* \* \* \* \* \* \* \* \* \*

## <u>MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT</u>

Defendants, Wylie Funeral Home, P.A., Wylie Funeral Home, P.A. of Baltimore County, Albert Wylie, Brandon Wylie, and Devin Conner, by Christian C. Mann and Mann & Casey, P.A., their attorneys, submit this memorandum in support of their Motion for Summary Judgment.

## TABLE OF CONTENTS

I.     Statement of Facts     .    .    .    .    .    .    .    .    1

     A.     Allegations of the Complaint .    .    .    .    .    1

     B.     Ivan Street's Marital Status    .    .    .    .    .    .    3

     C.     Testimony of Plaintiff .    .    .    .    .    .    .    3

     D.     Testimony of Rita Jeffers    .    .    .    .    .    .    6

     E.     Wylie Funeral Home, P.A. of Baltimore County    .    .    .    8

     F.     Testimony of Devin Conner    .    .    .    .    .    .    8

     G.     Testimony of Albert Wylie    .    .    .    .    .    .    10

     H.     Testimony of Brandon Wylie .    .    .    .    .    .    10

     I.     Testimony of Tuverla Livingston    .    .    .    .    .    11

| | | | |
|---|---|---|---|
| J. | Plaintiff's Alleged Damages | . . . . . . | 12 |
| II. | Legal Standard | . . . . . . . | 15 |
| III. | Argument | . . . . . . . . | 16 |
| A. | Wylie Funeral Home, P.A. of Baltimore County | . . . | 16 |
| B. | Breach of Contract - Wylie Funeral Home Entities | . . . | 16 |
| i. | Mutual Assent | . . . . . | 16 |
| ii. | Breach | . . . . . . . | 18 |
| iii. | Plaintiff's Breach | . . . . . | 18 |
| iv. | Damages | . . . . . . | 19 |
| C. | Negligence and Gross Negligence | . . . . | 20 |
| i. | Duty | . . . . . . . | 20 |
| a. | Death Certificate | . . . . | 20 |
| b. | Entitlement to Disposition | . . . | 21 |
| c. | Other Duties Alleged by Plaintiff | . . | 23 |
| ii. | Causation and Damages | . . . | 24 |
| iii. | Albert Wylie and Brandon Wylie | . . | 26 |
| D. | Fraudulent Misrepresentation - Conner and Wylie Funeral Home Entities | . . | 27 |
| i. | Entitlement to Disposition | . . . | 28 |
| ii. | False Representation and Knowledge of Falsity or Reckless Indifference | . . | 28 |
| iii. | Intent to Deceive | . . . . | 30 |
| iv. | Causation and Damages | . . . | 31 |

E.      Unfair or Deceptive Trade Practices - All Defendants     .     .     31

F.      Intentional Infliction of Emotional Distress - All Defendants     .     32

G.      Punitive Damages     .     .     .     .     .     .     .     34

IV.    Conclusion     .     .     .     .     .     .     .     .     .     35

# CITATIONS

<u>Rules and Statutes</u>

1.     Fed. R. Civ. P. 56   .     .     .     .     .     .     .     .     15

2.     Md. Code, Com. Law § 13-101, § 13-301, § 13-303 and § 13-408  .     .   31, 32

3.     Md. Code, Health-Gen § 4-226 and § 4-227 .     .     .     .     .   20, 21

4.     Md. Code, Health-Gen, § 5-508 and § 5-509 .     .     .     .   22, 23

<u>Case Law</u>

1.     *Abrams v. City of Rockville*, 88 Md. App. 588, 596 A.2d 116, (1991)   .     32

2.     *Adams v. Carey*, 172 Md. 173, 190 A. 815 (1937)   .     .     .     .     21

3.     *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, (1986)     .     .     .     15

4.     *Atlantic Mutual v. Kenney*, 323 Md. 116, 591 A.2d 507 (1991)   .     .   21

5.     *Barufaldi v. Ocean City, Chamber of Commerce, Inc.*, 196 Md.   .     .   18

     App. 1, 7 A.3d 643, (2010)

6.     *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, (2003)   .     15

7.     *Cramer v. Housing Opportunities Comm'n*, 304 Md. 705, 501   .     .   24, 25

     A.2d 35 (1985)

8.     *Crawford v. Mindel*, 57 Md. App. 111, (1984)     .     .     .     .     31

9.     *Drug Fair v. Smith*, 263 Md. 341, 283 A.2d 392 (1971)     .     .     .     34

10.     *Ellerin v. Fairfax Savings*, 337 Md. 216, 652 A.2d 1117 (1995)   .   28, 30, 34

11.     *Everett v. Baltimore Gas & Elec.*, 307 Md. 286, 513 A.2d 882, (1986)   .   27

12.     *Falls Garden Condo. Ass'n, Inc. v. Falls Homeowners Ass'n, Inc.*,   .     .   17

     441 Md. 290, 107 A.3d 1183 (2015)

13.     *Figueiredo-Torres v. Nickel*, 321 Md. 642, 584 A.2d 69 (1991)   .     .   32, 33

14.  *Fishman Const. Co. v. Hansen*, 238 Md. 418, 209 A.2d 605 (1965) .          .          18

15.  *Fromm Sales Co. v. Troy Sunshade Co.*, 222 Md. 229, (1960)          .          .          18

16.  *Hallowell v. Citaramanis*, 88 Md. App. 160, (1991) .          .          .          .          32

17.  *Hamilton v. Ford Motor Credit Co.*, 66 Md. App. 46, 502 A.2d          .          33
     1057 (1986)

18.  *Harris v. Jones*, 281 Md. 560, 380 A.2d 611 (1977) .          .          .          .          33

19.  *Hoffman v. Stamper*, 385 Md. 1, 867 A.2d 276 (2005)          .          .          .          24

20.  *Klein v. Weiss*, 284 Md. 36 (1978)          .          .          .          .          .          17

21.  *Kumar v. Dhanda*, 198 Md. App. 337, 17 A.3d 744 (2011) .          .          .          16

22.  *Ledvinka v. Ledvinika*, 154 Md.App. 420 (2003)          .          .          .          .          22, 23

23.  *Levin v. Singer*, 227 Md. 47, 175 A.2d 423, (1961)  .          .          .          .          28

24.  *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 916 A.2d 257, (2007)          .          .          20

25.  *Matsushita Elec. Indus. Co.*, 475 U.S. 574 (1986)          .          .          .          .          15

26.  *Mayer v. North Arundel Hospital Assoc*, 145 Md. App. 235 (2002) .          .          25

27.  *Mesmer v. Maryland Auto. Ins. Fund*, 353 Md. 241 (1999)  .          .          .          23

28.  *O'Connell v. Montgomery County*, 923 F.Supp. 761 (1996) .          .          .          15

29.  *Parkway 1046, LLC v. U.S. Home Corp.*, 961 F.3d 301 ( 2020)          .          .          16

30.  *Pennsylvania Threshermen Farmers' Mut. Casualty Ins. Co. v.*          .          .          19
     *Messenger*, 181 Md. 295, 29 A.2d 653 (1943)

31.  *Reagan v. Rider,* 70 Md. App. 503 (1987)          .          .          .          .          .          34

32.  *R-RSC Tower I, LLC v. RSC Tower I, LLC*, 429 Md. 387 (2012)          .          .          19

33.  *Seites v. McGinley*, 84 Md. App. 292, 587 A.2d 840 (1990) .          .          .          25

34.  *Siegman v. Equitable Trust Co.*, 267 Md. 309, 297 A.2d 758 (1972)          .          34

35. *Snyder v. Herbert Greenbaum Associates*, 38 Md. App. 144, 380 . . 28
    A.2d 618 (1977)

36. *Snyder v. Holy Cross Hosp.*, 30 Md. App. 317, 352 A.2d 334 (1976) . 21

37. *Snyder v. Phelps*, 580 F.3d 206 (2009) . . . . . 32

38. *Strong v. Prince George's County*, 77 Md. App. 177 (1988) . . . 24

39. *U.S. to Use of Baltimore Brick Co. v. John A. Johnson & Sons*, 65 . . 18
    F. Supp. 514 (1946)

40. *Vance v. Vance*, 286 Md. 490, 408 A.2d 728 (1979) . . . . 24

41. *Walser v. Resthaven Mem'l Gardens*, 98 Md. App. 371, 633 A.2d . 21, 22, 23, 28
    466 (1993)

42. *Wilhelm v. State Traffic Comm'n*, 230 Md. 91, 185 A.2d 715 . 24, 25, 26
    (1962)

43. *Wilmington Trust Co. v. Clark*, 289 Md. 313, 424 A.2d 744, (1981). . 23

# MEMORANDUM

## I.      Statement of Facts

Plaintiff, Demetra Street, filed suit against Defendants, Wylie Funeral Home, P.A., Wylie Funeral Home, P.A. of Baltimore County, Albert Wylie, Brandon Wylie, and Devin Conner, alleging that Defendants concealed the burial of her husband, Ivan Street, from her and deceived her by conducting a mock memorial service featuring a sham funerary urn.  (Ex. 1, Complaint). Plaintiff sued Defendants for breach of contract, negligence, gross negligence, malicious fraud, misrepresentation, unfair or deceptive trade practices, and intentional infliction of emotional distress.  (Ex. 1).  In September of 2021, Defendants moved to dismiss Plaintiff's Complaint. Defendants' motion was granted in part and denied in part.[1]

### A.      Allegations of the Complaint

Plaintiff alleged that she married Ivan Street on April 22, 2016.  (Ex. 1, P.17).  Ivan Street passed away on January 9, 2021.  (Ex. 1, P. 18).  Plaintiff claimed that she met with Devin Conner ("Conner") on January 13, 2021, identified Ivan Street's remains and authorized a direct cremation. (Ex. 1, P. 22).  She further alleged that she contracted with Defendants for Ivan Street's cremation and a memorial service at a price of $2,500.  (Ex. 1, P. 23).  Plaintiff provided a $650 voucher as payment.  (Ex. 1, P. 23).  Plaintiff alleged that, after her meeting with Conner, a woman named Renee Cook ("Cook") contacted Defendants and claimed to be Ivan Street's spouse.  (Ex. 1, P. 25). Cook provided a marriage license to Conner.  (Ex. 1, P. 25).

