UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MARYLAND
(NORTHERN DIVISION)

---

DEMETRA STREET,

                    Plaintiff,

  -v.-

WYLIE FUNERAL HOME, P.A., *et al.*,

                    Defendants.

Case No.: 1:21–cv–01970-RDB

---

## PLAINTIFF'S OPPOSITION TO
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Demetra Street ("Plaintiff"), by and through her attorneys Alexander J. Coffin and the Law Office of Alex Coffin, LLC, pursuant to Rule 56 of the Federal Rules of Civil Procedure, opposes the Defendants' Motion for Summary Judgment and offers as follows:

### I. INTRODUCTION

In the initial stages of this action, the Defendants filed a Rule 12(b)(6) motion arguing that Plaintiff had failed to state claims for which relief could be granted. Contrary to the Defendants' arguments, however, the Court, in a well-reasoned opinion, found that Plaintiff had indeed stated her case—spread over seven counts—and dismissed the Defendants' motion.[1] Now, Defendants are back for a second bite at the apple, this time moving for summary judgment.

---

[1] The Court did sever one of original six Defendants, Tuverla Livingston and excluded the individual Defendants from contract liability.

1

This Court knows that summary judgment motions are granted only when no material facts are disputed. That is hardly the case here, as Plaintiff shows below. In fact, Defendants need forty-four (44) pages of motion and memorandum coupled with twenty-two (22) exhibits comprising nearly a ream of paper to proclaim that no controversy exists. As William Shakespeare noted, "The lady doth protest too much, methinks."[2] Despite the Defendants' blizzard of pages, facts material to the outcome of this case are in dispute, and no amount of *ipse dixit* or hocus pocus by the Defendants can serve to change that or whiteout what happened.

Plaintiff, however, does not require a ream of paper to explain what happened at Wylie Funeral Home. She can state the essential facts of this case in a few short sentences. Ivan Street died. His widow, Plaintiff Demetra Street, entrusted Ivan's remains to Defendants (a funeral home and its key employees and principals). Ms. Street signed an agreement with the funeral home for a cremation and memorial service and tendered partial payment. Yet, the Defendants never caused Ivan's body to be cremated. Instead, they secretly buried him without ceremony or even bothering to tell his widow. The Defendants thereafter conducted a memorial service employing an empty funerary urn to mislead Plaintiff that Ivan had been cremated, all the time knowing that they had buried his body before the service. Upon learning the truth about what Defendants had done, Plaintiff was emotionally devastated, suffering severe emotional injuries.

In a Hail Mary attempt to bring this case to a premature end, Defendants have filed what can only be called an "octopus motion"—an array of flailing arguments that amount to a

---

[2] Shakespeare, William, HAMLET, Act III, Scene 2, FOLGER SHAKESPEARE LIBRARY, SIMON & SCHUSTER (Mowat, Barbara A. & Werstein, Paul, eds., 2012). The quotation has become anthem for what behaviorists refer to as a "tell." The allusion here is meant to convey the notion that the overkill of denial by the Defendants suggests—and as Plaintiff shows—that they are attempting to paper-over the truth.

smattering of "what about-isms," lacking substance and—contrary to their intended goal—serving only to highlight that material facts essential to the resolution of this case are in dispute.

When the thin sap of Defendants' Motion is reduced to syrup, the thrust is that (i) Demetra Street is not really Ivan Street's widow; and (ii) she had a pre-existing psychological condition and, therefore,—somehow—she cannot prove how much the Defendants worsened her condition.[3] The rest of the Defendants' boiled-down Motion evaporates into the ether. Moreover, the Defendants' contentions in support of their Motion are either expressly contradicted or vigorously contested by Plaintiff. The Defendants' Motion imagines an invented world of how they wish things were, not how they are. Plaintiff advances her arguments in the pages that follow.

