**Exhibit 1**

UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
(NORTHERN DIVISION)

-------------------------------------------------------------x
                                              :
DEMETRA STREET,                               :
                                              :
    216 Massie Street                        :
    Lexington, VA 24450                      :
    (Rockbridge County)                      :
    Virginia 24450                           :
                   Plaintiff,      :        Civil Action No.1:21-cv-01970-RDB
                                              :
   -against-                                 :
                                              :        **COMPLAINT**
WYLIE FUNERAL HOME, P.A.,                      :
                                              :
    701 N. Mount Street                      :
    (City of Baltimore)                      :
    Baltimore, Maryland 21217                :
                                              :
    Serve:  Charles J. Siegel               :
            Suite 1200                 :
            20 South Charles Street    :
            Baltimore, Maryland 21201  :
            (Registered Agent), AND    :
                                              :
WYLIE FUNERAL HOME, P.A.                       :
OF BALTIMORE COUNTY,                           :
                                              :
    701 N. Mount Street                      :
    (City of Baltimore)                      :
    Baltimore, Maryland 21217                :
                                              :
    Serve:  Blades & Rosenfeld, P.A.        :
            Charles J. Siegel          :
            Suite 1200                 :
            20 South Charles Street    :
            Baltimore, Maryland 21201  :
            (Registered Agent),        :

ALBERT P. WYLIE,            :

                                          :

      6236 Gilston Park Road         :
      (Baltimore County)               :
      Catonsville (Baltimore), Maryland 21228  :

                                              :

BRANDON M. WYLIE,          :

                                          :

      9200 Liberty Road            :
      (Baltimore County)               :
      Randallstown, Maryland 21133      :

                                              :

DEVIN B. CONNER,            :

                                          :

      701 N. Mount Street         :
      (City of Baltimore)             :
      Baltimore, Maryland 21217, and    :

                                              :

TUVERLA T. LIVINGSTON,     :

                                          :

      1033 W. Lexington Street     :
      (City of Baltimore)             :
      Baltimore, Maryland 21223,      :

                                              :

                             Defendants.  :

-------------------------------------------------------------x

       Demetra Street ("Plaintiff"), for her complaint against Wylie Funeral Home, P.A., Wylie

Funeral Home, P.A. of Baltimore County, Albert P. Wylie, Brandon M. Wylie, Devin B. Conner,

and Tuverla T. Livingston (collectively "Defendants"), alleges as follows:

<b><u>THE PARTIES</u></b>

1.      Plaintiff is an individual, a resident, and a domiciliary of the Commonwealth of Virginia.

2.      Defendant Wylie Funeral Home, P.A. ("Mount Street Home") is a Maryland professional

corporation with its principal office located in the City of Baltimore, Maryland.

3. Defendant Wylie Funeral Home, P.A. of Baltimore County ("Randallstown Home") is a Maryland professional corporation with its principal office located in the City of Baltimore, Maryland.

4. Mount Street Home and Randallstown Home operate as one enterprise with two business locations and hold themselves out to the public as a single business entity (Mount Street Home and Randallstown Home are jointly and severally referred to herein as "Funeral Home").

5. Defendant Albert P. Wylie ("Albert Wylie") is an adult individual who is a citizen and resident of the State of Maryland. Albert Wylie is the founder, principal, and an owner of the Funeral Home. At all times relevant hereto, Albert Wylie was an employee and agent of Funeral Home.

6. Defendant Brandon M. Wylie ("Brandon Wylie") is an adult individual who is a citizen and resident of the State of Maryland. Brandon Wylie is the Chief Executive Officer, principal, and an owner of the Funeral Home. At all times relevant hereto, Brandon Wylie was an employee and agent of Funeral Home.

7. Defendant Devin B. Conner ("Conner") is an adult individual who is a citizen and resident of the State of Maryland. At all times relevant hereto, Conner was an employee and agent of Funeral Home.

8. Defendant Tuverla Livingston ("Livingston") is an adult individual who is a citizen and resident of the State of Maryland. At all times relevant hereto, Livingston was an employee and agent of Funeral Home.

## JURISDICTION AND VENUE

9.    The Court has subject-matter jurisdiction over this action based upon diversity of citizenship pursuant to 28 U.S.C. § 1332. The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states. For the purposes of jurisdiction, Defendants Wylie Funeral Home, P.A. and Wylie Funeral Home, P.A. of Baltimore County are each deemed to be citizens of Maryland as both are incorporated in the State of Maryland and have their principal places of business in Maryland.

