## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **DEMETRA STREET,** | * |
| **Plaintiff,** | * |
| v. | *   **CIVIL NO. RDB-21-1970** |
| **WYLIE FUNERAL HOMES** *et al*, | * |
| **Defendants.** | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiff Demetra Street ("Plaintiff")[1] brings suit against Defendants Wylie Funeral Home, P.A., Wylie Funeral Home, P.A. of Baltimore County, Albert Wylie, Brandon Wylie, and Devin Conner (collectively, "Defendants"), for the alleged improper burial of her late husband upon his passing. (ECF No. 1.) Presently before the Court is Defendants' Motion for Summary Judgment (ECF No. 20) as to all claims. The Court has considered the relevant filings and no hearing is necessary. Loc. R. 105.6 (D. Md. 2021). For the reasons that follow, Defendants' Motion for Summary Judgment (ECF No. 20) is GRANTED IN PART and DENIED IN PART. The Motion is GRANTED as to Plaintiff's claims for Intentional Infliction of Emotional Distress (Count Seven) and punitive damages, and is DENIED as to all other Counts (Counts One, Two, Three, Four, Five, and Six) because there are genuine disputes of material facts.

## BACKGROUND

---

[1] Demetra Street is a Virginia resident and this Court's jurisdiction is predicated upon diversity of citizenship pursuant to 28 U.S.C. § 1332(a). (ECF No. 1 at 2.)

In ruling on a motion for summary judgment, this Court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *see also Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 433 (4th Cir. 2013). This Court has recounted the facts alleged in the Complaint in its previous Memorandum Opinion which ruled on Defendants' then-pending Motion to Dismiss. (ECF No. 10.) Given the differing procedural posture, the Court will briefly summarize and supplement facts where necessary.

Plaintiff Demetra Street married Ivan Street on April 22, 2016. (ECF No. 21-2 at 7.) The pair separated in 2017, and Demetra Street filed for divorce in November 2018. (ECF No. 20-5 at 11-12.) Ivan Street never legally responded to Demetra Street's divorce proceedings, and he passed away on January 9, 2021. (ECF No. 21 at 3.) Consequently, at the time of Ivan Street's passing, the Plaintiff alleges that they were still married. (ECF No. 20-5 at 14.)

Ivan Street's cousin, Rita Jeffers, contacted Wylie Funeral Homes, with locations in Baltimore City ("Mount Street") and Baltimore County ("Randallstown"), to hold Ivan Street's body for identification and end-of-life arrangements. (ECF No. 20-9 at 8.) Jeffers was familiar with Wylie Funeral Homes because her family had used their services before. *Id.* Jeffers' point of contact with the funeral home was Devin Conner, the manager. *Id.* Jeffers explained to Conner that the family wanted to cremate Ivan Street due to budgetary constraints. *Id.* Conner gave Jeffers a "Statement of Funeral Goods and Services Selected" which outlined the services to be provided and delineated the prices for each service, with a total amount due listed at the bottom, and signed by both Jeffers and Conner on January 12, 2021. (ECF No. 20-10.) Jeffers

spoke with Demetra Street on the phone about the cremation plans at Wylie Funeral Home, and the pair discussed that Demetra would contribute funds obtained from the Maryland Department of Human Services ("social services")[2] and that the family would pay the remaining balance for the services. (ECF No. 20-9 at 10; ECF No. 20-5 at 17.)

Thereafter, Demetra Street contacted Conner over the phone about the arrangements. (ECF No. 20-5 at 18.) Demetra Street told Conner that she wanted Ivan Street to be cremated and Conner requested a copy of the couple's marriage certificate to proceed with her request. *Id.* at 19. Plaintiff then met with Conner on January 13, 2021, and provided him a physical copy of her marriage license and then signed a "Statement of Funeral Goods and Services Selected" for cremation. *Id.* at 21. Demetra Street brought the Statement of Funeral Goods and Services Selected to social services to obtain a voucher for the cremation as Ivan Street's surviving spouse. *Id.* Social services directed her to return to Wylie Funeral Homes to fix deficiencies in the form, particularly to input the total amount due for the cremation services. *Id.* After returning to Wylie Funeral Homes to ensure the Statement of Funeral Goods and Services Selected was properly populated, Plaintiff returned to social services and obtained a $650 voucher to pay for Ivan Street's cremation. *Id.* After Plaintiff returned to Wylie with the payment voucher, Conner informed her that Ivan Street would be cremated and a memorial service would be held for him on January 23, 2021. (ECF No. 20-5 at 23.)