---

[1] All counts against Tuverla Livingston were dismissed.  Currently, the following counts remain: Count I: Breach of Contract against Wylie Funeral Home Entities; Counts II and III: Negligence and Gross Negligence against all Defendants; Counts IV and V: Fraud and Misrepresentation against Devin Conner, Wylie Funeral Home Entities; Count VI: Maryland Consumer Protection Act against all Defendants; Count VII: Intentional Infliction of Emotional Distress against all Defendants.

Plaintiff allegedly called the funeral home between January 14 and 21, 2021 and asked to speak to Conner, but was re-routed to a "Mr. Wylie." (Ex. 1, P. 28). "Mr. Wylie" allegedly told Plaintiff that the funeral home would follow Cook's instructions and bury Ivan Street. (Ex. 1, P. 28). Plaintiff claimed that she protested, but Mr. Wylie stated "So, what are you going to do about it?" and ended the phone call. (Ex. 1, P. 28). On January 22, 2021, Conner allegedly called Plaintiff and told her that Defendants rejected Cook's instructions and would conduct the memorial service. (Ex. 1, P. 29). Plaintiff alleged that Conner knew his statements were false. (Ex. 1, P. 29).

Plaintiff attended the memorial service for Ivan Street on January 23, 2021. (Ex. 1, P. 29 and 32). An urn was present at the memorial service. (Ex. 1, P. 33). Plaintiff alleged that a funeral home employee removed the urn immediately after the service. (Ex. 1, P. 34). Plaintiff claimed that Defendants "pretended that the urn contained Ivan's remains..." (Ex. 1, P. 34).

Plaintiff claimed that she did not know about the burial and did not authorize it. (Ex. 1, P. 42). On January 25, 2021, Plaintiff received an email from Conner about the burial location at the cemetery. (Ex. 1, P. 36). Plaintiff was allegedly confused and surprised by the email, and called Conner for an explanation. (Ex. 1, P. 37). She was allegedly again re-routed to "Mr. Wylie," who told Plaintiff that the funeral home buried Ivan Street, as he said they would. (Ex. 1, P. 37). Plaintiff also claimed that she was "shocked and emotionally devastated" when she saw that the spouse was listed as "unknown" on Ivan Street's death certificate. (Ex. 1, P. 40 and 41).

Plaintiff alleged that she experienced severe emotional distress due to Defendants' actions. (Ex. 1, P. 59). Specifically, Plaintiff claimed that she is being treated for depression, panic attacks, posttraumatic stress disorder and anxiety and that she experienced crying episodes, emotional upset, sadness, panic, anxiety, insomnia, nightmares, uncontrolled eating, weight gain, headaches, and malaise. (Ex. 1, P. 60).

B.     <u>Ivan Street's Marital Status</u>

It is undisputed that Ivan Street married Cook in Baltimore City in 1997.  (Ex. 2, Certified Marriage Certificate).  There is no evidence, produced by Plaintiff or otherwise, of a divorce or annulment of Ivan Street's marriage to Cook.  Therefore, there is no genuine dispute that Ivan Street was still legally married to Cook when he married Plaintiff in 2016.

Plaintiff filed for a divorce from Ivan Street in 2018.  (Ex. 3, Deposition of Plaintiff, Vol. 1, p. 39, l. 3-21; p. 40, l. 1-20).  Plaintiff and Ivan Street had been separated for over twelve months at the time of the filing.  (Ex. 3, p. 43, l. 20-21; p. 44, l. 1-20).  In April of 2019, Plaintiff requested an order of default against Ivan Street in the divorce proceeding.  (Ex. 3, p. 47, l. 14-21; p. 48, l. 1-7).  An order of default was entered against Ivan Street on May 28, 2019.  (Ex. 4, Order of Default).  The divorce proceeding was still pending at the time of Ivan Street's passing and was ultimately dismissed due to his death.

C.     <u>Testimony of Plaintiff</u>

Plaintiff learned that Ivan Street passed away when she received a phone call from his family member on January 10, 2021.  (Ex. 3, p. 51, l. 12-18; p. 52, l. 1-4).  Plaintiff had not seen Ivan Street since moving to Virginia in 2020.  (Ex. 3, p. 54, l. 2-10).  On January 11, 2021, Plaintiff spoke to Ivan' Street's cousin, Rita Jeffers ("Jeffers"), and discussed arrangements.  (Ex. 3, p. 61, l. 4-21; p. 65, l. 7-13).  Jeffers told Plaintiff that she had already made arrangements to have Wylie Funeral Home cremate Ivan Street's remains because the family could not afford a burial.  (Ex. 3, p. 67, l. 1-12; p. 69, l. 20-21; p. 70, l. 1-6).  Jeffers also told Plaintiff that she would pay for the majority of the arrangements.  (Ex. 3, p. 68, l. 9-18).  Finally, Jeffers told Plaintiff that she should call Wylie Funeral Home.  (Ex. 3, p. 66, l. 4-11).  Plaintiff called the funeral home on 701 N. Mount Street, Baltimore, MD 21217 (the "Funeral Home") on January 12, 2021 and spoke to

Conner about the arrangements made by Jeffers. (Ex. 3, p. 71, l. 18-21; p. 72, l. 1-8; p. 73, l. 9-12).

Plaintiff first met Conner at the Funeral Home on January 13, 2021. (Ex. 3, p. 77, l. 2-12). Plaintiff testified that there was no actual meeting, but that Conner gave her a statement to sign so that she could obtain a voucher from Social Services to contribute towards the arrangements. (Ex. 3, p. 79, l. 15-21; 13-16; p. 81, l. 20-21; p. 82, l. 1-21; p. 83, 1-14; Ex. 5, Street Statement). It was Plaintiff's understanding that she was signing the statement for the sole purpose of obtaining the voucher. (Ex. 3, p. 83, l. 11-14). Plaintiff did not discuss any of the options or prices on the statement with Conner. (Ex. 3, p. 82, l. 21; p. 83, l. 1-3; p. 84, l. 12-19). When Plaintiff signed the statement, it did not have any numbers on it. (Ex. 3, p. 89, l. 1-21; p. 90, l. 1-5.) After Social Services rejected the statement, Plaintiff returned the statement to the Funeral Home, had it filled out, and returned it to Social Services to obtain the voucher. (Ex. 3, p. 86, l. 19-21; p. 87, l. 1-11). Ultimately, Plaintiff obtained the voucher for $650 and provided it to the Funeral Home. (Ex. 1, Complaint, P. 23). However, Plaintiff did not make any other payments to the Funeral Home. (Ex. 1, P. 46; Ex. 3, p. 85, l. 8-12). In addition, when Plaintiff spoke to Conner, she did not discuss who would be paying for the arrangements. (Ex. 3, p. 80, l. 21; p. 81, l. 1-4, 8-14). Finally, Conner told Plaintiff that the memorial service had already been scheduled for January 23, 2021, however, they never discussed whether Plaintiff wanted a service, the details of the service or Plaintiff's wishes for the service. (Ex. 3, p. 85, l. 14-21; p. 86, l. 1-16; p. 130, l. 10-17).

Plaintiff received a call from Conner during her drive back to Virginia. (Ex. 3, p. 96, l. 1-9). Conner told Plaintiff that another woman, Cook, was claiming to be Ivan Street's wife. (Ex. 3, p. 96, l. 10-14). Conner advised that he asked Cook to provide a marriage license and that the Funeral Home would need to wait to do anything. (Ex. 3, p. 96, l. 15-21; p. 97, l. 1-14). Plaintiff next spoke to Conner on January 22, 2021. (Ex. 3, p. 98, l. 10-21). Plaintiff claimed that Conner told

her to disregard what Cook was trying to do and that the Funeral Home was going to proceed with the memorial service. (Ex. 3, p. 125, l. 3-20) They did not discuss cremation during the call. (Ex. 3, p. 126, l. 10-21; p. 127, l. 1-10) Plaintiff testified that she never learned and was never told that Cook had other wishes for Ivan Street's remains. (Ex. 3, p. 100, l. 18-21) In addition, Plaintiff had no knowledge of whether Cook made any payments to the Funeral Home for the arrangements for Ivan Street. (Ex. 6, Deposition of Plaintiff, Vol. 2, p. 225, l. 11-18).

Plaintiff testified that she called the Funeral Home and spoke to a "Mr. Wylie" prior to the memorial service. (Ex. 3, p. 103, l. 10-13) Plaintiff did not know the date of the call. (Ex. 3, p. 103, l. 21; p. 104, l. 1-4) Plaintiff claimed that she asked "Mr. Wylie" on the phone call, "Are we still doing a cremation?" (Ex. 3, p. 108, l. 18-20) Plaintiff testified that "Mr. Wylie" said in response, "I'm going to do what I want to do" and what are you going to do about it, before he hung up the phone. (Ex. 3, p. 109, l. 7-15).