## II. BACKGROUND

Plaintiff's husband, Ivan T. Street,[4] died on January 9, 2021. (Ex. 1 at ¶ 37). Ivan's body was transported to Wylie Funeral Home's Mount Street location[5] to await identification and

---

[3] Defendants advance several other side arguments—which Plaintiff refutes—why this Court should grant their Motion. The the success of their Motion, however, turns largely on Defendants being able to establish as undisputed facts that (i) Plaintiff is not Ivan Street's widow; and (ii) she has no provable injuries. This they cannot do. And their side arguments amount to not much more than an attempt to put "lipstick on a pig." For an explanation of the idiom, *see* Siegel, Robert, *Putting Lipstick on a Pig*, ALL THINGS CONSIDERED, NPR, https://www.npr.org/2008/09/10/94481288/putting-lipstick-on-a-pig (aired Sept. 10, 2008, 4:00 p.m. ET)

[4] Plaintiff and Ivan T. Street were married nearly five years earlier, on April 22, 2016 (Ex. 1 at ¶ 17).

[5] The corporate Defendants in this matter are Wylie Funeral Home, P.A. and Wylie Funeral Home, P.A. of Baltimore County (collectively "Funeral Home"). The corporate Defendants operate two funeral homes, including the Mount Street Home, as a single enterprise. Defendants Albert P. Wylie and Brandon M. Wylie are principals, licensed morticians, and employees of the corporate Defendants. Defendant Devin B. Conner is a licensed mortician and employee of the corporate defendants.

funeral arrangements. *Id.* Ivan's cousin, Rita Jeffers, was the first of Ivan's family members to speak with funeral home personnel when she met with Defendant Devin Conner to provide Conner with information about the decedent for Ivan's Death Certificate.[6] (Ex. 1 at ¶¶ 19–20).

Jeffers told Conner that Ivan was married to the Plaintiff and provided Plaintiff's telephone number and contact information. (Ex. 1 at ¶ 21). Conner later telephoned Plaintiff to tell her that Ivan had passed away and summoned her to the Mount Street Home to identify the body. *Id.*

On January 13, 2021, Plaintiff met with Defendant Conner. (Ex. 1 at ¶ 22). Plaintiff identified Ivan's body and authorized a direct cremation.[7] *Id.* That same day, Plaintiff contracted with the Funeral Home for Ivan's direct cremation and a memorial service for $2,500 (the "Contract"). (Ex. 1 at ¶ 23; Ex. 4). Plaintiff provided Defendants with a $650 voucher request to the Maryland Department of Human Resources for burial assistance. *Id.* The Contract committed Plaintiff to pay the Funeral Home the remaining $1,850 for Ivan's funeral goods and services. *Id.* The Contract provided: "I hereby acknowledge that I have the legal right to arrange the funeral services for the deceased and I authorize the funeral establishment to perform services, furnish goods, and incur outside charges specified on this Statement." *Id.*

Shortly after Plaintiff arranged for and tendered the voucher for Ivan's cremation and memorial service, a second woman appeared at the Mount Street Home, claiming to be Ivan's spouse. (Ex. 1 at ¶ 24).[8] Defendant Conner telephoned Plaintiff to inform her that another woman

---

[6] Jeffers is listed as "Informant" on Ivan's Death Certificate (Ex. 1 at ¶ 20).

[7] Plaintiff also provided Conner with her gold-sealed official marriage certificate confirming her marriage to Ivan. (Ex. 1 at ¶ 22).

[8] The second woman, who identified herself as Renee Cook, provided Defendants an unsealed marriage license dated October 24, 1997. (Ex. 1 at ¶ 24–25).

4

claimed to be Ivan's spouse and that this interloper insisted that Ivan be buried. (Ex. 1 at ¶ 25). Plaintiff told Conner to ignore the woman and that she had no authority or right to change Ivan's funeral arrangements. *Id.* Plaintiff reaffirmed for Conner that Plaintiff was Ivan's widow and that Plaintiff's instructions for the cremation were to be followed and adhered to. *Id.*

Between January 14, 2021, and January 21, 2021, Plaintiff telephoned the Funeral Home and attempted to speak with Defendant Conner to discuss the time and date for the memorial service. (Ex. 1 at ¶ 28). Instead of talking with Conner, the Funeral Home's telephone receptionist re-routed Plaintiff's call to Defendant Albert Wylie, one of the principal owners of the Funeral Home. *Id.* Albert Wylie told Plaintiff that he had decided that the Funeral Home would follow the second woman's instructions and bury Ivan. *Id.* When Plaintiff protested and told him, "No," he sarcastically taunted her by asking: "So, what are you going to do about it?" Then, he abruptly ended the telephone call. *Id.*

On January 22, 2021, Conner telephoned Plaintiff and lied, telling her that Defendants had rejected the second woman's instructions. (Ex. 1 at ¶ 29). Conner confirmed that the Defendants would conduct the planned memorial service for Ivan at the Mount Street Home the next day. *Id.* In reality, Ivan had not been cremated; instead, the Defendants had already secretly buried him at Baltimore's Mt. Zion Cemetery. (Ex. 1 at ¶¶ 29, 36).