10.   Venue is proper in the United States District Court for the District of Maryland under 28 U.S.C. §§ 1391(b)(1); 1391(b)(2); and 1391(d) as to all the actions against all Defendants because Maryland is the judicial district where all Defendants reside and where a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred.

## NATURE OF THIS ACTION

11.   Defendants Wylie Funeral Home, P.A. and Wylie Funeral Home, P.A. of Baltimore County operate funeral homes in the Baltimore metropolitan area as a single enterprise. Defendants Albert Wylie and Brandon Wylie are principals, officers, board members, and owners of the Funeral Home and direct and control all aspects of the Funeral Home's business enterprise. Defendants Conner and Livingston are licensed morticians and Funeral Home employees.

12.   On January 9, 2021, Plaintiff's husband, Ivan T. Street ("Ivan"), died suddenly from congestive heart failure. Plaintiff made written arrangements with Conner and Livingston at the Mount Street Home for Ivan's funeral services. Specifically, Plaintiff signed an authorization for cremation, requested a memorial service, tendered a payment voucher and committed to pay for

the remaining cost. Defendants did not abide by Plaintiff's instructions but instead, without Plaintiff's knowledge or permission, buried Ivan's body in a Baltimore cemetery. Defendants concealed the burial from Plaintiff and the public and thereafter deceived Plaintiff by conducting a mock memorial service featuring a sham funerary urn that purported to contain Ivan's ashes. Defendants attempted to palm-off an empty funerary urn as containing Ivan's cremains. Plaintiff discovered Defendants' deception when she later received an email from Defendant Conner suggesting that the Funeral Home had, instead, secretly buried Ivan.

13. Plaintiff sues the Defendants herein for (i) breach of contract; (ii) negligence; (iii) gross negligence; (iv) malicious fraud; (v) misrepresentation; (vi) unfair or deceptive trade practices in violation of Maryland law; and (vii) intentional infliction of emotional distress. Plaintiff seeks punitive damages as permitted under Maryland law for actual malice for the intentional torts of fraud and infliction of emotional distress and for gross negligence.

## FACTUAL ALLEGATIONS

14. Wylie Funeral Home, P.A. and Wylie Funeral Home, P.A. of Baltimore County are ostensibly separate companies although they hold themselves out to the public as a single entity or enterprise operating from two locations. Both the Randallstown Home and the Mount Street Home use the same contract form with a check box to designate the location of services. Both share the same principal business location, use the same website (*i.e.*, wyliefh.com) and share costs, advertising, social media, equipment, and personnel and as such operate as a single enterprise.

15. On information and belief, the individual Defendants Albert Wylie and Brandon Wylie, as owners, principals, officers, and directors of the Funeral Home enterprise direct, control,

coordinate, and orchestrate all aspects, actions, and decisions of the Funeral Home and of its employees and agents.

16.     On information and belief, the individual Defendants Conner and Livingston, who are nominally employed by the Mount Street Home, in fact, work for the Funeral Home enterprise and together and individually direct, control, coordinate, and orchestrate many aspects and actions of the Funeral Home enterprise.

17.     Plaintiff is the widow of Ivan Tyrone Street. Plaintiff married Ivan on April 22, 2016.

18.     Ivan died on January 9, 2021. His body was taken to the Mount Street Home to await identification and funeral arrangements.

19.     On information and belief, Defendants' initial interaction with Ivan's family was between Conner and Rita Jeffers ("Jeffers"), who was Ivan's cousin.

20.     Jeffers supplied relevant personal information to Conner about Ivan for the purposes of Ivan's Death Certificate. Jeffers is listed as "Informant" on Ivan's Death Certificate.

21.     Jeffers told Conner that Ivan was married to the Plaintiff. Jeffers provided Conner with Plaintiff's telephone number and contact information who thereafter called Plaintiff to tell her that Ivan had passed away and requested that she come to the Mount Street Home to identify the body.

22.     On January 13, 2021, Plaintiff met with Livingston and Conner, identified Ivan's body, and authorized a direct cremation. Plaintiff provided Livingston and Conner with her gold-sealed official marriage certificate confirming her marriage to Ivan.

23.     On January 13, 2021, Plaintiff contracted with the Funeral Home for Ivan's direct cremation and a memorial service at a price of $2,500 (the "Contract"). Plaintiff provided Defendants with a $650 voucher request to the Maryland Department of Human Resources for

6

burial assistance. The Contract committed Plaintiff and Ivan's family members to pay the Funeral Home the remaining $1,850 for Ivan's funeral goods and services. The Contract provided: "I hereby acknowledge that I have the legal right to arrange the funeral services for the deceased and I authorize the funeral establishment to perform services, furnish goods, and incur outside charges specified on this Statement."