---

[2] The Maryland Department of Human Services has a "Burial Assistance Program" which "provides limited financial help with funeral expenses of deceased recipients of Public Assistance programs when their families cannot afford funeral costs." *See* Maryland Department of Human Services, *Burial Assistance Program*, https://dhs.maryland.gov/weathering-tough-times/burial-assistance/ (last accessed Mar. 29, 2023).

Shortly after their meeting, Conner called Plaintiff to inform her that another woman, Renee Cook, also claimed to be Ivan Street's widow. *Id.* at 25. Conner told Demetra Street that the arrangements would need to be on hold until Ivan Street's marital status was sorted. *Id.* Plaintiff states that after learning of Renee Cook's claim, she called the funeral home for updates on the memorial service and spoke with Albert Wylie. *Id.* at 27. Plaintiff recalls that after inquiring about the cremation status, Albert Wylie stated that he was going to do what he wanted to do and that what she said did not matter; Wylie then hung up on Plaintiff. *Id.*

On January 22, 2021, Conner contacted Plaintiff again to let her know that Renee Cook did not have funds to pay for any arrangements, so the funeral home was going to continue with the cremation and memorial service as originally planned. *Id.* at 26. The Wylie Funeral Home held a memorial service on January 23, 2021, at the Mount Street location. (ECF No. 20-5 at 35.) A table was displayed at the front of the room during the service that contained flowers and a picture of Ivan Street next to an urn, which Plaintiff believed to hold Ivan Street's cremated ashes. *Id.* Shortly after the conclusion of the service, an employee from the funeral home removed the urn from the display, and Ivan Street's ashes were not distributed. *Id.* at 36.

On January 25, 2021, Conner emailed Plaintiff indicating that he would receive Ivan Street's burial location shortly. *Id.* at 39. Upon receiving this email, Demetra Street was alarmed because it was her understanding that Ivan Street had been cremated and that his ashes were in the urn on display at the memorial service. *Id.* Conner emailed Demetra Street with Ivan Street's burial location on January 28, 2021, at which point Demetra Street confirmed that Ivan Street had not been cremated, but was instead buried. *Id.* Ivan Street's death certificate

was issued on February 4, 2021, and listed his wife's name as "unknown." (ECF No. 20-5 at 42.)

Rita Jeffers testified that Conner called her before the memorial service to explain the funeral home could not cremate Ivan Street due to competing claims of marriage by Demetra Street and Renee Cook. (ECF No. 20-9 at 12.) Jeffers told Conner that if a burial was the only option, then it was what would have to be done. *Id.* at 12. Jeffers stated that she relayed this information to some family members, including Plaintiff. *Id.* at 14. Jeffers also noted that it was her idea to go forward with the memorial service, despite Ivan Street's burial, and to display a symbolic urn. *Id.* at 15.

Conner testified that he consulted Albert and Brandon Wylie about the disposition of Ivan Street's remains once there were competing marital claims. (ECF No. 20-13 at 17.) He stated that the Wylies recommended that he seek advice from the Maryland State Board of Morticians, which in turn recommended that Conner seek legal counsel. *Id.* Brandon Wylie testified that the funeral home determined that because there were competing marital claims, cremation was improper as it was a final disposition that could not be undone. (ECF No. 20-15 at 6.) Because the burial was more expensive than the originally-quoted and paid-for cremation, Wylie Funeral Home paid the difference in cost. *Id.* Albert Wylie denies telling Plaintiff that he told her he was going to do what he wanted to do on the phone. (ECF No. 20-14.)