Plaintiff attended the memorial service on January 23, 2021. An urn was present at the service. (Ex. 3, p. 136, l. 15-17) Plaintiff testified that she did not discuss an urn with anyone at the Funeral Home prior to the service and was never told that the urn contained Ivan Street's ashes. (Ex. 3, p. 137, l. 10-14; p. 138, l. 12-14) Plaintiff testified that, after the service, a woman took the urn and said, "Nobody's getting this." (Ex. 3, p. 138, l. 17-21; p. 139, l. 1) Before leaving the service, Plaintiff did not speak to anyone about Ivan Street's ashes. (Ex. 3, p. 145, l. 5-8).

Plaintiff testified that Conner and the Funeral Home never told her that Ivan Street's remains would be buried. (Ex. 3, p. 103, l. 1-6) Plaintiff also testified that she was never told that Ivan Street's remains had, in fact, been cremated. (Ex. 3, p. 127, l. 11-14) Plaintiff testified that she first learned that Ivan Street's remains had been buried when she received an email from Conner about the burial location on January 25, 2021. (Ex. 3, p. 152, p. 16-21; p. 153, l. 1-18) On

January 27, 2021, Plaintiff responded to the email and wrote "Good morning I haven't received the resting spot for my husband Ivan Street." (Ex. 3, p. 154, l. 13-16). On January 28, 2021, Conner sent Plaintiff the record of interment of Ivan Street's remains. (Ex. 3, p. 159, l. 12-21; p. 160, l. 1-12).

After the day of the memorial service, Plaintiff testified that she called the Funeral Home and spoke to "Mr. Wylie" about Ivan Street's death certificate and why it listed the spouse as "unknown." (Ex. 3, p. 148, l. 14-21; p. 149, l. 1-3; p. 150, l. 1-10). Plaintiff did not recall the date of the phone call. (Ex. 3, p. 149, l. 4-7). Plaintiff claimed that she asked "Mr. Wylie" why the urn was taken away at the memorial service during the call, but "Mr. Wylie" did not answer the question. (Ex. 3, p. 151, l. 1-12). Plaintiff also claimed that she asked to speak to Conner, and "Mr. Wylie" would not let her. (Ex. 3, p. 151, l. 13-15). Nothing else was discussed during the phone call. (Ex. 3, p. 151, l. 16-18).

### D.     Testimony of Rita Jeffers

Ivan Street was Rita Jeffers' cousin by blood. (Ex. 7, Deposition of Rita Jeffers, p. 8, l. 16-20). Ivan Street did not have any children or siblings and his parents predeceased him. (Ex. 7, p. 15, l. 8-18). To her knowledge, Ivan Street did not have a will. (Ex. 7, p. 12, l. 10-11).

Jeffers made the decision to contact Wylie Funeral Home. (Ex. 7, p. 26, l. 13-17; p. 27, l. 1-6). On January 12, 2021, Jeffers met with Conner and discussed arrangements. (Ex. 7, p. 31, l. 1-6). Jeffers told Conner that the remains would have to be cremated because the family did not have enough money for a burial. (Ex. 7, p. 31, l. 1-17). In addition, Jeffers went over a Statement of Funeral Goods and Services Selected with Conner and signed the statement during the meeting. (Ex. 7, p. 37, l. 7-12; Ex. 8, Jeffers Statement). The total on the statement for the services was $3,400. (Ex. 7, p. 37, l. 19-21; Ex. 8). Jeffers and her sister paid the total with contributions from

Ivan Street's cousins. (Ex. 7, p. 38, l. 7-19). Jeffers was aware from Conner that Plaintiff had given a Social Services voucher to the Funeral Home, but Plaintiff ultimately did not make any personal contributions toward the total owed for the services. (Ex. 7, p. 38, l. 20-21; p. 39, l. 1-8; p. 40, l. 8-15). After the meeting with Conner, Jeffers called Plaintiff and told her about the arrangements for Ivan Street's remains. (Ex. 7, p. 40, l. 19-21; p. 41, l. 15; p. 43, l. 1-5).

A few days after the meeting, Conner called Jeffers and told her that another woman, Cook, was claiming to be Ivan Street's spouse. (Ex. 7, p. 43, l. 6-21; p. 44, l. 1-5). Conner explained to Jeffers that the Funeral Home could not cremate and would have to bury Ivan Street's remains. (Ex. 7, p. 44, l. 2-21; p. 45, 1-7). Jeffers did not protest and told Conner "if that's the only way, then we will have to do that." (Ex. 7, p. 45, l. 8-16). Jeffers also told Conner that the family still wanted to have a memorial service and requested that an urn be present for the service. (Ex. 7, p. 53, l. 7-17; p. 54, l. 15-21; p. 55, l. 1-12).

After discussing a burial with Conner, Jeffers spoke to Plaintiff over the phone prior to the memorial service. (Ex. 7, p. 46, l. 11-19; p. 48, l. 7-10). Jeffers told Plaintiff that they would not be able to cremate Ivan Street's remains because there was another woman claiming to be his spouse. (Ex. 7, p. 46, l. 20-21; p. 47, l. 1-4). She also told Plaintiff that the Funeral Home would have to bury him and that there would be an urn at the memorial service. (Ex. 7, p. 47, l. 9-17; p. 52, l. 5-9; p. 55, l. 19-21; p. 56, l. 4-11). After being told about the issue, Plaintiff said "Okay" to Jeffers and did not verbalize any objection to a burial or an urn. (Ex. 7, p. 47, l. 18-21; p. 48, l. 1-6). Jeffers also told her sister and two of Ivan Street's cousins about the burial. (Ex. 7, p. 50, l. 3-11; 52, 1-2). Jeffers did not tell anyone else about the burial because she "didn't want a big issue to come up" or for someone to have an "objection to it..." (Ex. 7, p. 51, l. 1- 20). Jeffers was not advised by anyone at the Funeral Home not to tell others about the burial. (Ex. 7, p. 52, l. 10-13).

E.    Wylie Funeral Home, P.A. of Baltimore County

Wylie Funeral Home, P.A. of Baltimore County is a separate entity from Wylie

Funeral Home, P.A. (Ex. 9, Wylie Funeral Home, P.A. of Baltimore County's Answers to

Interrogatories, No. 1).  Wylie Funeral Home, P.A. of Baltimore County owns and operates a

funeral home located at 9200 Liberty Rd, Randallstown, MD 21133.  (Ex. 9, No. 1).  Wylie Funeral

Home, P.A. owns and operates the Funeral Home located at 701 N. Mount Street, Baltimore, MD

21217.  (Ex. 10, Wylie Funeral Home, P.A.'s Answers to Interrogatories, No. 1).  Wylie Funeral

Home, P.A. of Baltimore County denies that it entered into a contract, provided any services, or

corresponded with anyone regarding the arrangements for Ivan Street's remains.  (Ex. 9, No. 2).

All of the arrangements were completed at the Funeral Home located on Mount Street.  (Ex. 7, p.

29, l. 5-16).  When Plaintiff first called, she called the Mount Street Funeral Home.  (Ex. 3, p. 72, l.

3-8).  In addition, Plaintiff's meeting with Conner took place at the Mount Street Funeral Home.

(Ex. 3, p. 77, l. 2-9).

F.    Testimony of Devin Conner

Conner is a manager of the Funeral Home.  (Ex. 11,  Deposition of Devin Conner, p. 7, l. 2-

5).  Conner testified that he did not present Plaintiff with a contract when he met her.  (Ex. 11, p.

39, l. 15-21; p. 40, l. 1).  Plaintiff had told him previously over the phone that she did not want to

pay for anything and that she wanted to follow what Jeffers had in place.  (Ex. 11, p. 39, l. 15-21; p.

40, l. 1).  The sole purpose of the statement that was filled out was for Plaintiff to have a document

to take to Social Services to obtain a voucher, if she wished to do so.  (Ex. 5; Ex. 11, p. 43, l. 5-16;

p. 50, l. 12-18).

After he met Plaintiff, Conner received a phone call from Cook.  (Ex. 11, p. 54, l. 10-18).

Cook told Conner that her husband, Ivan Street, was at the Funeral Home and that she wanted to

see him.  (Ex. 11, p. 54, l. 19-21).  Cook later emailed Conner a copy of the marriage license for her marriage to Ivan Street.  (Ex. 11, p. 56, l. 8-15).  Cook then came to the Funeral Home and met with Conner.  (Ex. 11, p. 58, l. 19-21; p. 59, l. 1-3).  Cook did not make any requests regarding Ivan Street's arrangements during the meeting.  (Ex. 11, p. 58, l. 19-21; p. 59, l. 1-3).  In addition, Cook never paid any money to the Funeral Home for the arrangements.  (Ex. 11, p. 59, l. 7-10).  After meeting Cook, Conner called Plaintiff and told her that Cook had provided documentation indicating that she was Ivan Street's wife.  (Ex. 11, p. 61, l. 11-21).