The Defendants conducted a memorial service for Ivan on January 23, 2021. (Ex. 1 at ¶ 29). The service was replete with all the trappings of a solemn affair—with Defendants streaming audio and video of the service on the Funeral Home's website and them having prepared a written tribute program stating that Ivan "was married later to Ms. Dimetra [sic] Street." (Ex. 1 at ¶ 30–31).

Defendants configured the seating and arrangement of the meeting room for the memorial service. Plaintiff sat in the front row. (Ex. 1 at ¶ 33). The centerpiece of the memorial service was a funerary urn located next to Ivan's framed photograph. *Id.*

Immediately following the memorial service, a Funeral Home employee quickly removed the funerary urn from the meeting room, purporting to contain Ivan's cremains, and secreted the urn away.[9] (Ex. 1 at ¶ 34). Funeral Home personnel pretended that the urn contained Ivan's remains even though they knew it was empty. The Funeral Home had secretly interred his body three days earlier, on January 20, 2021. *Id.*

On January 25, 2021, Defendant Conner sent Plaintiff an email that read, "Tomorrow I'll look forward to receiving the resting location at Mt. Zion Cemetery. (Ex. 1 at ¶ 36). Confused and surprised by the email, Plaintiff telephoned Conner to explain and clarify its meaning. (Ex. 1 at ¶ 37). Instead of speaking with Conner, the Funeral Home's telephone receptionist again re-routed Plaintiff's call to Defendant Albert Wylie. *Id.* Albert Wylie told Plaintiff that just as he said he would do, the Funeral Home had buried Ivan. *Id.* When Plaintiff told Mr. Wylie what he had done was wrong and against her wishes, he responded: "Well, that's what we did." Then, he abruptly hung up the phone. *Id.*

In the days and weeks following the memorial service, Plaintiff repeatedly requested a copy of Ivan's Death Certificate from the Funeral Home, but the Defendants stonewalled her. (Ex. 1 at ¶ 38). Out of frustration, she contacted the Maryland Department of Health Division of Vital Statistics to obtain the Death Certificate—and was shocked and emotionally devastated by what she learned upon receiving it. (Ex. 1 at ¶ 39–40).

---

[9] Despite Plaintiff's repeated requests that she receive Ivan's ashes, Defendants refused to allow her or anyone else to obtain the ashes or to see the funerary urn once the memorial service had concluded. (Ex. 1 at ¶ 35).

Defendant Conner had reported false information to the Maryland Department of Health for inclusion in the Death Certificate. Rather than report what he knew from information that Plaintiff had provided, namely that Plaintiff was Ivan's spouse, Defendant Conner instead falsely and intentionally reported the surviving spouse's name as "Unknown." (Ex. 1 at ¶ 41). The Death Certificate also confirmed for Plaintiff that her husband had been buried at Mount Zion Cemetery, in Baltimore, on January 20, 2021. (Ex. 1 at ¶ 42).

The burial, which took place three days before the memorial service, was conducted by the Defendants without Plaintiff's knowledge, permission, or authorization. (Ex. 1 at ¶ 42). The burial contravened Plaintiff's express authorization and those actions by Defendants constituted a breach of contract and a wrongful burial under Maryland law. *Id.*

Defendants conspired to bury Ivan without Plaintiff's permission and actively concealed the burial from Plaintiff and other family members. (Ex. 1 at ¶ 43). Because Defendants concealed the burial from Plaintiff, she was excluded from attending Ivan's burial service, paying her last respects, and participating in a graveside service. (Ex. 1 at ¶ 44).