24.     On information and belief, shortly after Plaintiff arranged and tendered the voucher for Ivan's cremation and memorial service, a woman who identified herself as Renee Cook ("Cook") went to the Mount Street Home and also claimed to be Ivan's spouse.

25.     On information and belief, Cook provided Defendants an unsealed marriage license dated October 24, 1997. Defendant Conner telephoned Plaintiff to inform her that Cook was claiming to be Ivan's spouse and that Cook was insisting that Ivan be buried. Plaintiff told Conner to ignore Cook, that Cook had no authority or right to make any changes to Ivan's funeral arrangements. Plaintiff reaffirmed for Conner that Plaintiff was Ivan's widow and that Plaintiff's instructions for the cremation were to be followed and adhered to.

26.     Defendants knew, or upon reasonable inquiry of readily available public information posted on an official State of Maryland website, should have known, that Plaintiff was Ivan's spouse at the time of his death.

27.     Defendants knew, or should reasonably have concluded, based upon (i) information that Jeffers, as informant, provided to Conner in preparation of Ivan's Death Certificate; (ii) Plaintiff's presentation to Defendants of a gold-sealed marriage certificate dated April 22, 2016; (iii) examination of an unsealed marriage license provided by Cook to Defendants, dated October 24, 1997, and (iv) readily available public information, that Plaintiff was Ivan's spouse at the time of his death.

28.    At a time between January 14, 2021 and January 21, 2021, Plaintiff telephoned the Funeral Home and attempted to speak with Defendant Conner for the purpose of discussing the time and date for the memorial service. Instead of being able to speak with Conner, the Funeral Home's telephone receptionist re-routed Plaintiff's call to either Defendant Albert Wylie or Brandon Wylie. The voice on the telephone, who identified himself to Plaintiff as Mr. Wylie, told Plaintiff that he had decided that the Funeral Home would follow Cook's instructions and would bury Ivan. When Plaintiff protested and told him no, he sarcastically taunted her by asking: "So, what are you going to do about it?" or words to that effect. Then, he abruptly ended the telephone call.

29.    On January 22, 2021, Conner telephoned Plaintiff to tell her that Defendants had rejected Cook's instructions and confirmed that the Defendants would conduct the planned memorial service for Ivan at the Mount Street Home (the "Memorial Service") the next day, January 23, 2021. When Conner made those statements on behalf of Funeral Home to Plaintiff, he knew his statements were false, and that Ivan had not been cremated and in fact had already been secretly buried.

30.    On information and belief, Defendants recorded the Memorial Service and made the recording available to interested mourners through the Funeral Home's website. Despite Plaintiff demanding that Defendants preserve all evidence in this case, including any such recordings, Defendants now claim that they did not record the Memorial Service. Plaintiff believes and thus avers that Defendants recorded the Memorial Service and have been untruthful in denying that fact.

31.     In connection with the Memorial Service, Defendants produced a printed program (the "Program") bearing the Funeral Home's logo, and business information, and noting that the "Program [was] Designed by The Wylie Funeral Home Print Shop."

32.     Using Ivan's middle name, the Program stated that "Tyrone was married later to Ms. Dimetra [sic] Street." At the Memorial Service, Plaintiff, as Ivan's widow, delivered a tribute to her late husband. The Program listed "Remarks—Demetra Street" as the fifth item in the "Order of Service." Plaintiff remarks at the Memorial Service were offered as a tribute in song.

33.     Defendants configured the seating and arrangement of the meeting room for the Memorial Service. Plaintiff sat in the front row. The centerpiece of the Memorial Service was a funerary urn located next to Ivan's framed photograph.

34.     Immediately following the Memorial Service, a Funeral Home employee quicky removed from the meeting room the funerary urn purporting to contain Ivan's cremains and secreted the urn away. Funeral Home personnel pretended that the urn contained Ivan's remains even though they knew that the urn was empty because the Funeral Home had already secretly interred his body three days earlier on January 20, 2021.

35.     Despite Plaintiff's repeated requests that she receive Ivan's ashes, Defendants refused to allow her or anyone else to obtain the ashes or to see the funerary urn once the Memorial Service had concluded.