Defendants filed the instant Motion for Summary Judgment (ECF No. 20) arguing entitlement to judgment on all claims, principally relying on the contention that Demetra Street was not Ivan Street's lawful spouse at the time of his death and therefore she was not owed a

duty requisite to her claims. Defendants also adamantly contend that Plaintiff will be unable to prove her non-economic emotional distress damages without an expert witness because of her pre-existing underlying conditions. *Id.* Plaintiff largely asserts that there are genuine disputes of material facts thereby rendering summary judgment improper, but nonetheless argues that she was Ivan Street's lawfully-wedded wife and that she will be able to prove damages with fact witnesses. (ECF No. 21.) For the reasons that follow, Defendants' Motion shall be GRANTED IN PART and DENIED IN PART.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter for resolution at trial. *Id.* at 249. Trial courts in the Fourth Circuit have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). This Court "must not weigh evidence or make credibility determinations." *Foster v. University of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage). Indeed, it is the function of the fact-finder to resolve factual disputes, including issues of witness credibility. *See Tolan v. Cotton*, 572 U.S. 650, 656-59 (2014); *Neal v. United States*, 599 F. Supp. 3d 270, 287 (D. Md. 2022) ("Where there is conflicting evidence, such as competing affidavits, summary judgment ordinarily is not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility.").

## ANALYSIS

Defendants first assert that Defendant Wylie Funeral Home, P.A. of Baltimore County is not the proper Defendant in the case and summary judgment should be entered in its favor. (ECF No. 20-1 at 22.) Furthermore, Defendants argue for summary judgment in all remaining Counts in Plaintiff's Complaint: Breach of Contract against Defendant Wylie Funeral Home Entities (Count One), Negligence and Gross Negligence against all Defendants (Counts Two and Three), Fraudulent Misrepresentation against Defendants Conner and Wylie Funeral Home Entities (Counts Four and Five), Unfair or Deceptive Trade Practices against all Defendants (Count Six), Intentional Infliction of Emotional Distress against all Defendants

(Count Seven). *Id.* at 22-41. Defendants further contend that Plaintiff is not entitled to punitive damages in connection with her Fraud and Intentional Infliction of Emotional Distress Counts. *Id.* at 40. Each argument is addressed in turn.[3]

## I.   Defendant Wylie Funeral Home, P.A. of Baltimore County

Defendants aver that Wylie Funeral Home, P.A. of Baltimore County ("the Randallstown Home") did not provide any services related to Ivan Street's remains and is therefore an improper Defendant in this suit. (ECF No. 20-1 at 22.) Defendant relies on the purported contract between the Wylie Funeral Home Mount Street location in support of this contention. *Id.* Conversely, relying on deposition testimony from Defendants Conner, Albert Wylie, and Brandon Wylie, Plaintiff argues that the Randallstown Home location and the Mount Street location are part of a single entity because the locations share equipment and the employees' posts are interchangeable. (ECF No. 21 at 9.) Neither party cites to a case or law to support their position, thereby rendering this argument a factual determination for trial. Accordingly, Defendants' Motion for Summary Judgment on this basis is DENIED.

## II.   Breach of Contract Against Defendant Wylie Funeral Home Entities (Count One)

Defendants Wylie Funeral Homes and Wylie Funeral Home, P.A. of Baltimore County ("Wylie Funeral Home Entities") argue that they cannot be held liable for breach of contract because: (1) they did not enter into a contract with Plaintiff as there was no mutual assent; (2) if a contract did exist, Plaintiff breached its terms; and (3) Plaintiff cannot prove damages.

---

[3] As the basis of this Court's jurisdiction lies in diversity of citizenship under 28 U.S.C. § 1332(a), Maryland law applies. *Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co.*, 736 F.3d 255, 261 n.3 (4th Cir. 2013) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)).

(ECF No. 20-1 at 22.) In Maryland, "[a]n essential feature of every contract is the parties' mutual assent … which is crystallized in a certain and definite offer … and a knowing and sufficient acceptance…." *Peer v. First Fed. Sav. & Loan Ass'n of Cumberland*, 331 A.2d 299, 301 (Md. 1975) (internal citations omitted). "Manifestation of mutual assent includes two issues: (1) intent to be bound, and (2) definiteness of terms." *Cochran v. Norkunas*, 919 A.2d 700, 708 (Md. 2007).