Conner discussed the issue of two women claiming to be Ivan Street's spouse with Albert Wylie and Brandon Wylie.  (Ex. 11, p. 64, l. 1-13).  Albert Wylie and Brandon Wylie instructed him to contact the State Board of Morticians for advice, however, the State Board told him to contact the Funeral Home's lawyers.  (Ex. 11, p. 64, l. 16-21).  Ultimately, the Funeral Home determined that it could not cremate Ivan Street's remains because a legal next of kin was required to authorize a cremation.  (Ex. 11, p. 78, l. 21; p. 79, l. 1-8).  Two women had documentation indicating they were Ivan Street's wife, and it was not the Funeral Home's decision to determine who the lawful wife was.  (Ex. 11, p. 79, l. 5-8).  After the decision was made, Conner individually called Jeffers, Plaintiff and Cook and told them that the Funeral Home could not cremate and would have to bury Ivan Street's remains.  (Ex. 11, p. 80, l. 9-21; p. 81, l. 1-21; p. 82, l. 1-20).  Jeffers, Plaintiff and Cook authorized a burial.  (Ex. 11, p. 25, l. 21; p. 26, l. 1-2; p. 51, l. 9-11; p. 80, l. 9-21; p. 81, l. 1-21; p. 82, l. 1-20).  When he spoke to Jeffers on the phone about a burial, she made the decision to have an empty urn at the memorial service.  (Ex. 11, p. 73, l. 18-20; p. 74, l. 1-2).  Conner notified Plaintiff over the phone that an empty urn would be present at the service.  (Ex. 11, p. 82, l. 21; p. 83, l. 1-18).  After speaking to Plaintiff on the phone about the burial and the urn, Conner never spoke to her again and told her that something different was going to happen with

Ivan Street's remains.  (Ex. 11, p. 83, l. 14-18).

Conner testified that a burial is more expensive than a cremation and that the Funeral Home paid for the burial of Ivan Street's remains.  (Ex. 11, p. 25, l. 17-20; p. 28, p. 7-9).  Conner did not charge for a cremation.  (Ex. 11, p. 31, l. 3-5).  In addition, Conner testified that Jeffers provided the information used to complete the death certificate for Ivan Street.  (Ex. 11, p. 16, l. 1-4).  When Jeffers met Conner to discuss the arrangements, she told him that Ivan Street was married, but she did not know the name of his spouse.  (Ex. 11, p. 17, l. 21; p. 18, l. 1-14; p. 19, l. 20-21).

G.    Testimony of Albert Wylie

Albert Wylie is a licensed mortician and has been the owner of the Funeral Home for thirty four years.  (Ex. 12, Deposition of Albert Wylie, p. 7, l. 15-17; p. 8, l. 15-21; p. 9, l. 1).  Albert Wylie testified that he spoke to Plaintiff over the phone about the death certificate for Ivan Street.  (Ex. 12, p. 12, l. 15-18).  Plaintiff wanted to know why her name was not on the certificate.  (Ex. 12, p. 12, l. 19-21; p. 13, l. 1).  Albert Wylie did not speak to her about anything else on the phone call.  (Ex. 12, p. 13, l. 5-7).  Albert Wylie denied that he ever told Plaintiff "I'm going to do what I want to do and there's nothing you can do about it."  (Ex. 12, p. 27, l. 16-21; p. 28, l. 1-2).  Albert Wylie testified that he did not speak to Plaintiff at any other time.  (Ex. 12, p. 23, l. 16-21; p. 24, l.) Finally, Albert Wylie did not make the decision to bury Ivan Street or to place an empty urn at the memorial service.  (Ex. 12, p. 22, l. 19-21; p. 23, l. 9-21; p.24, l. 1).

H.    Testimony of Brandon Wylie

Brandon Wylie is the CEO of the Funeral Home and is a licensed mortician.  (Ex. 13, Deposition of Brandon Wylie, p. 5, l. 18-21; p. 6, l. 1, 11-12).  Brandon Wylie discussed the issue of two women claiming to be Ivan Street's spouse with Devin Conner, Albert Wylie and Tuverla Livingston.  (Ex. 13, p. 18, l. 2-9; p. 27, l. 10-11).  They determined that cremation, which is a final

disposition that cannot be undone, was not possible due to the two women's claims.  (Ex. 13, p. 18, l. 2-11).  Brandon Wylie instructed Conner to advise Jeffers, Plaintiff and Cook that cremation was not an option and that their next option was to have a burial.  (Ex. 13, p. 18, l. 12-18; p. 20, l. 20-21; p. 21, l. 1-13).  Per Conner, Plaintiff, Jeffers and Cook all accepted the burial option.  (Ex. 13, p. 22, l. 5-13).  Since the family could not afford a burial, the Funeral Home provided a casket and a burial site and lost money by performing the burial.  (Ex. 13, p. 18, l. 18-21; p. 19, l. 1-3, 18-21; p. 20, l. 1-2).  Brandon Wylie did not make the decision to bury Ivan Street or to place an empty urn at the memorial service.  (Ex. 13, p. 29, l. 21; p. 30, l. 1-12).  Those decisions were made by Plaintiff, Jeffers and Cook.  (Ex. 13, p. 29, l. 21; p. 30, l. 1-12).  Finally, there is no evidence that Brandon Wylie ever spoke to Plaintiff or had any meaningful involvement in the arrangements.  (Ex. 13, p. 18, l. 2-21; p. 19, l. 1-14; p. 29, l. 10-15; p. 30, l. 13-16).

    I.      Testimony of Tuverla Livingston

Tuverla Livingston ("Livingston") is a licensed mortician and is a manager of the Funeral Home.  (Ex. 14, p. 6, l. 8-9; p. 8, l. 1-4).  Livingston testified that the Funeral Home paid for the casket and burial of Ivan Street's remains because it was a hardship for the family.  (Ex. 14, p. 25, l. 11-21; p. 26, l. 1-2).  Livingston further testified that empty urns have been placed at other memorial services at the Funeral Home.  (Ex. 14, p. 23, l. 11-16).  In some instances, a decedent's family members will request an empty urn because they do not wish to purchase one or they plan on later burying the remains.  (Ex. 14, p. 24, l. 1-6).  In those instances, the family members making that decision are aware that the urn is there solely for the look of the service.  (Ex. 14, p. 24, l. 6-9).  Finally, Livingston testified that the spouse was listed as "unknown" on the death certificate so that the two women could determine who had the legal right to being Ivan Street's spouse.  (Ex. 14, p. 28, l. 13-19).

Plaintiff has been on disability for posttraumatic stress disorder ("PTSD"), anxiety and depression since 2015.  (Ex. 3, p. 15, l. 14-21; p. 16, l. 1-8).  On June 14, 2019, Plaintiff was evaluated by Rick Parente, Ph.D., a psychologist, in connection with her claim for benefits.  (Ex. 15, 6/14/19 Parente Report).  During the evaluation, Plaintiff told Dr. Parente that she spent most of her days around the house, had difficulty being in public places, and did not visit with friends or relatives often.  (Ex. 15).  In his report, Dr. Parente noted that Plaintiff had a variety of symptoms related to limited cognition, anxiety and depression, including depression, low energy level, sleep disturbance, fears and phobias, racing thoughts, panic attacks, nervousness, and headaches.  (Ex. 15, p. 5).  Dr. Parente diagnosed Plaintiff with bipolar disorder, among other things.  (Ex. 15, p. 7).

Before Ivan Street passed away, Plaintiff was going to therapy to manage her PTSD, anxiety and depression.  (Ex. 6,  Deposition of Plaintiff, Vol. 2, p. 239, l. 11-21; p. 240, l. 1-21; p. 241, l. 1-8; p. 243, l. 10-19).  Plaintiff had been taking Zoloft for these conditions since 2018.  (Ex. 6, p. 245, l. 14-15).  On November 4, 2020, Plaintiff attended a therapy session at Rockbridge Area Health Center.  (Ex. 16, 11/4/20 Progress Note).  Plaintiff told her therapist that she was worried, constantly anxious and in a state of hyperarousal due to issues involving her son and her boyfriend.  (Ex. 16).  The therapist's assessment was major depressive disorder, recurrent, moderate, complex PTSD and personal history of adult psychological abuse.  (Ex. 16).  On November 20, 2020, Plaintiff consulted with Marshall Vance, M.D., a psychiatrist at Rockbridge Area Health Center.  (Ex. 17, 11/20/20 Psychiatric Evaluation).  Plaintiff exhibited symptoms of depression, including sadness and sleep disturbance, and symptoms of PTSD, such as hypervigilance, insomnia, nightmares, anxiety, and panic attacks.  (Ex. 17).  Plaintiff told Dr. Vance that she had difficulties with anxiety since childhood.  (Ex. 17).  Dr. Vance diagnosed Plaintiff with complex PTSD and

increased her Zoloft dosage from 25 mg to 50 mg.  (Ex. 17).

Plaintiff claimed that she suffered emotional distress as a result of the events alleged in the Complaint.  Specifically, Plaintiff testified that she experienced mistrust and disrespect due to Defendants' alleged actions.  (Ex. 6, p. 263, l. 1-20; p. 264, l. 16-17).  In addition, Plaintiff claimed that her PTSD, anxiety and depression worsened.  (Ex. 6, p. 265, l. 14-16; p. 270, l. 19-21; p. 271, l. 1-17; p. 272, l. 3-18).  However, Plaintiff also experienced depression due to Ivan Street's passing and the claim made by Cook.  (Ex. 6, p. 267, l. 17-21; p. 268, l. 1-21; p. 269, l. 1-5).  Further, Plaintiff testified that she suffered from panic attacks, but she could not describe them and did not remember the last time she had one.  (Ex. 6, p. 269, l. 6-21; p. 270, l. 1-13).  In addition, Plaintiff testified that she had crying episodes, insomnia, nightmares about seeing Ivan Street on a stretcher, and headaches.  (Ex. 6, p. 273, l. 2-18; p. 274, l. 15-18; p. 275, l. 3-21; p. 276, l. 1-16; p. 278, l. 8-20;).  Plaintiff also testified that she engaged in uncontrolled eating and gained weight, however, she had those behaviors before Ivan Street's passing.  (Ex. 6, p. 277, l. 5-19).  Finally, Plaintiff testified that she has withdrawn from most social interaction because she now stays to herself more than she used to.  (Ex. 6, p. 280, l. 20-21; p. 281, l. 1-12).