Defendants conducted a sham memorial service through artifice and deception by falsely, fraudulently, and maliciously misleading Plaintiff and others to believe that Ivan had been cremated and that a funerary urn containing his ashes was on display at the memorial service. (Ex. 1 at ¶ 45). All the while, even though Defendants knew that Ivan had never been cremated and that his body had, in fact, already been buried, they instead falsely, fraudulently, and maliciously deceived the Plaintiff and others and led them to believe that Ivan's body had been cremated and that his ashes had been deposited in the funerary urn. *Id.*

In the days and months following the burial, despite Plaintiff's repeated inquiries, Defendants withheld essential information from Plaintiff, causing her constant worry, anxiety,

and emotional distress, including refusing to disclose whether Ivan had been cremated.[10] (Ex. 1 at ¶ 48).

### III. ARGUMENT

The Defendants' Motion for Summary Judgment largely re-plows old ground and the Court considered and rejected these tired arguments in its Memorandum Opinion of June 28, 2022. Yet, the Defendants continue to proclaim, among other things, that no contract existed between the Wylie Funeral Home entities and Plaintiff and that they are seemingly and indisputably without fault in this case.

**A. Legal Standard for Summary Judgment Motions.**

Maryland law regarding Summary Judgment Motions is well established. This Court articulated that standard in the oft-cited case, *Amirmokri v. Abraham*, 437 F. Supp.2d 414, 419 (D. Md. 2006):

> Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment will be granted when no genuine dispute of material fact exists, and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Haavistola v. Cmty. Fire Co. of Rising Sun, Inc.*, 6 F.3d 211, 214 (4th Cir. 1993); *Etefia v. East Baltimore Comm. Corp.*, 2 F.Supp.2d 751, 756 (D. Md. 1998). . . . The court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine*, 501 U.S. 496, 520 (1991) (internal citations omitted). While the evidence of the non-movant is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of

---

[10] In America, it is fairly common for cremains to be interred. Plaintiff did not know, therefore, until five months after the memorial service whether or not Ivan had been cremated or his body had buried. Plaintiff independently confirmed on June 24, 2021, that Ivan's body was not cremated, and Defendants eventually acknowledged this on July 6, 2021. (Ex. 1 at 48).

inferences. *See Deans v. CSX Transp., Inc.*, 152 F.3d 326, 330-31 (4th Cir. 1998); *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

The Defendants argue that facts material to the outcome of this case are not in dispute, entitling them to summary judgment on all counts. Defendants are simply wrong. Plaintiff considers and refutes the Defendants' arguments in the order they are presented in their Memorandum.

**B. Wylie Funeral Home, P.A. of Baltimore County is a Proper Defendant.**

The Defendants contend that Wylie Funeral Home, P.A. of Baltimore County (sometimes referred to here as the "Randallstown Home") had nothing to do with this matter and should be dismissed. The Complaint alleges that Wylie Funeral Home operates at two locations (namely Randallstown and Mount Street) as an enterprise such that the operation and services of one home, except for its location, are indistinguishable from the other. (Ex. 1, ¶¶ 4, 11, 14). The Complaint alleges that the Randallstown Home and the Mount Street Home use "the same contract form with a check box to designate the service location. Both share the same business locations, use the same website (i.e., wyliefh.com), and share costs, advertising, social media, equipment, and personnel and, as such, operate as a single enterprise." (Ex. 1, ¶ 14). At his deposition, Devin Conner testified that the two homes "share[d] equipment [and] staff," (Ex. 2. p. 8, l. 15–17), including "hearses [and] limousines," (Ex. 2. p. 8, l. 19) and that "we have full-time staff at both locations, but based off the needs of the Funeral Homes, staff can go to either location." (Ex. 2. p. 9, l. 10–13). Conner testified that he spent the "majority of [his] time at Mount Street." (Ex. 2, p. 8, l. 2–3), but that he was "a licensee at both locations." (Ex. 2, p. 7, l. 5–6). Similarly, Albert Wylie, the founder of Wylie Funerals Homes testified that the two locations shared "drivers, computer systems, paper, embalming fluid, those items." (Ex. 3, p. 10, l. 7–8). During the events at issue here, Albert Wylie and Brandon Wylie, the principals of Wylie

Funeral Home, operated from the Randallstown Home, fielded telephone calls and made decisions affecting the Plaintiff from their location at the Randallstown Home.

Defendants' argument that they do not operate as a seamless enterprise that holds itself out to the public as a single entity is fatuous and relies on only a single thread. They suggest that in the top left corner of the agreement for goods and services—executed by Plaintiff and Defendant Conner on January 13, 2021—a check appears in a box next to the Mount Street address. (Ex. 4). That same form likewise contains a check box for the Randallstown address. This check box is the sole item available to the public to differentiate between the two entities.