36.     On January 25, 2021, Defendant Conner sent Plaintiff an email that read, "Tomorrow I'll look forward to receiving the resting location at Mt. Zion Cemetery.

37.     Confused and surprised by Defendant Conner's email, Plaintiff telephoned Defendant Conner seeking an explanation and clarification about the meaning of the email. Instead of being able to speak with Conner, the Funeral Home's telephone receptionist again re-routed Plaintiff's

call to either Defendant Albert Wylie or Brandon Wylie. The voice on the telephone, who identified himself to Plaintiff as Mr. Wylie, told Plaintiff that just as he said he would do, the Funeral Home had buried Ivan. When Plaintiff told him what he had done was wrong and against her wishes, Wylie responded: "Well, that's what we did" or words to that effect. Then, he abruptly hung up the phone.

38.     In the days and weeks following the Memorial Service, Plaintiff Ivan's Death Certificate from the Funeral Home but did not receive it despite repeated requests therefor.

39.     After being unable to obtain a copy of Ivan's Death Certificate, and out of frustration, Plaintiff requested a copy of the Death Certificate directly from the Maryland Department of Health Division of Vital Statistics.

40.     Plaintiff was shocked and emotionally devastated by what she learned upon receiving the Death Certificate.

41.     Defendant Conner had reported false information to the Maryland Department of Health for inclusion in the Death Certificate. Rather than report what the informant, Jeffers had told him, namely that Plaintiff was Ivan's spouse, Defendant Conner instead falsely and intentionally reported the surviving spouse's name as "Unknown."

42.     The Death Certificate also confirmed for Plaintiff that her husband had been buried at Mount Zion Cemetery, in Baltimore, on January 20, 2021 (the "Burial"). The Burial, which took place three days before Memorial Service, was conducted by the Defendants without Plaintiff's knowledge, permission, or authorization. The Burial contravened Plaintiff's express authorization and those actions by Defendants constituted a breach of contract.

43.     Defendants conspired to bury Ivan without the permission of Plaintiff and actively to conceal the Burial from Plaintiff and other family members.

44.     Because Defendants concealed the Burial from Plaintiff, she was excluded from attending Ivan's Burial, paying her last respects, and participating in a graveside service.

45.     Through artifice and deception, Defendants conducted a sham Memorial Service by falsely, fraudulently, and maliciously misleading the Plaintiff and others to believe that Ivan had been cremated and that his ashes were contained in the funerary urn that Defendants displayed at the Memorial Service. All the while, even though Defendants knew that Ivan had never been cremated and that his body had, in fact, already been buried, they instead falsely, fraudulently, and maliciously deceived the Plaintiff and others and led them to believe that Ivan's body had been cremated and that his ashes had been deposited in the funerary urn.

46.     Plaintiff by voucher and through Ivan's family paid the Funeral Home the sum of $2,500 for a cremation that was never performed and a sham Memorial Service. On information and belief, the Funeral Home double charged the bereaved parties by also billing Cook for the cost of a casket, plot, and burial.

47.     Defendants failed to monitor or police their website, allowing and continuing to allow scandalous and hurtful postings to remain on the Funeral Home's remembrance page, including the following posting by Renee Cook (a/k/a Renee Wright) which embarrassed, humiliated, and emotionally distressed Plaintiff: "To the memory of my beloved husband. You were my best friend. The many loving memories I have of the tie we shared will forever comfort me in your absence. . . . You will be sorely missed my love." Defendants even misspelled Ivan's name on its website, incorrectly referring to him in bold letters as "Ivan Tryome [sic] Street."

48.     In the days and months following the Burial, despite Plaintiff's repeated inquires, Defendants withheld and continue to withhold vital and important information from the Plaintiff causing her constant worry, anxiety, and emotional distress, including refusing to disclose

whether Ivan had been cremated (Plaintiff independently confirmed on June 24, 2021 that Ivan's body was not cremated and Defendants eventually acknowledged this on July 6, 2021).

49.     Defendants have never offered any apology or explanation to Plaintiff about what occurred in connection with Defendants' handling of Ivan's body, or his funeral, Burial, or Memorial Service.

50.     Defendants have never disclosed to Plaintiff how or to whom the funeral or Burial were billed and have never offered to refund money to the Plaintiff.

51.     Defendants now falsely and fraudulently claim that they notified Plaintiff in advance of the Burial of its time, date, and place. Plaintiff avers and alleges that she never received any such email, and that Defendants are lying about sending the email. Plaintiff has demanded proof that Defendants sent the email, but Defendants have been unable or unwilling to produce a copy or other record of the email.