In determining whether the parties intended to be bound by a contract, "[i]f the language of a contract is unambiguous, we give effect to its plain meaning and do not contemplate what the parties may have subjectively intended by certain terms at the time of formation." *Id.* at 710. The "search to determine the meaning of a contract is focused on the four corners of the agreement." *Id.* Importantly, "summary judgment is appropriate when the contract in question is unambiguous or when an ambiguity can be definitively resolved by reference to extrinsic evidence." *Washington Metro. Area Transit Auth. v. Potomac Inv. Properties, Inc.*, 476 F.3d 231, 235 (4th Cir. 2007).

On its face, the "Statement of Funeral Goods and Services Selected" signed by Plaintiff and Defendant Conner (the "Statement") is a contract. Looking to its four corners, the Statement includes the services to be provided, where the services will take place, the price of those services, and the method of payment for the services. (ECF No. 20-7.) Demetra Street's signature is at the bottom of the Statement, and Defendant Conner's signature is included under a provision which states "[t]his funeral establishment agrees to provide all services, merchandise and cash advances indicated on this Statement." *Id.*

Wylie Funeral Home Entities relies on extrinsic evidence to assert there was no mutual assent. Defendants argue "it is clear from the testimony" that Street and Conner "never discussed any essential terms regarding the arrangements" and that "it is evident that the sole intent of the statement was to provide Plaintiff with a document that she could use to obtain a voucher to contribute towards the services arranged for by Jeffers." (ECF No. 20-1 at 23.) However, the Statement is unambiguous on its face, which eliminates the need for the Court to consider extrinsic evidence. Consequently, the Court gives effect to the plain meaning of the Statement and will not "contemplate what the parties may have subjectively intended by certain terms at the time of formation", particularly whether the Statement was created for the sole purpose of obtaining a voucher. *Cochran*, 919 A.2d at 710. Thus, Wylie Funeral Home Entities' mutual assent argument fails.

Defendants next argue that even if a contract with Plaintiff existed, she failed to tender the full $2,500 payment due and instead only paid $650 from the Social Services voucher. (ECF No. 20-1 at 25.) The failure to make payments under an agreement "constitutes a material breach in the absence of a showing of justification or excuse." *Fromm Sales Co. v. Troy Sunshade Co.*, 159 A.2d 860, 863 (Md. 1960). Although it is undisputed that Plaintiff only paid $650 under the contract, it is also undisputed that the remaining balance for the cremation services was paid by Ivan Street's extended family. (ECF No. 20-9). Plaintiff states that "Defendants were aware of the payment circumstances." (ECF No. 21 at 12 n.12.)

Defendants have not cited any law that dictates payment from outside sources on a party's behalf constitutes breach of contract, nor are there any provisions in the Statement which preclude contributions of payment from anyone other than the signee. To the extent

that Defendants argue there are competing contracts – one paid in part by Demetra Street and one paid in full by contributions from family – they are free to make that argument at trial; however, at the summary judgment stage, this argument emphasizes a genuine dispute of material fact. Furthermore, Defendants' attempt to narrow Plaintiff's claim for breach of contract (ECF No. 20-1 at 24) is underdeveloped and not founded in law.

Defendants also argue that Plaintiff has failed to provide any evidence of damages relating to their alleged breach of contract. (ECF No. 20-1 at 25.)  Plaintiff asserts that she will call treating physicians and counselors as fact witnesses, and intends to admit her medical records into evidence at trial to prove damages in the form of emotional distress. (ECF No. 21 at 16.) Defendants argue that because Plaintiff failed to designate expert witnesses, she is precluded from offering any such opinions. (ECF No. 22 at 7.) Defendants are correct in that Plaintiff shall be precluded from introducing expert testimony[4] as the Federal Rule of Civil Procedure Rule 26 expert witness disclosures deadline from the parties' Scheduling Order has passed. (ECF No. 17); *See* Fed. R. Civ. P. 37(c)(1) ("if a party fails to … identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence … at a trial, unless the failure was substantially justified or is harmless.")[5]

Nonetheless, Defendants have not pointed to any law or reason why the absence of expert testimony is fatal to Plaintiff's breach of contract claim, and therefore is not entitled to summary judgment on this basis. Instead, Defendants argue that the medical records "clearly

---

[4] Plaintiff informs that she disclosed "a list of rebuttal expert witnesses if Defendants offer expert opinion testimony." (ECF No. 21 at 16.) The timeliness of Plaintiff's rebuttal expert witness disclosure is not presently at issue.