Plaintiff attended a therapy session at Rockbridge Area Health Center on February 1, 2021. (Ex. 18, 2/1/21 Progress Note).  At the session, Plaintiff told her therapist that she was in shock over her estranged husband's death, she was haunted by the fact that no autopsy was done, and she wondered if "someone in the family had something to do with it."  (Ex. 18, p. 2).  Plaintiff also told her therapist that she had to identify the body two weeks prior and that it was an "awful experience."  (Ex. 18, p. 2).  She stated that "she keeps seeing him laying on the table and this image comes up all of the time" and that "everytime she closes her eyes, she sees her husband laying on the cot."  (Ex. 18, p. 2).  Finally, Plaintiff told her therapist that "the memorial was last

week and she felt that it went well." (Ex. 18, p. 2). The therapist's assessment was major depressive disorder, recurrent, moderate, complex PTSD, personal history of adult psychological abuse and grief reaction. (Ex. 18, p. 3).

Plaintiff continued to consult her therapist in the months following the memorial service. (Ex. 19, 2/10/21 - 6/17/21 Progress Notes). On February 10, 2021, Plaintiff told her therapist that she received the death certificate and saw that it said "unknown" in the spouse section, which "hurt her so much because once again, there is no acknowledgment that she is the spouse." (Ex. 19, p. 1). The therapist's assessment for this session was unchanged from the prior session on February 1, 2021. (Ex. 19, p. 2). Between the memorial service and July of 2021, Plaintiff did not mention the burial, the urn or any other issues regarding the Funeral Home to her therapist, other than telling the therapist that she retained an attorney to investigate "the other lady who claimed to be her estranged husband's current wife." (Ex. 19). Instead, Plaintiff discussed problems with her children, her toxic relationship with her boyfriend, stress and anxiety from the pandemic, and depression relating to physical ailments. (Ex. 19). There was no change in the therapist's assessment of the Plaintiff. (Ex. 19).

On June 18, 2021, Plaintiff consulted with Dr. Vance. (Ex. 20, 6/18/21 Psychiatric Evaluation). Plaintiff told Dr. Vance that she was "stressed out about family including death of spouse," however, she was "'less depressed' with lessened fatigue, improved sleep pattern, subjectively less sad and more motivated to do daily chores/personal hygiene." (Ex. 20, p. 1). Dr. Vance diagnosed Plaintiff with depression with anxiety and complex PTSD and refilled her Zoloft at 50 mg. (Ex. 20, p. 4).

In discovery, Defendants propounded an interrogatory to Plaintiff that asked her to itemize any and all expenses or damages incurred by her that resulted from the matters alleged in the

Complaint. (Ex. 21, Plaintiff's Supplemented Answers to Interrogatories). For economic damages, Plaintiff answered that she incurred out of pocket expenses relating to medical and psychiatric care and medications. (Ex. 21, Answer to Interrogatory No. 19). Plaintiff did not produce any documents supporting these alleged damages in discovery. Finally, Plaintiff did not designate any expert witnesses who she would call in her case in chief to provide testimony in support of her damages.

## II.     Legal Standard

Fed. R. Civ. P. 56 states that "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56 requires that summary judgment be granted where, as here, it is clear that there is no dispute that requires the case to be submitted to a trier of fact. *O'Connell v. Montgomery County*, 923 F.Supp. 761 (1996).

The non-moving party bears the burden of demonstrating that there are disputes of material fact so as to preclude the entry of judgment as a matter of law. *Matsushita Elec. Indus. Co.*, 475 U.S. 574, 586 (1986). To meet this burden, the party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. Stated another way, "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts'" showing that there is a genuine dispute of material facts. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent entry of summary judgment. *Id.* at 252.

### III.    Argument

#### A.    Wylie Funeral Home, P.A. of Baltimore County

Plaintiff cannot produce any evidence that Wylie Funeral Home, P.A. of Baltimore County contracted with her, provided services relating to Ivan Street's remains or made any representations regarding cremation, the urn or any of the services.  To the extent that the statement signed by Plaintiff is a contract, which Defendants dispute, then the contract was clearly between Plaintiff and Wylie Funeral Home, P.A.  (Ex. 5).  At the top of the statement, the Mount Street Funeral Home is checked.  (Ex. 5).  The Liberty Road funeral home is unchecked.  (Ex. 5).  Further, it is clear from the testimony of Plaintiff and Jeffers that all of the arrangements were handled by the Mount Street Funeral Home, which is owned and operated by Wylie Funeral Home, P.A.  As such, there is no basis for any of Plaintiff claims against Wylie Funeral Home, P.A. of Baltimore County and judgment should be entered in its favor.

#### B.    Breach of Contract - Wylie Funeral Home Entities

In the Complaint, Plaintiff alleged that Defendants breached the contract by failing to cause Ivan's cremation and ignoring the authorization to cremate and to instead conduct a burial. (Ex. 1, P. 63).  The elements of a claim for breach of contract are "'contractual obligation, breach, and damages.'"  *Parkway 1046, LLC v. U.S. Home Corp.*, 961 F.3d 301, 307 ( 2020), quoting *Kumar v. Dhanda*, 198 Md. App. 337, 344, 17 A.3d 744, 749 (2011).  Defendants deny that they entered into a contract with Plaintiff and seek summary judgment because Plaintiff cannot present evidence establishing that a contract existed, that Defendants breached a contract or that she sustained any damages as a result of an alleged breach.

##### i.    Mutual Assent

Plaintiff cannot establish, as a matter of law, that a contract existed between her and

Defendants because there is no evidence of mutual assent. "One of the essential elements of formation of contract is manifestation of agreement or mutual assent by parties to terms thereof." *Klein v. Weiss*, 284 Md. 36, 63 (1978). "Manifestation of mutual assent includes two issues: (1) intent to be bound, and (2) definiteness of terms." *Falls Garden Condo. Ass'n, Inc. v. Falls Homeowners Ass'n, Inc.*, 441 Md. 290, 107 A.3d 1183, 1190 (2015). "Failure to agree on or even discuss an essential term of contract may indicate that mutual assent required to make or modify contract is lacking." *Id.*

Plaintiff is purportedly relying on the statement she signed during her meeting with Conner to claim that she entered into a contract with Defendants for a cremation. (Ex. 5). However, it is clear from the testimony of the parties that there was no mutual assent sufficient to form a contract. Plaintiff and Conner never discussed any essential terms regarding the arrangements. Specifically, Plaintiff and Conner did not discuss who would pay for the arrangements, whether Plaintiff wanted a memorial service, the date, details or Plaintiff's wishes for a memorial service, or any of the options or prices on the statement. Those essential terms, including cremation, had already been discussed with Jeffers, and Plaintiff was aware of that before speaking to Conner. In addition, it is evident that the sole intent of the statement was to provide Plaintiff with a document that she could use to obtain a voucher to contribute towards the services arranged for by Jeffers. Plaintiff testified that she understood that the sole purpose of the statement was to obtain the voucher, which was corroborated by Conner in his deposition. As further evidence of the intent of the statement, Plaintiff testified that the statement originally did not even have any numbers on it. Based on the testimony of the parties, there was no intent by the parties to be bound and there was no discussion of any of the essential terms for the arrangements for Ivan Street. As such, there was no mutual assent and, therefore, there was no contract between the parties as a matter of law.

17

### ii. Breach

To the extent that a contract existed between Plaintiff and Defendants, then Plaintiff's claims regarding a breach should be limited solely to cremation. Plaintiff alleged that Defendants breached the contract in a variety of ways. (Ex. 1, P. 63). Plaintiff claimed that Defendants ignored their fiduciary duties, even though there is no evidence of a fiduciary relationship in the record or recognition of a fiduciary relationship by law. Plaintiff also claimed that Defendants breached the contract by conducting a sham memorial service. The statement, which Defendants deny was a contract, simply states that the use of equipment and staff for a memorial service would be provided. (Ex. 5). There is no evidence that Defendants failed to supply equipment or staff for the service. Finally, Plaintiff claimed that Defendants submitted false information on the death certificate. The statement relied on by Plaintiff does not provide that Defendants had a contractual obligation to perform any services relating to a death certificate. (Ex. 5).

### iii. Plaintiff's Breach

Plaintiff cannot bring a breach of contract action against Defendants because Plaintiff breached the alleged contract. A party seeking to recover on a contract must ordinarily perform its part of the contract. *Fishman Const. Co. v. Hansen*, 238 Md. 418, 209 A.2d 605 (1965). Thus, a party that breaches a contract, that is who fails without legal excuse to perform any promise forming the whole or part of the contract, cannot recover for a breach of the contract by the other party. *U.S. to Use of Baltimore Brick Co. v. John A. Johnson & Sons*, 65 F. Supp. 514 (1946). "A breach is material "if it affects the purpose of the contract in an important or vital way." *Barufaldi v. Ocean City, Chamber of Commerce, Inc.*, 196 Md. App. 1, 23, 7 A.3d 643, 656-57 (2010). The failure to make payments under a contract is a material breach in the absence of a showing of justification or excuse. *Fromm Sales Co. v. Troy Sunshade Co.*, 222 Md. 229, 233 (1960).