At a minimum, the preceding demonstrates a material factual dispute concerning whether Defendant Wylie Funeral Home, P.A. of Baltimore County, is a proper party to this action, precluding that company's dismissal by summary judgment.

**C. The Complaint states a cognizable claim for breach of contract that survives summary judgment.**

Paragraph 23 of the Complaint describes the contract between Plaintiff and the Funeral Home. Specifically:

> On January 13, 2021, Plaintiff contracted with the Funeral Home for Ivan's direct cremation and a memorial service at a price of $2,500 (the "Contract"). Plaintiff provided Defendants with a $650 voucher request to the Maryland Department of Human Resources for burial assistance. The Contract committed Plaintiff and Ivan's family members to pay the Funeral Home the remaining $1,850 for Ivan's funeral goods and services. (Ex. 1, ¶ 23).

The actual text of the contract recites: "ACKNOWLEDGEMENT AND AGREEMENT" followed by: "I hereby acknowledge that I have the legal right to arrange the funeral services for the deceased and I authorize the funeral establishment to perform services, furnish goods, and incur outside charges specified on this Statement" (Ex. 4). Both Plaintiff and Devin Conner signed the contract on January 13, 2021. (Ex. 4).

Mysteriously, and for reasons that Plaintiff cannot understand, Defendants, nevertheless, contend that Plaintiff never entered into a contract with the Funeral Home.

First, all of the essential elements of a contract are satisfied. The agreement identifies the parties (Plaintiff and Funeral Home); the price or consideration ($2,500); and the duties of each party (Funeral Home to cause direct cremation and provide memorial service; Plaintiff to incur liability for Funeral Home's performance). (Ex. 4). Plaintiff accepted the Funeral Home's written offer by tendering the voucher and assuming liability for the remaining balance.

In Maryland, the facts set forth above constitute a contract. Typically, all that is needed is an offer, an acceptance, and mutual consideration. *Hewitt v. Dyck-O'Neal, Inc.*, No. DKC 20-1322 (D. Md. Aug. 26, 2021). *See CTI/DC, Inc. v. Selective Ins. Co. of America*, 392 F.3d 114, 123 (4th Cir. 2004). All those elements are present here, and Plaintiff has alleged each. Moreover, the contract was memorialized by a writing signed by both parties.[11]

There is no dispute that despite the terms of the contract, the Funeral Home did not cause Ivan Street's body to be cremated, nor did it carry out the essential duties of the contract. In Plaintiff's eyes, Defendants made a mockery of the memorial service. Yet, the Funeral Home realized the value of the voucher without remittance to anyone for a service, *i.e.*, cremation, they did not perform. The facts demonstrate that Plaintiff did not get the benefits she bargained for

---

[11] Defendants do not claim any ambiguity in the wording of the contract, hence, with respect to its formation and existence, the parol evidence rule is applicable here. The parol evidence rule in Maryland holds that if the contract is unambiguous, parol evidence may not be admitted to vary, alter, or contradict it. To be ambiguous, the language must be susceptible to more than one meaning to a reasonable person. *See generally Ubom v. SunTrust Bank*, 198 Md. App. 278 (Md. Ct. Spec. App. 2011).

and has so alleged. (Ex. 1, ¶¶ 42, 46, 48, 57), that is to say, Defendant Funeral Home breached the Contract[12], and this Court should deny Defendants' motion to dismiss the contract claim.

> **D.  Contrary to Defendants' Contentions, Irrefutable Evidence Shows that the Plaintiff is Ivan Street's Widow.**

The Defendants primarily argue—indeed, it is the linchpin of their Motion—that Plaintiff and the decedent Ivan Street were not married. Therefore any quasi-property right Ms. Street had to direct the disposition of Ivan's remains did not exist. Consequently, the funeral home owed no duty to her under the law. However, at Ivan's death and the subsequent burial and memorial service, Demetra Street was Ivan's widow by every objective standard.

In support of their argument, Defendants trot out a certified marriage certificate for Ivan Street and Renee Roxanne Cook. Ms. Cook, of course, is the other woman who appeared at the Funeral Home and claimed to be Ivan Street's widow. Defendants contend that because Ivan Street ostensibly married Ms. Cook on October 25, 1997, his subsequent marriage to Plaintiff was void *ab initio*.