52.     Defendants lacked any legal authority to countermand Plaintiff's authorization for a cremation or permission by Plaintiff to conduct the Burial.

53.     Defendants have acted cruelly and maliciously in knowingly inflicting emotional injury on Plaintiff. Defendants knew that Ivan had been buried on January 20, 2021, but actively concealed the Burial from Plaintiff and through words and actions falsely and fraudulently represented to Plaintiff that Defendant had been cremated and that his ashes were contained in the mock funerary urn.

54.     Defendants scheduled the Memorial Service with the intent to deceive Plaintiff knowing full well that they had already conducted the Burial, having every intention to conceal the Burial from Plaintiff by employing a mock Memorial Service and phony funerary urn.

55. Defendants' false representations and deceitful acts were made or done with actual malice in that Defendants' false representations or deceitful acts were made or done with a conscious and deliberate sense of wrongdoing, evil and wrongful motive, intent to injure, ill-will, and fraud.

56. Plaintiff relied on Defendants' representations and invested her emotions, singing at the Memorial Service to honor the memory of her late husband. Plaintiff would have stopped the Burial and engaged the services of an honest funeral home if she had known that Defendants were engaged in a conspiracy to thwart her wishes, abuse her trust, mistreat Ivan's body, and make a mockery of her and the Memorial Service.

57. Plaintiff had the right to rely on Defendants' promises in the funeral contract and the statements and actions of the Defendants with respect to the Memorial Service and the legitimacy of the funerary urn.

58. In addition to Defendants' breach of the funeral contract, Plaintiff suffered injury as a direct and proximate result of the Defendants' intentionally false promises, and false and deceptive actions and Plaintiff continues to suffer from Defendants' continuing to inflict damage on Plaintiff's mental and emotional state.

59. Plaintiff has experienced severe emotional distress (i) having not been able to pay her last respects to her husband; (ii) having not been at the graveside; (iii) having not been able to assure a proper Christian burial for Ivan; (iv) being unaware for several days of the location of Ivan's grave; (v) being unaware for more than six months whether Ivan had been cremated; (vi) suffering the indignity and inconvenience of having Ivan's Death Certificate list his spouse's name as "unknown;" (vii) having the Defendants make a mockery of the Memorial Service and forever ruining an otherwise beautiful and solemn religious ceremony; (viii) having the

Defendants impugn and denigrate the sanctity of Plaintiff's marriage to Ivan; (ix) having had her wishes for Ivan's afterlife ignored; and (x) Defendants having continued to engage in an ongoing conspiracy to coverup their wrongful and fraudulent acts and deeds. Plaintiff has been and is continuing to be damaged by Defendants' wrongful acts.

60. Because of Defendants' intolerable, wrongful, deceitful, and outrageous conduct, Plaintiff has been permanently and severely emotionally and psychologically injured. Plaintiff is under the care of a psychiatrist who has prescribed Zoloft for treatment of depression, panic attacks, post-traumatic stress disorder, and social anxiety disorder. Plaintiff is under the regular care of a licensed therapist. Plaintiff experiences regular, untimely, and uncontrollable episodes of crying, emotional upset, and sadness, panic, and anxiety. Plaintiff now suffers from insomnia, uncontrolled eating, weight gain, headaches, and malaise. When Plaintiff can sleep, she is frequently awakened by upsetting nightmares. Plaintiff is experiencing severe anxiety and has withdrawn from most social interaction.

61. On information and belief, Defendants have profited from their breach of contract by charging the Plaintiff for a cremation that was never performed.

## COUNT ONE
### (Breach of Contract)

62. The allegations of paragraphs 1 through 61 are incorporated herein by reference.

63. Defendants jointly and severally breached the terms of the Contract by failing (i) to cause Ivan's cremation; (ii) ignoring the authorization to cremate Ivan's body and to instead conduct the Burial; (iii) ignoring their fiduciary duties to handle Ivan's body respectfully; (iv) conducting a sham Memorial Service; (iv) submitting false and fraudulent information to the Maryland Department of Health regarding the name of Ivan's spouse; (v) charging Plaintiff for services

that Defendants never performed; (vi) deceiving the Plaintiff with respect to the performance of the Contract.

64.     Plaintiff has been damaged and has suffered an actual compensable loss to be proved at trial because of Defendants' breach of the Contract.