[5] For all other witnesses, Federal Rule of Civil Procedure 26(a)(3) dictates that witness lists are to be disclosed "at least 30 days before trial" unless the Court orders otherwise. The Court does not interpret Defendants' arguments to assert that Plaintiff is delayed in disclosing the identity of her intended fact witnesses.

do not support Plaintiff's claims that her pre-existing conditions and symptoms worsened following the alleged actions of Defendants", yet ignore that such argument constitutes a factual issue for trial. *See Foster*, 787 F.3d at 248 (a court "must not weigh evidence or make credibility determinations."). Consequently, Defendants are not entitled to summary judgment as to Plaintiff's Breach of Contract (Count One) claim and their Motion on this Count shall be DENIED.

## III.   Negligence and Gross Negligence Against All Defendants (Counts Two and Three)

Defendants assert that they did not owe a duty to Plaintiff and that, even if they did owe her a duty, Plaintiff cannot prove causation and damages. (ECF No. 20-1 at 26.) Maryland law recognizes claims brought by a surviving spouse of a decedent "arising from wrongful burials, including negligence in conducting burials or in the manner of interment" as a form of negligence. *Walser v. Resthaven Mem'l Gardens, Inc.*, 633 A.2d 466, 472 (Md. Ct. Spec. App. 1993) ("there is no reason to create a separate tort for conduct which would seem clearly to fall within the existing one."); Md. Code, Health-Gen, § 5-509(c)(2). A negligence claim requires proof of the following four elements: "(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty." *Valentine v. On Target, Inc.*, 727 A.2d 947, 949 (Md. 1999) (internal quotations and citations omitted).

Gross negligence entails "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and [it] also implies

a thoughtless disregard of the consequences without an exertion of any effort to avoid them." *Brooks v. Jenkins*, 220 Md. App. 444, 459, 104 A.3d 899 (Md. Ct. Spec. App. 2014) (quoting *Barbre*, 935 A.2d at 717). *See Marriott Co. v. Potomac Telephone Co. of Maryland*, 124 Md. App. 463, 478, 723 A.2d 454, 462 (1998). Gross negligence is "something *more* than simply negligence and likely more akin to reckless conduct." *Barbre*, 935 A.2d at 717.

### a. Duty

Under Md. Code, Health-Gen, § 5-509(c)(2), the following persons "have the right to arrange for the final disposition of the body of the decedent": surviving spouse, adult child, parent, adult brother or sister, authorized representative, or appointed guardian. Defendants argue that "Plaintiff was not Ivan Street's legal spouse at the time of his death" and therefore does not fall within a class of persons with the right to final disposition of his body, thereby negating that a duty was owed to her. (ECF No. 20-1 at 28.) Defendants rely on the marriage certificate memorializing Ivan Street's marriage to Renee Cook to support the contention that Ivan was still married to Cook at the time of his death. (ECF No. 20-4.) Defendants state that Plaintiff has failed to prove that Ivan Street and Renee Cook divorced or that their marriage was annulled at the time that Ivan Street married Demetra Street in April 2016. (ECF No. 20-1 at 28.) Plaintiff contends that Ivan Street and Renee Cook's marriage was defunct because (1) the license was not timely returned under Md. Code, Fam. Law § 2-409(b)(1)(ii) and (2) the license was not effective at the time of "marriage" under Md. Code, Fam. Law § 2-405(d)(1). (ECF No. 21 at 13-14.)