If a contract existed, which Defendants dispute, then Plaintiff materially breached the contract by failing to make full payment to Defendants. The statement relied on by Plaintiff indicates that a total of $2,500 was being billed to Plaintiff, personally. (Ex. 5). In addition, the statement specifies that full payment was due no later than January 15, 2021. (Ex. 5). However, Plaintiff admitted in her deposition that she did not make full payment to the Funeral Home. In fact, there is no evidence in this matter that Plaintiff made any personal payments to the Funeral Home. Instead, Plaintiff obtained a voucher for $650 from Social Services. Therefore, Plaintiff materially breached the alleged contract and cannot recover for an alleged breach by Defendants.

iv.     Damages

Plaintiff has not produced evidence or alleged the existence of any damages that she sustained due to the alleged breach by Defendants. "The amount of damages recoverable for breach of contract is such as may reasonably be considered as arising naturally from the breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it." *Pennsylvania Threshermen Farmers' Mut. Casualty Ins. Co. v. Messenger*, 181 Md. 295, 300-01, 29 A.2d 653, 656 (1943). "[A] party injured by a breach of contract has a right to damages based on his expectation interest as measured by (a) the loss in the value to him of the other party's performance caused by its failure or deficiency, plus (b) any other loss, including incidental or consequential loss, caused by the breach, less (c) any cost or other loss that he has avoided by not having to perform. *R-RSC Tower I, LLC v. RSC Tower I, LLC*, 429 Md. 387, 407-8 (2012).

Plaintiff asserted damages relating to emotional distress that she allegedly sustained due to the conduct of Defendants. Plaintiff also claimed unsupported out of pocket costs relating to medical and psychological care that she received. Such damages are not recoverable in Plaintiff's

breach of contract claim. Plaintiff has not identified any other damages that she has allegedly sustained in this matter, due to a breach of contract or otherwise. Nor could Plaintiff, as there is no evidence that she even made any personal payments to Defendants. Since Plaintiff did not identify any damages arising from the alleged breach of contract, Plaintiff cannot present a prima facie case of breach of contract and Defendants are entitled to judgment as a matter of law.

### C.  Negligence and Gross Negligence - All Defendants

Plaintiff cannot present a prima facie case of negligence and gross negligence against Defendants, as Defendants owed no duty to Plaintiff and Plaintiff cannot prove causation and damages. To establish negligence, a plaintiff must prove the following four elements: "(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty." *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 916 A.2d 257, 270-71 (2007).

### i.  Duty

Defendants contend that they did not owe a duty to Plaintiff relating to the death certificate and the disposition of Ivan Street's remains. In the Complaint, Plaintiff alleged that Defendants owed a duty to provide and transmit accurate information for the death certificate, to follow the authorized next of kin's wishes and direction as expressed in the contract and to keep the authorized next of kin informed with accurate information. (Ex. 1, Paragraph 67).

### a.  Death Certificate

Defendants contend that there is no tort duty relating to the preparation of a death certificate by a mortician in Maryland. Under Md. Code, Health-Gen § 4-226(b)(1), a person may not willfully provide false information for entry or willfully enter false information on a certificate

of birth, death, or fetal death. Md. Code, Health-Gen § 4-227 states that a person who violates § 4-226(b) is guilty of a misdemeanor and is subject to a fine not exceeding $100. Based on the applicable statute, Maryland law only addresses intentional, not negligent, conduct relating to the preparation of a death certificate. "[T]he violation of a statute may furnish evidence of negligence...but only where the person alleging negligence is within the class of persons sought to be protected, and the harm suffered is of the kind which the statute was intended, in general, to prevent." *Atlantic Mutual v. Kenney*, 323 Md. 116, 124, 591 A.2d 507 (1991). "[I]f the tortious act is intentional, it may be willful, wanton, or fraudulent, but not negligent." *Adams v. Carey*, 172 Md. 173, 186, 190 A. 815 (1937). The prohibition against willfully providing false information does not create a duty, and there is no recognition of such a duty under Maryland law.

b.      Entitlement to Disposition

Defendants further contend that they did not owe a duty to Plaintiff because she was not legally entitled to the disposition of Ivan Street's remains. "The Courts hold that the surviving husband or wife or next of kin have a quasi property right in the body in the absence of testamentary disposition. The right is not a property right in the general meaning of property right, but is extended for the purpose of determining who shall have the custody of the body in preparing it for burial." *Snyder v. Holy Cross Hosp.*, 30 Md. App. 317, 329, 352 A.2d 334, 341 (1976). "One who intentionally, recklessly or negligently removes, withholds, mutilates or operates upon the body of a dead person or prevents its proper interment or cremation is subject to liability to a member of the family of the deceased who is entitled to the disposition of the body." *Walser v. Resthaven Mem'l Gardens*, 98 Md. App. 371, 383, 633 A.2d 466, 471 (1993) (citing Restatement (Second) of Torts, § 868). "The class of persons protected by the principle enunciated in Restatement § 868 is limited to those 'entitled to the disposition of the body...' *Id.* at 391.

"Inclusion within the protected class is a precondition to the right of recovery, for absent that inclusion no duty to consult is imposed." *Id.* at 392. "It is therefore an element necessary to be pled and proved." *Id.*[2]

Md. Code, Health-Gen, § 5-508(b) defines an authorizing agent as "the individual who has legal authority to arrange for and make decisions regarding the final disposition of a dead human body, including by cremation." Md. Code, Health-Gen, § 5-509(c)(2) sets forth the categories of persons who have the right to final disposition, which are listed in the order of priority.

Plaintiff was not Ivan Street's legal spouse at the time of his death and does not fall within any of the classes set forth in Md. Code, Health-Gen, § 5-509(c)(2). It is undisputed that Ivan Street married Cook prior to Plaintiff. Plaintiff, who has the burden of establishing that she falls within "the protected class," has produced no evidence that Ivan Street and Cook ever divorced or that their marriage was ever annulled. *Walser, supra,* at 392. Therefore, the evidence on the record leads only to the conclusion that Ivan Street was still legally married to Cook when he married Plaintiff in 2016.

"For a valid marriage to exist, '[t]here must be certain conduct engaged in by competent parties under circumstances whereby they intend matrimony and both understandingly and freely consent to acquiring that status.'" *Ledvinka v. Ledvinika*, 154 Md.App. 420, 433-434 (2003), quoting John S. Strahorn, Jr., Void and Voidable Marriages in Maryland and Their Annulment, 2 Md.L.Rev. 211, 216 (1938). "When one party to a marriage is already married to someone else, the first marriage not having been terminated by annulment, absolute divorce, or death, he or she

---

[2] The legal analysis of the entitlement to the disposition of remains by the Court in *Walser, supra*, is applicable here. In *Walser*, the Court upheld the dismissal of the all of the counts (negligence, gross negligence, fraud, intentional infliction of emotional distress, etc.) of the Complaint because the plaintiff failed to plead that she was within a protected class that was entitled to the disposition of the decedent's remains.

is not competent to enter into the new marriage.  It is the lack of capacity to enter into the new marriage that renders the second marriage void *ab initio*." *Id.*

Since Ivan Street was still legally married to Cook when he married Plaintiff, the marriage between Ivan Street and Plaintiff is void *ab initio*.  As such, Plaintiff was not Ivan Street's lawful spouse at the time of his death and was not otherwise entitled to the disposition of his remains under Md. Code, Health-Gen, § 5-509(c)(2).  Therefore, under Maryland law, Defendants owed no duty to Plaintiff relating to the disposition of Ivan Street's remains and owed no duty to consult Plaintiff regarding the disposition.  *Walser, supra*.

c.      Other Duties Alleged by Plaintiff

In the Complaint, Plaintiff claimed that Defendants owed her certain duties, which Defendants contend are not recognized under Maryland law.  For instance, Plaintiff made vague and unsupported claims that Defendants owed a duty to "act with honesty and integrity," "make reasonable inquiry...to ascertain material facts relative to a decedent, "not dishonor or denigrate the decedent" and "observe the solemnity and religiosity of the funeral process."  (Ex. 1, P. 67).  Plaintiff further claimed that Defendants had a duty to "follow the... wishes and direction as expressed in the funeral contract" and "abide by the terms of the funeral contract and to charge only for authorized services and goods."  (Ex. 1, P. 67).  However, "[a] contractual obligation, by itself, does not create a tort duty.  Instead, the duty giving rise to a tort action must have some independent basis." *Mesmer v. Maryland Auto. Ins. Fund*, 353 Md. 241, 253 (1999).  "Mere failure to perform a contractual duty, without more, is not an actionable tort." *Wilmington Trust Co. v. Clark*, 289 Md. 313, 328-329, 424 A.2d 744, 754 (1981).  The duties alleged by Plaintiff relating to the terms and "wishes and direction" of the contract are clearly not independent of the contractual obligation and the alleged breach of any such duty is not an actionable tort.

           ii.        Causation and Damages

Plaintiff cannot meet her burden of proof with regard to her alleged damages. As set forth above, Plaintiff has not produced evidence of any economic damages sustained by her as a result of the alleged negligent conduct of Defendants. Instead, Plaintiff appears content with solely claiming non-economic damages arising out of emotional distress. However, Plaintiff's failure to retain an expert witness relating to her emotional distress damages is fatal to her claim.

Maryland law permits "recovery of damages for emotional distress if there was at least a 'consequential' physical injury," in the sense that "'the injury for which recovery is sought is capable of objective determination.'" *Hoffman v. Stamper*, 385 Md. 1, 32-38, 867 A.2d 276, 295-98 (2005), quoting *Vance v. Vance*, 286 Md. 490, 408 A.2d 728 (1979). The "physical" injury standard permits recovery for "such things as depression, inability to work or perform routine household chores, loss of appetite, insomnia, nightmares, loss of weight, extreme nervousness and irritability, withdrawal from socialization, fainting, chest pains, headaches, and upset stomachs," but excludes recovery "based on the plaintiff simply saying, 'This made me feel bad; this upset me.'" *Id.* at 34-35.