Defendants seem to think that because they have produced a certified marriage certificate purporting to show that Ivan Street married another woman—some eighteen and one-half years before his marriage to Plaintiff on April 22, 2016—the existence of that document irrefutably shows that Plaintiff and Ivan Street were never legally married—and consequently lets them off the hook for all of their outrageous behavior. Nothing could be further from the truth.

---

[12] Plaintiff contends that the remainder the balance owing on the contract would be paid by donations from Ivan Street's family and that Defendants were aware of the payment circumstances. In any case, Defendants never made any demand for payment from Plaintiff.

First, a marriage certificate is a snapshot in time, and no more proves that a marriage is extant than having a copy of John F. Kennedy's birth certificate proves that he is alive today. Indeed, virtually every Marylander who has divorced can locate the record of their marriage.

This Court should know that before Plaintiff's counsel brought this action, he engaged the services of a private investigator to determine whether Ivan Street and Renee Cook were ever married. A search of the Maryland State Archives produced no record of the marriage for the period from 1996–2000 (Ex. 5). In fact, the investigators reported that they could find no evidence that Street and Cook ever shared the same address (Ex. 6). They also noted that Renee Cook filed for bankruptcy on December 15, 2019, as "unmarried" (Ex. 6). Ms. Cook was also purportedly married to a Garland Cook during that time as well (Ex. 6).

Renee Roxanne Cook's marriage certificate is unusual by any measure. The reason that Plaintiff's investigator was unable to find evidence of the marriage is that the license was not returned to the Clerk until April 7, 2021, nearly 23 years and six months after the purported wedding ceremony—even though the statute requires the officiant to return the certificate to the clerk within five (5) days following the wedding ceremony. MD. CODE, FAMILY LAW § 2-409 (b)(ii). Even so, such a lapse, absent other circumstances, would not likely be fatal to the Cook–Street union. But what dooms that putative marriage is something else revealed on the face of the certificate.

As this Court knows, Maryland does not recognize common law marriages contracted within this state's geographic boundaries. *See Henderson v. Henderson*, 199 Md. 449, 454, 87 A.2d 403 (1952); *Goldin v. Goldin*, 48 Md. App. 154, 157, 426 A.2d 410 (1981). A valid and effective marriage license is required for a legal and legitimate marriage. As set forth in MD. CODE, FAMILY LAW § 2-401(a), "[a]n individual may not marry in this State without a license

issued by the clerk for the county in which the marriage is performed." Maryland, like many states, has a waiting period following the issuance of the marriage license before the license becomes effective. MD. CODE, FAMILY LAW § 2-405(d)(1) states, "[e]xcept as provided in paragraph (2) of this subsection, **a license is not effective until 6 a.m. on the second calendar day after the license is issued**" (emphasis added)[13]

The Court need only examine Cook's marriage certificate to determine that her marriage to Ivan Street was void from the outset. The certificate reveals that the Clerk issued the marriage license on October 24, 1997 (Ex. 7). By law, the license could not become effective until 6 a.m. on October 26, 1997. The marriage ceremony occurred on October 25, 1997, before the license became effective (Ex. 7). Maryland does not recognize such a marriage. Ivan Street was an eligible bachelor when he married Demetra Street on April 22, 2016. Demetra Street remained married to Ivan at the time of his death, investing her with certain rights to direct the disposition of Ivan Street's remains.

It has been the decided law of Maryland for more than a century that "the surviving husband or wife . . . has a *quasi*-property right in the body of a decedent, not in the general property sense, but for the purpose of determining who shall have the custody of the body in preparing it for burial." *Painter v. U.S.F.G. Co.*, 123 Md. 301, 308 (1914). *Accord Snyder v. Holy Cross Hospital*, 352 A.2d 334 (Md. Ct. Spec. App. 1976). Plaintiff entrusted that duty to the Defendants. Quoting directly from the Defendants' Memorandum, "One who intentionally, recklessly, or negligently removes, withholds, mutilates or operates upon the body of a dead person **or prevents its proper interment or cremation is subject to liability to a member of the family of the deceased who is entitled to the disposition of the body.**" *Walser v.*

---

[13] That period may only be shortened by judicial order.