**COUNT TWO**
**(Negligence)**

65.     The allegations of paragraphs 1 through 64 are incorporated herein by reference.

66.     The Funeral Home employed various funeral directors, morticians, embalmers, attendants, drivers, and other funeral home personnel, including, without limitation, Defendants Albert Wylie, Brandon Wylie, Conner, and Livingston, and these employees/servants/agents were acting with the scope of their employment with Funeral Home when they undertook the care and custody of Ivan's body and assumed their duties under the funeral contract. They, and each of them, failed to follow the applicable standard and duty of care owed to Plaintiff in observing her wishes and direction and in caring for the body of her deceased spouse, which proximately resulted in injury to the Plaintiff.

67.     The standard and duty of care applicable to Defendants for the treatment of decedent's body and to the authorized next-of-kin and family included the duty (i) to provide and transmit accurate information to the Maryland Department of Health for the Death Certificate; (ii) to follow the authorized next-of-kin's wishes and direction as expressed in the funeral contract; (iii) to act with honesty and integrity when dealing with the public and the authorized next-of-kin; (iv) to make reasonable inquiry from readily available information to ascertain material facts relative to a decedent; (v) to remove scurrilous comments from public postings on the Funeral Home's website; (vi) to abide by the terms of the funeral contract and to charge only for authorized services and goods; (vii) to keep the authorized next-of-kin informed with accurate

15

information; (viii) to treat the remains of the decedent with care and respect; (ix) to not dishonor or denigrate the decedent; and (x) to observe the solemnity and religiosity of the funeral process.

68.     The Funeral Home, by and through its various funeral directors, morticians, embalmers, attendants, drivers, and other funeral home personnel, including, without limitation, Defendants Albert Wylie, Brandon Wylie, Conner, and Livingston, breached the standard and duty of care applicable to Defendants for the for the treatment of decedent's body and to the authorized next-of-kin and family including the duty (i) to provide and transmit accurate information to the Maryland Department of Health for the Death Certificate; (ii) to follow the authorized next-of-kin's wishes and direction as expressed in the funeral contract; (iii) to act with honesty and integrity when dealing with the public and the authorized next-of-kin; (iv) to make reasonable inquiry from readily available information to ascertain material facts relative to a decedent; (v) to remove scurrilous comments from public postings on the Funeral Home's website; (vi) to abide by the terms of the funeral contract and to charge only for authorized services and goods; (vii) to keep the authorized next-of-kin informed with accurate information; (viii) to treat the remains of the decedent with care and respect; (ix) to not dishonor or denigrate the decedent; and (x) to observe the solemnity and religiosity of the funeral process.

69.     As a direct and proximate result of Defendants failure to observe the standard of duty and care described above, and by breaching the aforesaid standard of duty and care owed to Plaintiff, by and through its employees and agents, the Plaintiff was caused injury.

70.     All injuries sustained by Plaintiff resulted from the actions, omissions, and breaches of the applicable standard of funeral home care by the Defendants by and through its employees/agents/servants, without any act or omission on the part of the Plaintiff herein, directly thereunto contributing.

71.     Plaintiff herein did not assume the risk of injury suffered by her as the result of Defendants' negligence.

72.     As a direct and proximate result of the negligent actions and breaches of the applicable duties and standards of care by Defendants, Plaintiff suffered emotional injuries, physical injuries, conscious pain and suffering, and other damages.

73.     Plaintiff has been damaged and has suffered an actual compensable loss to be proved at trial because of Defendants' negligence.

## COUNT THREE
### (Gross Negligence)

75.     The allegations of paragraphs 1 through 74 are incorporated herein by reference.

76.     The Funeral Home employed various funeral directors, morticians, embalmers, attendants, drivers, and other funeral home personnel, including, without limitation, Defendants Albert Wylie, Brandon Wylie, Conner, and Livingston, and these employees/servants/agents were acting with the scope of their employment with Funeral Home when they undertook the care and custody of Ivan's body and assumed their duties under the funeral contract. They, and each of them, willfully and wantonly failed to follow the applicable standard and duty of care owed to Plaintiff in observing her wishes and direction and in caring for the body of her deceased spouse, which proximately resulted in injury to the Plaintiff.