Maryland courts have emphasized the view that marriage license statutes are a legal formality that do not necessarily have a nullifying effect if not followed. *See Feehley v. Feehley*,

99 A. 663, 665 (Md. 1916) ("it is manifestly a sound and just rule of construction that statutes providing for marriage licenses are not held to have the effect of nullifying, for noncompliance with their terms, a marriage valid at common law, unless such an intention is plainly disclosed"); *Picarella v. Picarella*, 316 A.2d 826, 835 (Md. Ct. Spec. App. 1974) ("[a] marriage without a license being valid, it follows, we believe, that a marriage under a license improperly procured is valid"); *Trapasso v. Lewis*, 239 A.3d 703, 708 (Md. Ct. Spec. App. 2020) ("statutes relating to the validity of a marriage are merely directory unless the statute clearly indicates a legislative intention to nullify such marriages"). In determining whether a marriage is valid where it did not comport with licensing statutes, courts turn to the underlying facts of the contested marriage. *See Browning v. Browning*, 168 A.2d 506, 507 (Md. 1961) (highlighting characteristics of marriages in determining competing claims as surviving widow); *S. O. v. H. M.*, No. 546, 2022 WL 1394995, at *6 (Md. Ct. Spec. App. May 3, 2022), *cert. denied sub nom. Ogunsusi v. Monye*, 281 A.3d 725 (Md. 2022) (emphasizing details and dates relating to marriage ceremony to determine marriage effective date).

Here, there is a genuine dispute of material fact surrounding the circumstances of Ivan Street's marriages to both Renee Cook and Demetra Street. In brief, Plaintiff states that she was married to Ivan Street in April 2016. (ECF No. 1.) The marriage certificate between Ivan Street and Renee Cook reflects that they were married on October 25, 1997, yet the license was returned to the Clerk of Baltimore City on April 7, 2021, almost three months after Ivan Street's death. (ECF No. 20-4.) Thus, at the time of Ivan Street's marriage to Demetra Street in April 2016, Ivan Street had no other recorded marriages. However, aside from the late-returned marriage license, there is no evidence regarding Ivan Street's marriage to Renee Cook,

including details surrounding the ceremony or whether Ivan Street and Renee Cook intended to be married. Such facts are necessary to determine the legality of Ivan Street's marriage(s). Consequently, Defendants' Motion on this basis fails.

### b. Causation and Damages

Defendants contend that "Plaintiff's failure to retain an expert witness relating to her emotional distress damages is fatal to her claim." (ECF No. 20-1 at 30.) The plaintiff has the burden of proving "that h[er] damages were caused by the negligence of the defendant." *Strong v. Prince George's Cnty.*, 549 A.2d 1142, 1145 (Md. 1988) (internal citations omitted). In proving causal connection, "it is not always necessary to produce expert testimony", particularly where the injury is clearly connected to the circumstances. *Id.* "Nonetheless, where the cause of the injury is a complicated medical question involving fact finding which is properly within the providence of medical experts, proof of the cause must be made by such a witness." *Id.* (citing *Wilhelm v. State Traffic Comm'n*, 185 A.2d 715 (Md. 1962)).

Defendants argue that Plaintiff's preexisting diagnoses of depression, anxiety, and PTSD complicate her claim that the events following Ivan Street's death made those conditions worse. (ECF No. 20-1 at 31.) More specifically, Defendants contend that "Plaintiff cannot meet her burden of proof without the testimony of an expert witness." *Id.* Despite such a conclusory statement, Defendants have again failed to provide any legal basis for this argument. Plaintiff's claims may have been strengthened, perhaps, by expert witness testimony, but there is no indication that Plaintiff's claims must be supported by expert witness testimony. As it is not the role for this Court to weigh the evidence or make presuppositions

concerning Plaintiff's alleged aggravated conditions, summary judgment on this basis is improper.

### c. Albert Wylie and Brandon Wylie Liability

Defendants argue that Albert and Brandon Wylie were not involved in the decision-making for the arrangements of Ivan Street's disposition. (ECF No. 20-1 at 32.) This argument is belied by deposition testimony which indicates that the Wylies were consulted about the competing marriage certificates and that representatives of the company met as a group to determine the best outcome. (ECF No. 20-15.) Defendants are free to make more detailed factual distinctions negating their liability at trial, but otherwise Defendants' arguments are fact-based an inappropriately decided at the summary judgment stage. Consequently, Defendants are not entitled to summary judgment as to Plaintiff's Negligence (Count Two) and Gross Negligence (Count Three) claims and their Motion on these Counts shall be DENIED.