"It is beyond cavil, of course, that in a negligence action, the plaintiff has the burden of proving, by a preponderance of the evidence, that his damages were caused by the negligence of the defendant. *Strong v. Prince George's County*, 77 Md. App. 177, 183-84 (1988), citing *Cramer v. Housing Opportunities Comm'n*, 304 Md. 705, 712-13, 501 A.2d 35 (1985). "In proving that causal connection, it is not always necessary to produce expert testimony." *Id.*, citing *Wilhelm v. State Traffic Comm'n*, 230 Md. 91, 99, 185 A.2d 715 (1962). "For example, where 'the disability develops coincidentally with, or within a reasonable time after, the negligent act, or where the causal connection is clearly apparent from the illness itself and the circumstances

surrounding it,' no expert testimony is necessary." *Id*., quoting *Wilhelm, supra.* "Nonetheless, where the cause of the injury is a complicated medical question involving fact finding which is properly within the providence of medical experts, proof of the cause must be made by such a witness." *Id.,* citing *Wilhelm, supra*.

It is undisputed that Plaintiff was diagnosed with and suffered from PTSD, anxiety and depression prior to the events alleged in the Complaint. In addition, Plaintiff was diagnosed with bipolar disorder in 2019. These preexisting conditions caused the very same symptoms that Plaintiff is alleging in this case. For instance, in 2019, Plaintiff was experiencing depression, low energy, sleep disturbance, panic attacks, nervousness, social withdrawal and headaches due to anxiety and depression. (Ex. 15). In November of 2020, just three months before Ivan Street's passing, Plaintiff was constantly anxious and was experiencing sadness, sleep disturbance, insomnia, nightmares, and panic attacks. (Ex.s 16 and 17). As a result of these symptoms, her prescription for Zoloft was doubled.

Plaintiff testified in her deposition that the events alleged in the Complaint made her preexisting conditions worse. In Maryland, "a plaintiff has the burden of showing an aggravation of a preexisting condition. In that circumstance, a defendant is liable only for the aggravation." *Mayer v. North Arundel Hospital Assoc*, 145 Md. App. 235, 250 (2002), citing *Seites v. McGinley*, 84 Md. App. 292, 297, 587 A.2d 840 (1990). It is Defendants' contention that Plaintiff cannot meet her burden of proof without the testimony of an expert witness.

An aggravation of preexisting psychological conditions undoubtedly involves complicated medical questions about the nature of the conditions, the symptoms they cause and how and why those conditions can be aggravated. In addition, there was no development of her allegedly worsening symptoms "coincidentally with, or within a reasonable time after" the events alleged in

the Complaint.  *Wilhelm, supra.*  During Plaintiff's session with her therapist on February 2, 2021, after she admittedly knew about the burial, she did not complain of any worsening symptoms. (Ex. 18).  In fact, Plaintiff told her therapist that she felt that the memorial service went well.  (Ex. 18).  Further, in the months following the service, Plaintiff did not mention increasing symptoms arising from depression, anxiety and posttraumatic disorder.  To the contrary, Plaintiff told her psychiatrist on June 18, 2021 that she was "less depressed," had improved sleep and was less sad. (Ex. 20).  Finally, Plaintiff admitted that she experienced depression due to the fact that Ivan Street had died and that another woman was claiming to be his wife.  Clearly, Defendants would not be liable for any symptoms arising from that depression.

Without expert testimony, Plaintiff cannot prove that her PTSD, anxiety and depression symptoms were, in fact, worsened by the alleged actions of Defendants and, if they were, to what extent.  If Plaintiff were to be permitted to proceed, the jury would be left to speculate as to what portion of her depression, anxiety and PTSD symptoms were due to preexisting or unrelated factors versus the alleged conduct of Defendants.  Plaintiff is then left with her claim that she felt mistrust and disrespect, which is not a "physical" injury that is capable of objective interpretation. *Hoffman, supra.*  Plaintiff cannot meet her burden of proof on damages and Defendants are entitled to judgment as a matter of law.

iii.    Albert Wylie and Brandon Wylie

There is no evidence upon which a jury could reasonably conclude that Albert Wylie and Brandon Wylie were negligent, let alone grossly negligent.  Albert Wylie is alleged to have made certain statements to Plaintiff over the phone, which Plaintiff essentially claimed were hurtful and disrespectful.  Albert Wylie denied that he made those statements, however, even if he did, the statements alone are not an adequate basis for a negligence claim.  Outside of the alleged

statements, Albert Wylie's only involvement with the arrangements was a group discussion with Connor, Brandon Wylie, and Livingston about how to handle the issue of the two women's claims. As for Brandon Wylie, there is no evidence that he ever spoke to Plaintiff or that he had any involvement in the arrangements, other than participating in the group discussion. Finally, both Albert Wylie and Brandon Wylie denied that they made the decision to conduct a burial or to place an urn at the memorial service. Those decisions were made by Jeffers.

### D. Fraudulent Misrepresentation - Conner and Wylie Funeral Home Entities

In the Complaint, Plaintiff essentially asserted two counts for fraudulent misrepresentation. In both counts, Plaintiff alleged that Defendants made false representations knowingly or with reckless indifference to the truth with the intent to deceive the Plaintiff and "trick her into believing that Ivan had been cremated and to conceal his unauthorized burial." (Ex. 1, P. 86). Defendants contend that Plaintiff cannot present a prima facie case of fraudulent misrepresentation because she has not produced evidence to satisfy all of the necessary elements.

To present a prima facie case of fraudulent misrepresentation, it must be pled and proven: (1) that a false representation was made by a party; (2) that its falsity was known to that party or that the misrepresentation was made with such reckless indifference to truth as to impute knowledge to the party; (3) that the misrepresentation was made for the purpose of defrauding some other person; (4) that the person not only relied on the misrepresentation but had a right to rely upon it with full belief in its truth, and that the person would not have done the thing from which the damage resulted if the misrepresentation had not been made; and (5) that the person suffered damage directly resulting from the misrepresentation. *Everett v. Baltimore Gas & Elec.*, 307 Md. 286, 300, 513 A.2d 882, 889 (1986). To be sufficient, the evidence must be such as to constitute proof by clear and convincing evidence. *Id.*

       i.      Entitlement to Disposition

As stated in *Walser, supra,* at 392, "[i]nclusion within the protected class is a precondition to the right of recovery, for absent that inclusion no duty to consult is imposed." The principle articulated in *Walser* is not limited to negligence claims. Indeed, the Court in *Walser* applied the principle to claims sounding in fraud and intentional infliction of emotional distress. Therefore, for the same reasons stated above, Plaintiff, who was not in the "protected class," cannot recover for any alleged fraud because Defendants did not owe her a duty relating to the disposition or a duty to consult. *Walser, supra.*

       ii.      False Representation and Knowledge of Falsity or Reckless Indifference

There is no evidence that Defendants made a false representation to Plaintiff about the disposition of Ivan Street's remains. In order to constitute a "false representation," a statement must be a misrepresentation of material fact. *Snyder v. Herbert Greenbaum Associates*, 38 Md. App. 144, 148, 380 A.2d 618, 621 (1977). "[F]raud cannot be predicated on statements that are merely promissory in nature, or upon expressions as to what will happen in the future," but "fraud may be predicated on promises made with a present intention not to perform them." *Levin v. Singer*, 227 Md. 47, 63-64, 175 A.2d 423, 431-432 (1961). The requirement concerning knowledge of the falsity or reckless indifference as to the truth of the representation means either the defendant's actual knowledge that the representation was false or the defendant's "awareness that he does not know whether the representation is true or false." *Ellerin v. Fairfax Savings*, 337 Md. 216, 231, 652 A.2d 1117, 1125 (1995).

Plaintiff's claim for fraudulent misrepresentation revolves around her alleged phone call with Conner on January 22, 2021. In the Complaint, Plaintiff alleged that Conner told her "Defendants had rejected Cook's instructions and confirmed that the Defendants would conduct

the planned memorial service..." (Ex. 1, Paragraph 29). In her deposition, Plaintiff testified that Conner told her to disregard what Cook was trying to do and that the Funeral Home was going to proceed with the memorial service. Defendants deny that the conversation ever took place. However, even if it did, Plaintiff has not established that Conner's alleged statements were false.

Plaintiff claimed that Conner told her that the Funeral Home had rejected Cook's instructions. However, Plaintiff testified that she never learned or was never told that Cook had any wishes for Ivan Street's remains. In addition, Conner testified that, when he met Cook, she did not make any requests regarding the arrangements. As such, there is no evidence in this case proving the nature of Cook's instructions, if any, for Ivan Street's arrangements or whether those instructions were communicated to Defendants. If a jury were to believe that Conner told Plaintiff that the Funeral Home rejected Cook's instructions, the jury would then be left to speculate as to what those instructions were and whether they somehow related to a burial versus a cremation. More importantly, the jury would not have any evidence upon which to find that Conner's alleged statement was false. Similarly, without any evidence of the nature of Cook's instructions, there is no basis to conclude that Conner knew his statement was false or that he made the statement with reckless indifference to the truth. Finally, Plaintiff claimed that Conner told her the Funeral Home would be proceeding with the memorial service. There is no dispute in this matter that the service proceeded on January 23, 2021. Therefore, Conner's alleged statement clearly was not false.

There was also no false representation relating to the urn at the memorial service. First, there is no evidence that Defendants made the decision to place an urn at the service. That decision was made by Jeffers, and, therefore, Defendants did not make a representation of any kind relating to the urn. Second, Plaintiff testified that she was never told by Defendants that Ivan Street's remains had, in fact, been cremated or that the urn contained his ashes. Finally, as

Livingston testified, it is not unusual for empty urns to be placed at a memorial service by a decedent's family members upon request.