*Resthaven Memorial Gardens, Inc.*, 98 Md. App. 371, 383 (Md. Spec. Ct. App. 1993) (emphasis added).

Without a doubt, Defendants cannot now claim that no material issue of fact exists regarding Rene Cook's marriage to Ivan Street. Absent that, all Defendants' arguments that it owed no duty to Plaintiff fade away. Moreover, any directions given to Defendants by Rita Jeffers were without effect, and Plaintiff does not address them here.

**D.     Plaintiff's Remaining Claims Remain Undisturbed by Defendants' Motion.**

For her part, Demetra Street testified at deposition that Devin Conner told her on January 22, 2021, that the Funeral Home would "go along with what my wishes was [sic] for the cremation and they wasn't [sic] going to worry about the other woman because she didn't have the funds . . . ." (Ex. 8, p. 99, l. 7–10). She also stated, "He [Devin Conner] just told me, 'Disregard whatever she was, you know, trying to do.' That's all he told me, and they was [sic] going to go ahead and proceed . . . [with] the cremation" (Ex 8, p. 100, l. 3–7). She was adamant that no one at the Funeral Home or otherwise told her in advance about the burial (Ex. 8, p. 103, l. 1–6).

Concerning the Memorial Service, Plaintiff repeatedly asserted that she believed, and reasonably so, that the funerary urn contained Ivan's ashes. (Ex 8, p. 138, l. 4–19). When she spoke with Rita Jeffers about splitting the ashes, "a lady came from out of nowhere and took the urn and said, 'Nobody's aid getting this.'" (Ex. 8, l. p. 138, 20–21; p. 139, l. 1).

All Defendants' arguments turn on whether or not they owed Plaintiff a duty to handle Ivan Street's remains by following her wishes and direction. There is no dispute that they did not cremate him as she had directed. Plaintiff testified she was never told by anyone that Ivan Street

15

had been buried until after the Memorial Service. She reasonably believed that the funerary urn contained her late husband's ashes.[14]

This Court has already ruled on Defendants' Rule 12(b)(6) motion and has allowed Plaintiff's claims to stand, including Plaintiff's prayer for punitive damages. There is no reason, absent a claim by the Defendants, that material facts are not at issue to rehearse those same arguments here, and Plaintiff declines to do so.

### E. Plaintiff's Psychological Damages are easily provable.

In their Memorandum, Defendants have set forth a cascade of psychological damages that Plaintiff claims. Indeed, Plaintiff opened her medical and psychological records to Defendants so they could see the harm they had inflicted upon her. At trial, Plaintiff would intend to call her treating physicians and counselors as fact witnesses and introduce her medical and counseling records into evidence. Plaintiff believes that opinion testimony is neither necessary nor needed. The medical records, treating physicians, counselors, and psychiatrists can speak for themselves about what they observed and what the Plaintiff told them. Plaintiff did provide Defendants with a list of rebuttal expert witnesses if Defendants offer expert opinion testimony.

## IV. CONCLUSION

For the preceding reasons, Plaintiff Demetra Street respectfully requests that this Court enter an order denying Defendants' Motion for Summary Judgment and granting Plaintiff such other and further relief as it deems just and proper.

---

[14] It defies human nature to believe, as Defendants suggest, that Plaintiff should have been making inquiry during the memorial service as to what was contained in the funerary urn. The Defendants refused to confirm that Ivan had not been cremated until several months after the burial.

Respectfully submitted,

/s/ Alexander J. Coffin_____
Alexander J. Coffin (Bar No. 21680)
Law Office of Alex Coffin, LLC
13862 Kimberly Drive
Largo, FL 33774

Phone: 410-216-3339
Email: alex.coffinlaw@gmail.com

Attorneys for Plaintiff, Demetra Street

February 1, 2023

## **CERTIFICATE OF SERVICE**

I certify that on this 1st day of February 2023, a copy of the Plaintiff's Opposition to Defendants' Motion for Summary Judgment and proposed Order was electronically filed (and is deemed served) via CM-ECF upon:

> Christian C. Mann (via CM-ECF)
> Mann & Casey, P.A.
> 409 Washington Avenue, Suite 600
> Towson, MD  21204

/s/ Alexander J. Coffin_____
Alexander J. Coffin