77.     The standard and duty of care applicable to Defendants for the treatment of decedent's body and to the authorized next-of-kin and family included the duty (i) to provide and transmit accurate information to the Maryland Department of Health for the Death Certificate; (ii) to follow the authorized next-of-kin's wishes and direction as expressed in the funeral contract; (iii) to act with honesty and integrity when dealing with the public and the authorized next-of-kin; (iv) to make reasonable inquiry from readily available information to ascertain material facts

relative to a decedent; (v) to remove scurrilous comments from public postings on the Funeral Home's website; (vi) to abide by the terms of the funeral contract and to charge only for authorized services and goods; (vii) to keep the authorized next-of-kin informed with accurate information; (viii) to treat the remains of the decedent with care and respect; (ix) to not dishonor or denigrate the decedent; and (x) to observe the solemnity and religiosity of the funeral process.

78.     The Funeral Home, by and through its various funeral directors, morticians, embalmers, attendants, drivers, and other funeral home personnel, including, without limitation, Defendants Albert Wylie, Brandon Wylie, Conner, Livingston, and other Funeral Home personnel willfully and wantonly breached the standard and duty of care applicable to Defendants for the treatment of decedent's body and to the authorized next-of-kin and family including the duty (i) to provide and transmit accurate information to the Maryland Department of Health for the Death Certificate; (ii) to follow the authorized next-of-kin's wishes and direction as expressed in the funeral contract; (iii) to act with honesty and integrity when dealing with the public and the authorized next-of-kin; (iv) to make reasonable inquiry from readily available information to ascertain material facts relative to a decedent; (v) to remove scurrilous comments from public postings on the Funeral Home's website; (vi) to abide by the terms of the funeral contract and to charge only for authorized services and goods; (vii) to keep the authorized next-of-kin informed with accurate information; (viii) to treat the remains of the decedent with care and respect; (ix) to not dishonor or denigrate the decedent; and (x) to observe the solemnity and religiosity of the funeral process.

79.     Defendants acted with extreme and wanton disregard and willful indifference towards Plaintiff's sensibilities, emotions, and physical health in breaching their duties and standards of

care owed to the Plaintiff. Defendants were reckless in their conduct toward the Plaintiff when the harm to Plaintiff was both foreseeable and certain.

80.     As a direct and proximate result of Defendants willful and wanton failure to observe the standard of duty and care described above, and by breaching the aforesaid standard of duty and care owed to Plaintiff, by and through its employees and agents, the Plaintiff was caused severe injury.

81.     All the injuries sustained by Plaintiff resulted from the grossly negligent actions and willful and wanton breaches of the applicable standard of funeral home care by the Defendants by and through its employees/agents/servants, without any act or omission on the part of the Plaintiff herein, directly thereunto contributing.

82.     Plaintiff herein did not assume the risk of injury suffered by her as the result of Defendants' gross negligence.

83.     As a direct and proximate result of the grossly negligent actions and the willful and wanton breaches of the applicable duties and standards of care by Defendants, Plaintiff suffered emotional injuries, physical injuries, conscious pain and suffering, and other damages.

84.     Plaintiff has been damaged and has suffered an actual compensable loss to be proved at trial because of Defendants' gross negligence. Plaintiff is entitled to punitive damages against the Defendants because of Defendants' gross negligence and behavior that is intolerable in a civilized society.

## COUNT FOUR
### (Malicious Fraud)

85.     The allegations of paragraphs 1 through 84 are incorporated herein by reference.

86.     Defendants knowingly and maliciously made false representations to Plaintiff by word and action to deceive the Plaintiff and trick her into believing that Ivan had been cremated and to conceal his unauthorized Burial.

87.     Such statements and actions were made for the purpose of defrauding Plaintiff with the Defendants knowing that Plaintiff would rely or act upon the falsehood as part of Defendants' fraud scheme.

88.     Plaintiff relied on Defendants' falsehoods to her detriment, among other things being unable to halt the Burial, and singing in a heartfelt manner at the sham Memorial Service hosted by Defendants and was damaged thereby.

89.     Defendants have profited from their malicious fraud by charging for goods and services that they did not provide to Plaintiff.

90.     Plaintiff has been damaged and has suffered an actual compensable loss to be proved at trial because of Defendants' malicious fraud. Plaintiff claims punitive damages for Defendants' knowingly malicious fraud scheme.

### COUNT FIVE
#### (Misrepresentation)

91.     The allegations of paragraphs 1 through 90 are incorporated herein by reference.

92.     The Funeral Home owed contractual obligations and a duty of care to Plaintiff pursuant to a written agreement to provide funeral goods and services to Plaintiff, including causing the cremation of Ivan's body and conducting a legitimate Memorial Service.

93.     Defendants made numerous false representations through words, statements, and acts to the Plaintiff intending that the Plaintiff would rely or act upon those false representations to her detriment.