## IV.  Fraudulent Misrepresentation Against Defendants Conner and Wylie Funeral Home Entities (Counts Four and Five)[6]

Fraudulent misrepresentation requires showing:

> (1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

---

[6] Count Four in Plaintiff's Complaint is characterized as a claim of "fraud" and Count Five is labeled as a claim for "misrepresentation." (ECF No. 1.) Defendants argue that Plaintiff has, in essence, asserted two counts of fraudulent misrepresentation. (ECF No. 20-1 at 33.) Plaintiff fails to dispute this contention, and the Court accordingly merges the allegations.

*Nails v. S & R, Inc.*, 639 A.2d 660, 668 (Md. 1994) (internal citations omitted).

Defendants foremost contest that they owed a duty to Plaintiff, and secondarily argue that they did not make "a false representation to Plaintiff about the disposition of Ivan Street's remains." (ECF No. 20-1 at 34.) As previously explained, there is a genuine dispute of material fact as to Ivan Street's lawful widow at the time of his death, and therefore Defendants' argument contesting duty owed to Plaintiff is unavailing. Similarly, there is competing evidence on the record about what information was relayed to Plaintiff concerning Ivan Street's memorial service. Plaintiff testified that she believed the memorial service and displayed urn to be a confirmation of Ivan Street's cremation, whereas Rita Jeffers and Devin Conner testified that Plaintiff was told the memorial service was symbolic as Ivan Street's body was buried. (ECF Nos. 20-9, 20-13.) Consequently, the competing representations about what was relayed concerning the disposition of Ivan Street's body constitute a genuine dispute of material fact and summary judgment on this claim is improper. Accordingly, Defendants' Motion for Summary Judgment as to Plaintiff's Fraudulent Misrepresentation (Counts Four and Five) claims is DENIED.

**V.   Unfair or Deceptive Trade Practices Against All Defendants (Count Six)**

"A person may not engage in any unfair, abusive, or deceptive trade practice" in the offer or sale of consumer goods or services. Md. Code Ann., Com. Law § 13-303. Defendants argue that they did not engage in unfair or deceptive trade practices for three reasons: Plaintiff was not entitled to the disposition of Ivan Street's remains, no false or misleading statements were made concerning Ivan Street's remains, and Plaintiff is not a "consumer". (ECF No. 20-1 at 38.) The Court has already addressed and rejected Defendants' first two arguments.

Turning to Defendants' remaining argument, a consumer is an actual or prospective purchaser or recipient of consumer goods and services. § 13-101(c)(1). As previously considered, and viewed in the light most favorable to Plaintiff, the Statement of Funeral Goods and Services Selected constituted a valid contract which set forth the goods and services that Wylie Funeral Homes was to provide Demetra Street. As emphasized, a genuine dispute of material fact exists as to whether that contract controlled the services provided, but that dispute alone is enough to preclude summary judgment. As a result, Defendants' argument fails and their Motion for Summary Judgment on Unfair or Deceptive Trade Practices (Count Six) is DENIED.

## VI.   Intentional Infliction of Emotional Distress Against All Defendants (Count Seven)

Under Maryland law, a plaintiff asserting a claim for intentional infliction of emotional distress ("IIED") must show: (1) the conduct was intentional or reckless; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress was severe. *Manikhi v. Mass Transit Admin.*, 758 A.2d 95, 113 (Md. 2000). "In evaluating whether the identified conduct is extreme and outrageous, courts should consider multiple factors, including the context in which the conduct occurred, the personality of the plaintiff and her susceptibility to emotional distress, and the relationship between the defendant and plaintiff." *Mathis v. Goldberg*, No. DKC 12–1777, 2013 WL 524708, at *10 (D. Md. Feb. 12, 2013), *aff'd*, 538 Fed. App'x 310 (4th Cir. 2013). As Chief Judge Bredar of this Court has previously noted, "[t]he tort of IIED 'is to be used sparingly and only for opprobrious behavior that includes truly outrageous conduct … of

a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind.'" *Arsham v. Mayor & City Council of Baltimore*, 85 F. Supp. 3d 841, 850 (D. Md. 2015) (quoting *Kentucky Fried Chicken Nat'l Mgmt. Co. v. Weathersby*, 607 A.2d 8, 11 (Md. 1992)).