To the extent that Plaintiff claims that the listing of the spouse as "unknown" on the death certificate was a false representation, then Plaintiff cannot meet her burden of proof. Conner testified that the death certificate was prepared using information provided by Jeffers. When Jeffers provided the information to Conner, she did not know the name of Ivan Street's spouse. In addition, the listing of the spouse as "unknown" was not false, as Plaintiff and Cook both claimed to be Ivan Street's spouse and they each had documentation to support their claims. As Livingston testified, the spouse was listed as "unknown" so that Plaintiff and Cook could determine who had the legal right to be the spouse.

iii.    Intent to Deceive

There is simply no evidence in this case sufficient to prove, by clear and convincing evidence, that Defendants deliberately intended to deceive Plaintiff with regard to the disposition of Ivan Street's remains. "[R]ecovery in a tort action for fraud or deceit in Maryland is based upon a defendant's deliberate intent to deceive." *Ellerin, supra,* at 230.

The Funeral Home was faced with an unusual instance where two women were claiming to be a decedent's spouse. Both Plaintiff and Cook presented documentation of their marriages to Ivan Street. Ultimately, the Funeral Home determined that it could not cremate the remains because it could not be certain that there was proper authorization for a cremation. Conner testified that he advised Plaintiff, Jeffers and Cook about the burial and the urn. Even if Plaintiff's claim that she was not told is true, the surrounding circumstances prove that there was no intent by Defendants to deceive her. First, Jeffers testified that she was aware the remains would need to be buried, which demonstrates that there was no intent by Defendants to keep the burial secret.

Second, there is no evidence to suggest that the Funeral Home double charged for services or profited from performing a burial. In fact, based on the testimony of Defendants, the Funeral Home paid for the casket and the burial plot and lost money by conducting the burial. As such, there was no benefit to be derived from burial. Third, Conner sent Plaintiff an unsolicited email about the precise location of the burial, which is not indicative of an intent to keep the burial secret from her. Plaintiff's response is informative, as she sent a casual follow-up email about the burial location, instead of voicing any surprise, anger or disappointment. Finally, it was Jeffers who decided to tell some individuals, but not others, about the burial and to have an empty urn at the memorial service, not Defendants.

      iv.      Causation and Damages

Plaintiff cannot meet her burden of proof with regard to damages. One suing for fraud or deceit must establish that he sustained damage by reason of the fraud, and that his injury was the natural and proximate consequence of his reliance on the fraudulent act. *Crawford v. Mindel*, 57 Md. App. 111, 122 (1984). Defendants hereby incorporate their prior arguments on damages.

### E.      Unfair or Deceptive Trade Practices - All Defendants

Plaintiff alleged that Defendants breached the Maryland Consumer Protection Act ("MCPA") under Md. Code, Com. Law § 13-301 (1), (3) and (9).[3] Md. Code, Com. Law, § 13-101(c)(1) defines a consumer as an actual or prospective purchaser, lessee, or recipient of consumer goods, consumer services, consumer realty, or consumer credit. Under Md. Code, Com.

---

[3] (1) False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers.

    (3) Failure to state a material fact if the failure deceives or tends to deceive

    (9) Deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same

Law, § 13-303, a person may not engage in any unfair, abusive, or deceptive trade practice.

Defendants incorporate their prior arguments on the breach of contract, negligence and fraud counts, which are applicable to Plaintiff's MCPA claim. To summarize, Defendants argue that Plaintiff cannot recover because she was not entitled to the disposition of Ivan Street's remains. In addition, there was no negligent or false misrepresentation that deceived or misled Plaintiff. Regarding Albert Wylie and Brandon Wylie, even if Plaintiff's allegations about the phone calls are true, they did not make any false or misleading representations about the disposition of Ivan Street's remains. Finally, Plaintiff cannot prove her damages without an expert witness. "To establish a private action, a consumer must demonstrate 'injury or loss sustained . . . as the result of a practice prohibited by this title.'" *Hallowell v. Citaramanis*, 88 Md. App. 160, 166 (1991), citing Md. Code Ann., Com. Law, § 13-408(a).

In addition to Defendant's prior arguments, Defendants assert that Plaintiff does not meet the definition of a "consumer" and is not entitled to relief under the MCPA because Defendants did not contract with her, Plaintiff did not purchase or receive any consumer goods or services from Defendants, and Plaintiff was not offered any consumer goods or services by Defendants.

F.      Intentional Infliction of Emotional Distress - All Defendants

"Intentional infliction of emotional distress is a cognizable tort in Maryland." *Abrams v. City of Rockville*, 88 Md. App. 588, 597, 596 A.2d 116, 126 (1991). However, the tort "is rarely viable, and is to be used sparingly and only for opprobrious behavior that includes truly outrageous conduct." *Snyder v. Phelps*, 580 F.3d 206, 231 (2009). To recover for the tort of intentional infliction of emotional distress, a plaintiff must show that a defendant's conduct was (1) intentional or reckless, (2) extreme and outrageous, (3) causally connected to plaintiff's emotional distress, and (4) that the resulting distress was severe. *Figueiredo-Torres v. Nickel*, 321

Md. 642, 653, 584 A.2d 69, 74-75 (1991). The defendant's conduct must be "so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized [community]." *Harris v. Jones*, 281 Md. 560, 567, 380 A.2d 611, 614 (1977). To be actionable, the conduct relied upon "must strike to the very core of one's being, threatening to shatter the frame upon which one's emotional fabric is hung." *Hamilton v. Ford Motor Credit Co.*, 66 Md. App. 46, 59-60, 502 A.2d 1057, 1064 (1986). "[T]he initial determination of whether these elements have been satisfied rests with the trial judge." *Id.* at 58.[4]

Plaintiff's intentional infliction of emotional distress clam fails for a number of reasons. Defendants incorporate their arguments on the negligence and fraud counts here, as they are applicable to this cause of action. As set forth in this motion, Plaintiff was not entitled to the disposition of Ivan Street's remains and there is no evidence of intentional or reckless and extreme and outrageous behavior by Defendants.

Further, Plaintiff cannot establish a causal connection between her alleged emotional distress and the actions of Defendants due to her preexisting conditions and her failure to retain an expert witness for trial. Certainly, there is no evidence to support a finding that Plaintiff's emotional distress was severe. The fourth "element of the tort requires the plaintiff to show that he suffered a *severely* disabling emotional response to the defendant's conduct." *Harris, supra*, at 570. "The severity of the emotional distress is not only relevant to the amount of recovery, but is a necessary element to any recovery." *Id.* "'The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The intensity and the duration of the distress are factors to be considered in determining its severity.'" *Id.*, quoting Restatement

---

[4] See *Hamilton v. Ford Motor Credit Co., supra*, for a listing of cases where the Court held that the facts alleged did not support a cause of action for intentional infliction of emotional distress.

(Second) of Torts, ch. 2, Emotional Distress, § 46, comment j. Medical evidence is an important factor in determining the severity of the distress. *Reagan v. Rider,* 70 Md. App. 503, 513 (1987). As set forth above, Plaintiff is claiming that her PTSD, anxiety and depression symptoms worsened due to the alleged conduct of Defendants. Based on her therapy records, there was no aggravation, let alone severe emotional distress that no reasonable person could be expected to endure. In fact, Plaintiff's depression was improved in the months following the memorial service.

G.    Punitive Damages

Plaintiff seeks punitive damages in the fraud and intentional infliction of emotional distress counts of the Complaint. In a tort case where punitive damages are permitted, in order to obtain such an award a plaintiff must prove actual malice. *Siegman v. Equitable Trust Co.*, 267 Md. 309, 313-14, 297 A.2d 758 (1972). Actual malice is the "performance of an unlawful act, intentionally or wantonly, without legal justification or excuse but with an evil or rancorous motive influenced by hate; the purpose being to deliberately and wilfully injure the plaintiff." *Drug Fair v. Smith*, 263 Md. 341, 352, 283 A.2d 392, 398 (1971). "On the other hand, when a particular fraud or deceit action is based on the alternative form of the knowledge element, namely a 'reckless disregard' as to the truth of the representation, the traditional basis for the allowability of punitive damages is not present. " *Ellerin, supra*, at 235.

Defendants argue that they are entitled to summary judgment on Plaintiff's fraud and intentional infliction of emotional distress counts. However, if those counts are permitted to proceed, then Plaintiff should be prohibited seek punitive damages because she has presented zero evidence that Defendants acted with actual malice. Defendants fully incorporate their preceding arguments, which are applicable here.

## IV.    Conclusion

WHEREFORE, Defendants, Wylie Funeral Home, P.A., Wylie Funeral Home, P.A. of Baltimore County, Albert Wylie, Brandon Wylie, and Devin Conner, respectfully request this Honorable Court to enter summary judgment in their favor and against Plaintiff, Demetra Street.

/s/

_____
Christian C. Mann, Esq., #29966
Mann & Casey, P.A.
409 Washington Avenue, #600
Towson, MD 21204
410-296-6826
410-825-1805 fax
Jmarkel_mann@hotmail.com
Attorneys for Defendant

I hereby certify that on this 18th day of January, 2023, a copy of the foregoing was emailed to:

Alexander J. Coffin, Esq.,  #21680
Law Office of Alex Coffin, LLC
114 Spring Place Way
Annapolis, MD 21401
Phone: 410-216-3339
Email: alex.COFFINLAW@gmail.com
Attorney for Plaintiff, Demetra Street

/s/

_____
Christian C. Mann, Esq., #29966
Mann & Casey, P.A.
409 Washington Avenue, #600
Towson, MD 21204
410-296-6826
410-825-1805 fax
Jmarkel_mann@hotmail.com
Attorneys for Defendant