94.     The falsity of Defendants' words, statements, and acts were either known to the

Defendants or the false representations were made with reckless indifference as to their truth.

95.     Defendants' misrepresentations were made for the purpose of defrauding or deceiving the

Plaintiff.

96.     Plaintiff justifiably and reasonably relied and acted on the Defendants'

misrepresentations and had the right to rely and act on them.

97.     Plaintiff has been damaged and has suffered an actual compensable loss proximately

caused by Defendants' misrepresentations in an amount to be proved at trial.

**COUNT SIX**
**(Unfair or Deceptive Trade Practices in Violation of Maryland Law)**

98.     The allegations of paragraphs 1 through 97 are incorporated herein by reference.

99.     Defendants' actions in wrongfully (i) making false, or misleading oral statements, and

visual depictions having the capacity, tendency, or effect of deceiving Plaintiff; (ii) failing to

state material facts which failures deceived or were intended to deceive Plaintiff; and (iii)

engaging in deception, fraud, false pretense, false premise, misrepresentation, or knowing

concealment, suppression, or omission of material facts with the intent that Plaintiff would rely

on the same in connection with the funeral goods and services offered by Defendants constitute

unfair or deceptive trade practices under the Maryland Consumer Protection Act (MD. COM. LAW

CODE ANN. § 13-101 *et seq.*).

100.    Plaintiff has been damaged and has suffered an actual compensable loss to be proved at

trial because of Defendants' unfair and deceptive business practices in violation of Maryland

law.

## COUNT SEVEN
### (Intentional Infliction of Emotional Distress)

101. The allegations of paragraphs 1 through 100 are incorporated herein by reference.

102. Defendants' actions, lies, deceit, and acts to inflict mental cruelty on Plaintiff by falsifying the Death Certificate, conducting a secret Burial, arranging a sham Memorial Service using a fake funerary urn as prop, failing to police or monitor it website, and covering-up its wrongdoing, was intentional, reckless, extreme, and outrageous. Such extreme conduct was beyond all decency, atrocious and utterly intolerable in a civilized society and is beyond that which any person should be expected to endure.

103. Defendants abused the special trust that a grieving widow places in a funeral home at a time of great loss.

104. Defendants' outrageous conduct caused and continues to cause Plaintiff severe emotional distress. Because of Defendants' intolerable, wrongful, deceitful, and outrageous conduct, Plaintiff has been permanently and severely emotionally and psychologically injured. Plaintiff is under the care of a psychiatrist who has prescribed Zoloft for treatment of depression, panic attacks, post-traumatic stress disorder, and social anxiety disorder. Plaintiff is under the regular care of a licensed therapist. Plaintiff experiences regular, untimely, and uncontrollable episodes of crying, emotional upset, and sadness, panic, and anxiety. Plaintiff now suffers from insomnia, uncontrolled eating, weight gain, headaches, and malaise. When Plaintiff can sleep, she is frequently awakened by upsetting nightmares. Plaintiff is experiencing severe anxiety and has withdrawn from most social interaction.

105. Plaintiff has been damaged and has suffered severe and debilitating emotional injuries and an actual compensable loss to be proved at trial caused by Defendants' outrageous and

intolerable conduct. Plaintiff claims punitive damages for Defendants' knowingly malicious actions, deceptions, and intentional, outrageous, and intolerable conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment awarding the following:

As against all Defendants, jointly and severally, monetary damages in the amount of $3,500,000 plus interest to the date of judgment.

As against all Defendants, jointly and severally, punitive damages for malicious fraudulent conduct, gross negligence, and intentional infliction of emotional distress in the amount of $5,000,000 plus interest to the date of judgment.

As against all Defendants jointly and severally, reasonable costs and attorney fees.

Such other relief as this Court may deem just and proper.


_____ /s/ _____
Alexander J. Coffin (Bar No. 21680)

Law Office of Alex Coffin, LLC
114 Spring Place Way
Annapolis, MD 21401

Phone: 410-216-3339
Email: alex.COFFINLAW@gmail.com

Attorney for Plaintiff, Demetra Street

August 4, 2021

## JURY DEMAND

Plaintiff demands a trial by jury on all triable issues of fact.


                      /s/
           Alexander J. Coffin (Bar No. 21680)

           Law Office of Alex Coffin, LLC
           114 Spring Place Way
           Annapolis, MD 21401

           Phone: 410-216-3339
           Email: alex.COFFINLAW@gmail.com

           Attorney for Plaintiff, Demetra Street

August 4, 2021