Defendants argue that Plaintiff's IIED claim fails because she was not entitled to the disposition of Ivan Street's remains and because she cannot establish a causal connection between Defendants' alleged actions and her emotional distress. (ECF No. 20-1 at 39.) Both of Defendants' arguments have been dispelled, but the Court shall grant summary judgment in Defendants' favor because Plaintiff has failed to produce any evidence that the Defendants' conduct was extreme or outrageous given the circumstances. Testimony shows that the Defendants made the decision to bury Ivan Street given the uncertainty surrounding his surviving spouse, as evidenced by the notation on Ivan Street's death certificate that his spouse was "unknown." Due to such uncertainty, the Defendants testified that a cremation was improper as it was permanent. In other words, Ivan Street's burial was not "calculated to cause" distress to Plaintiff but was instead the result of conflicting information concerning Ivan Street's lawful widow. Viewed in this context, there is no indication that the Defendants' conduct was particularly extreme or outrageous. Therefore, Defendants' Motion for Summary Judgment on Plaintiff's IIED (Count Seven) claim is GRANTED.

## VII.    Punitive Damages

Defendants argue that if Plaintiff's fraud and IIED claims survive summary judgment, she is nonetheless prohibited from seeking punitive damages in relation to those claims because she has failed to provide evidence that Defendants acted with malice. (ECF No. 20-1 at 40.) Under Maryland law, a plaintiff in a tort action "must prove that a defendant had actual

malice in order to obtain punitive damages." *Biktasheva v. Red Square Sports, Inc.*, 366 F. Supp. 2d 289, 295 (D. Md. 2005) (citing *Montgomery Ward v. Wilson*, 664 A.2d 916, 930 n. 5 (Md. 1995)). "[P]unitive damages are awarded in an attempt to punish a defendant whose conduct is characterized by evil motive, intent to injure, or fraud, and to warn others contemplating similar conduct of the serious risk of monetary liability." *Owens-Illinois, Inc. v. Zenobia*, 601 A.2d 633, 650 (Md. 1992). Judge Russell of this Court has explained that "a plaintiff must demonstrate the tortfeasor acted with actual malice, meaning the 'defendant's conduct was characterized by evil motive, intent to injure, ill will, or fraud.'" *Cavey v. Mach Trucking LLC*, No. GLR-16-1339, 2016 WL 5462791, at *2 (D. Md. Sept. 29, 2016) (quoting *Zenobia*, 601 A.2d at 652). "[P]unitive damages are reserved for 'punishing the most heinous of intentional torts and tortfeasors.'" *Id.* (quoting *Beall v. Holloway-Johnson*, 130 A.3d 406, 419 (Md. 2016)). "A plaintiff must prove the basis for punitive damages by clear and convincing evidence." Id. (citing *Zenobia*, 601 A.2d at 657). Furthermore, a non-moving party abandons a claim where the party fails to respond to an argument raised in a dispositive motion. *See Ferdinand–Davenport v. Children's Guild*, 742 F.Supp.2d 772, 777 (D. Md. 2010).

Defendants shall be granted summary judgment on this claim, and Plaintiff will be precluded from seeking punitive damages. Not only has Plaintiff wholly failed to respond to this argument, consequently abandoning her claim, but she has also failed to offer any evidence that the Defendants acted with malice in connection to any of her claims. In other words, especially given the context highlighted in the Court's IIED analysis, there is no indication that the Defendants' conduct was founded in evil motive or intent to injure. Furthermore, given the uncertainty surrounding Ivan Street's marital status, there is no particularized

conduct that warrants "warn[ing] others contemplating similar conduct." *Zenobia*, 601 A.2d at 650. Plaintiff has failed to proffer any evidence that would support an award for punitive damages. Accordingly, punitive damages shall not be awarded in this case.

## CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment (ECF No. 20) is GRANTED IN PART and DENIED IN PART. The Motion is GRANTED as to Plaintiff's claims for Intentional Infliction of Emotional Distress (Count Seven) and punitive damages, and is DENIED as to all other Counts (Counts One, Two, Three, Four, Five, and Six).

A separate Order follows.


Dated: March 29, 2023                    _____/s/_____
                                         Richard D. Bennett
                                         United States District Judge